UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

——————————————————————-X

ASSATA RHODES,

                    Plaintiff,

    -v-

EBONY SHAWNTAY WILLIS, WALTER J. MIKOWSKI,
JOSEPH HICKEY, ADRIAN J. ARAV, GABRIELLA
TERESA CASTELLANO, MICHAEL C. BLANDA,
JEFFREY CLARKE, KASEY M. LAZARO, NICHOLAS
M. LOWETH, STEPHANIE F. MALVICA, ALI WALKER,
MIKHAIL GONCHAROV, JESSICA TISCH, BRADFORD
SCOTT LANDER, ERIC LEROY ADAMS,
CITY OF NEW YORK,

                    Defendant,

——————————————————————-X

**COMPLAINT**

**Jury Trial Demanded**

25 - CV - _____

Plaintiff, ASSATA RHODES, brings this claim complaining of the defendants, and respectfully alleges as follows:

**Contents at a Glance:**
**Nature of Action**;    **The Parties**;    **Jurisdiction and Venue**;    **Preliminary Statement**
**Factual Allegations**: Incident #1 **//** Incident #2 **//** Incident #3;  A Debt is Owed to Plaintiff;
**Cause of Action** 1; 2; 3; 4; 5; 6; 7; 8; 9; 10; 11; 12; 13; 14; 15; 16; 17; 18; 19; 20;
21; 22; 23; 24; 25; 26; 27; 28; 29; 30; 31; 32; 33;
**Conclusion**;  **Certification and Closing**;  **Index to Attachments**

## NATURE OF ACTION

1.    This action is brought by ASSATA RHODES, sui juris, hereinafter Plaintiff, to recover damages for the Defendants' violations of Plaintiff's rights beginning April 10, 2024, rights which are protected by the constitution; and to collect a debt for value received.

## THE PARTIES

2.    Plaintiff, is a non-resident; non-domicile; sentient being.

3.    Defendants, Police Detective EBONY SHAWNTAY WILLIS [Tax ID No. 947955]; Police Detective WALTER J. MIKOWSKI [Tax ID No. 928784]; Police Detective JOSEPH HICKEY [Tax ID No. 928480]; and Police Detective ADRIAN J. ARAV [Tax ID No. 933619] all in their official and individual capacities, are employees of the City of New York Police Department, as referred to herein as the "Individual Defendants."

4.    Defendants Police Officer MICHAEL C. BLANDA [Tax ID No. 959495]; and Property Clerk Specialist JEFFREY CLARKE, both in their official and individual capacities, are employees of the City of New York Police Department, as referred to herein as the "Individual Defendants."

5.    Defendants Police Officer KASEY M. LAZARO [Tax ID No. 978596]; Police Sergeant NICHOLAS M. LOWETH [Tax ID No. 944749]; Police Sergeant STEPHANIE F. MALVICA [Tax ID No. 967179]; Police Officer ALI WALKER [Tax ID No. 929329]; and, Police Lieutenant MIKHAIL GONCHAROV [Tax ID No. 949043], all in their official and individual capacities, are employees of the City of New York Police Department, as referred to herein as the "Individual Defendants."

6.    Defendant GABRIELLA TERESA CASTELLANO, Kings County Assistant District Attorney, in her official and individual capacity, is an employee of the State of New York, as referred to herein as the "Individual Defendant."

7.    Defendant JESSICA TISCH, in her official and individual capacity, is the Commissioner of the corporation City of New York Police Department.

8.    Defendant BRADFORD SCOTT LANDER, in his official and individual capacity, is the

chief financial officer ("CFO") of the corporation "City of New York."

9.    Defendant ERIC LEROY ADAMS, in his official and individual capacity, is the chief

executive officer ("CEO") of the corporation "City of New York."

10.    Defendant CITY OF NEW YORK, hereinafter "Defendant CITY", is a [municipal]

domestic corporation which operates as a governmental corporate entity within the lower

five counties of New York state, i.e., New York City.

## JURISDICTION AND VENUE

11.    Jurisdiction is proper in this district under 28 U.S.C. § 1331 in that this action arises

under the Constitution and laws of the United States, among them 42 U.S.C. § 1983.

12.    Venue is proper in this district under 28 U.S.C. § 1391(c) in that the events at issue

occurred in Kings County, New York; and Queens County, New York.

13.    Venue is proper in this district under 28 U.S.C. § 1391(c) in that the City of New York is

deemed to reside in this jurisdiction.

## PRELIMINARY STATEMENT

14.    On **April 10, 2024**, agents of Defendant CITY OF NEW YORK police department

forcibly removed several items of privately owned property from the care, custody, and/

or control of Plaintiff; falsely arrested Plaintiff absent probable cause; and criminally

charged Plaintiff with possession of an alleged "assault rifle," amongst other non-

contraband items. Following the prosecution of the relevant criminal matter against Plaintiff, the matter was terminated in Plaintiffs favor on March 4, 2025. The police department has refused to return the items, *further* violating Plaintiffs constitutionally protected rights under the second amendment.

On **November 23, 2024,** another agent of Defendant CITY police department did remove two items of privately owned property from the care, custody, and/or control of Plaintiff absent lawful authority to do so and in violation of established instruction, policy, and/or procedure. Defendant CITY has retained possession of the items, refusing to return them.

On **December 19, 2024,** another agent of Defendant CITY police department removed two items of privately owned property from the care, custody, and/or control of Plaintiff absent lawful authority to do so. *Again*, Defendant CITY has retained possession of the items, refusing to return them. The latter two removals and retentions are a violation of Plaintiffs constitutionally protected rights under the first amendment.

Plaintiff made several attempts to retrieve all of the relevant property in possession of Defendant CITY to no avail. Demands for payment pursuant to an established Schedule of Fees have been accepted, acknowledged, and retained without objection or payment. This complaint follows.

## FACTUAL ALLEGATIONS UNDERLYING PLAINTIFF'S CLAIMS

### INCIDENT #1 : The April 10, 2024 Arrest

15.    Plaintiff avers that on Wednesday, April 10, 2024 at approximately 6:30am, Defendant, CITY OF NEW YORK Police Department [NYPD] Detective Ebony Shawntay Willis [WILLIS]; and, Defendant, Police Detective Joseph Hickey [HICKEY] did attempt to forcibly enter the unit 21G [21G] of Ryerson Towers, on the common heritage, at a location near 309 Lafayette Avenue in Kings County New York.

16.  Plaintiff avers that Defendants WILLIS and HICKEY did forcibly enter the aforementioned unit in the company of United States Department of Justice [DOJ] Special Agents Deleassa Penland [PENLAND], Justin Ellard, Yves D. Hunziker, Jared Eannucci [EANUCCI],  and Jeremy Roseman.

17.  Plaintiff avers that at approximately 6:33am, the male-appearing DOJ agents did demand that Plaintiff leave 21G for a period of time not exceeding ten minutes.

18.  Plaintiff avers that Plaintiff was escorted out of 21G in the company of Defendant WILLIS, Defendant HICKEY, any other NYPD agents, and an indeterminate amount of the DOJ agents.

19.  Plaintiff avers that when Plaintiff was allowed into 21G, Defendant WILLIS and Defendant HICKEY did enter with Plaintiff; and the DOJ agents did enter with several packages;[1] and WILLIS demanded Plaintiff sit in one spot, without movement, while the DOJ agents searched through each and every area of 21G, including, but not limited to, the kitchen cabinets, the bathroom medicine cabinet, and the dresser drawers.

20.  Plaintiff avers that the seat in which Defendant WILLIS demanded Plaintiff sit in was positioned in front of a window facing east.

21.  Plaintiff avers that Defendant HICKEY stood approximately three (3) feet from where Plaintiff was seated.

---

[1] Plaintiff has reason to believe that packages brought into 21G are visible in photographs captured by the DOJ and NYPD, including, but not limited to, image NYPD ECT Photo dd5_1_92276461_1712830762353_dsc_0059.

22.    Plaintiff avers that Plaintiff was feeling frigid; and was visibly shaking from the frigid feeling; and that Defendant HICKEY was standing next to Plaintiff, and was eclipsing the sun light, and preventing the sun light from reaching Plaintiff.

23.    Plaintiff avers that Plaintiff does have reason to believe that Defendant HICKEY was shorter than 6 feet tall; and that HICKEY did weigh more than 300lbs.

24.    Plaintiff avers that Plaintiff did state to Defendant HICKEY "Would you mind stepping to the side? You are blocking the sun light;" and, subsequently, HICKEY did reposition himself.

25.    Plaintiff avers that PENLAND did demand that Plaintiff sit at a table approximately 7 feet from where Defendant WILLIS did demand Plaintiff to sit; and Plaintiff did comply.

26.    Plaintiff avers that once seated at the table, PENLAND did also take a seat at the table; and did place a medium-sized audio recording device on the table between Plaintiff and PENLAND.

27.    Plaintiff avers that PENLAND did begin to record using the aforementioned device; and did ask Plaintiff about Plaintiffs employment status.

28.    Plaintiff avers that in response to PENLAND, Plaintiff did state "I'm not answering any questions at this time."

29.    Plaintiff avers that PENLAND did pose a second question to Plaintiff; and in response, Plaintiff did state "I'm not making any statements at this time."

30.     Plaintiff avers that PENLAND did appear visibly annoyed and/or frustrated by Plaintiffs aforementioned statements; and PENLAND did end the audio recording; and did snatch the recording device from the table before standing and walking away from the table.

31.     Plaintiff avers that subsequently, Plaintiff did stand and did return to the seat which WILLIS did originally demand Plaintiff to sit in.

32.     Plaintiff did state to Defendant HICKEY two to four more times "You're blocking the sun;" and that subsequently, HICKEY did move.

33.     Plaintiff avers that at approximately 7:30am, Plaintiff did stand from the seated position and did begin stretching Plaintiffs body by stretching both arms over head, and immediately folding over at Plaintiffs hips, touching Plaintiffs shoes.

34.     Plaintiff avers that Defendant WILLIS, in an elevated tone, did state to Plaintiff "Uhh uhh! You can't do that! You have to remain seated for our safety."

35.     Plaintiff avers that Defendant WILLIS did significantly interrupt Plaintiffs liberty of movement.

36.     Plaintiff avers that Plaintiff did state to Defendant WILLIS "I weigh all of 100lbs. What threat do I pose to you by stretching?"

37.     Plaintiff avers that Defendant WILLIS did respond to Plaintiff and did state "For our safety, you must stay seated where you are."

38.    Plaintiff avers that as Defendant WILLIS was making the aforementioned statement, WILLIS did take two steps in Plaintiffs direction.

39.    Plaintiff avers that Plaintiff did fear that Defendant WILLIS was going to place her hands on Plaintiff and force Plaintiff into a seated position.

40.    Plaintiff avers that under threat, duress, and coercion, Plaintiff did return to the seated position.

41.    Plaintiff avers that Plaintiff did believe that Plaintiff was not free to move Plaintiff's body; and that Plaintiff felt confined; and that Plaintiff was conscious of the confinement.

42.    Plaintiff avers that shortly thereafter, EANUCCI did state to Plaintiff "You don't have to be here. You're not under arrest. If you want, you can go to Starbucks."[2]

43.    Plaintiff avers that Plaintiff was **not** the *subject* of any arrest warrant; and Plaintiff was **not** the *target* of any search or seizure warrant.

44.    Plaintiff avers that at approximately 8:30am, Plaintiff did see PENLAND remove a container from a storage shelf positioned five (5) feet in front of where Plaintiff was seated.

45.    Plaintiff avers that Plaintiff did see PENLAND remove property from the container belonging to a non-party; and did see PENLAND walk out of the front door of 21G in the company of EANUCCI and at least one other DOJ agent.

---

[2] There is a STARBUCKS located approximately 160 feet from the entrance of Ryerson Towers.

46.    Plaintiff avers that Defendant WILLIS was standing approximately four (4) feet from
Plaintiff and four (4) feet from the container at the time PENLAND removed and
searched the container.

47.    Plaintiff avers that Plaintiff did immediately state to Defendant WILLIS "Why are they
taking those keys?"

48.    Plaintiff avers that Defendant WILLIS stated "I don't know what you're talking about."

49.    Plaintiff avers that Plaintiff responded to Defendant WILLIS and did state "You didn't
just see her grab those keys and walk out with them?"

50.    Plaintiff avers that Defendant WILLIS did respond to Plaintiff and did state "I just
walked in here. I didn't see anything."

51.    Plaintiff avers that Plaintiff did respond to Defendant WILLIS "Okay. I see who y'all are
now."

52.    Plaintiff avers that Plaintiff did remain in the same seated position from approximately
6:45am until approximately 9am.

53.    Plaintiff avers that at approximately 9am, Defendant WILLIS did demand that Plaintiff
stand, and did state to Plaintiff that WILLIS was placing Plaintiff "under arrest."

54.    Plaintiff avers that Plaintiff did state to Defendant WILLIS "What are the charges?;" and,

that WILLIS stated in response to Plaintiff "Guns."[3]

55.    Plaintiff avers that by Defendant WILLIS placing Plaintiff under arrest, WILLIS is substantially responsible for the instigation and commencement of the criminal proceeding against Plaintiff.

56.    Plaintiff has reason to believe that Defendant WILLIS did know or should have known that the arrest was unlawful; and that the arrest was retaliation for Plaintiffs speech to PENLAND [*see* ¶27-30]; and that the arrest was meant to deprive Plaintiff of private personal property under the care, custody, and/or control of Plaintiff.

57.    Plaintiff avers that Defendant HICKEY was standing near Plaintiff from the time that Plaintiff entered 21G (*see* ¶19) until Defendant WILLIS placed handcuffs on Plaintiff.

58.    Plaintiff avers that Defendant HICKEY failed to intervene to stop the unlawful arrest.

59.    Plaintiff avers that Defendant WILLIS did begin to do a physical search of Plaintiff; and that WILLIS did use her hands to grope Plaintiffs limbs and backside.

60.    Plaintiff avers that Plaintiff did request that Defendant WILLIS retrieve a brown knit sweater and a head covering from the bedroom for Plaintiff to wear as apart of plaintiffs sincerely held religious beliefs.

61.    Plaintiff avers that in response, Defendant WILLIS, in an elevated tone, did state to Plaintiff "You're being difficult;" and that WILLIS did refuse to provide Plaintiff with the

---

[3] *See* Felony Complaint, signed by Defendant MIKOWSKI, dated April 10, 2024

requested covering sufficient to protect Plaintiff from frigid temperatures and comply with Plaintiffs sincerely held religious beliefs.

62.   Plaintiff avers that Defendant WILLIS did place handcuffs around the wrists of Plaintiff; and that WILLIS did escort Plaintiff, in handcuffs, onto an occupied elevator, and subsequently out of the Ryerson Towers building.

63.   Plaintiff avers that Defendant WILLIS escorted Plaintiff more than 200 yards to a location on Lafayette Avenue near St. James Place to a parked, gray, Hyundai Sonata bearing New York State License Plate number HMW 5363; and did require Plaintiff to stand near the rear-driver side door for no more than 5 minutes, until WILLIS did remove several items from the backseat, including, but not limited to shoes, moving them to the trunk of the vehicle.

64.   Plaintiff avers that Plaintiff was publicly humiliated by Defendant WILLIS placing Plaintiff in handcuffs; and walking hand-cuffed-Plaintiff onto an elevator occupied by a member of the Ryerson Towers community; and walking hand-cuffed-Plaintiff for more than 200 yards on Lafayette Avenue.

65.   Plaintiff avers that Defendant WILLIS did place Plaintiff into the backseat of the aforementioned vehicle.

66.   Plaintiff avers that prior to the conduct of Defendant WILLIS, Plaintiff had never before been arrested; placed in handcuffs; or compelled to travel in a police vehicle or to travel with any police escort.

67.    Plaintiff avers that Defendant WILLIS did drive the aforementioned vehicle nearly 600 yards to the City of New York Police Department 88th Precinct at 298 Classon Avenue, Brooklyn, New York.

68.    Plaintiff avers that Defendant WILLIS and Plaintiff did exit the vehicle; and WILLIS did escort Plaintiff to the entrance of the 88th Precinct.

69.    Plaintiff avers that as Defendant WILLIS and Plaintiff were exiting the vehicle and entering the precinct, WILLIS did volunteer to Plaintiff that WILLIS weighs 240lbs, referring to herself as a "stallion."



*Image 1 - Defendant WILLIS retrieving items from the rear trunk of the gray, Hyundai Sonata bearing New York State License Plate number HMW 5363*



*Image 2 - Gray, Hyundai Sonata bearing New York State License Plate number HMW 5363, parked directly in front of the entrance to the 88th Precinct on April 10, 2024, at approximately 3:50pm*

70.     Plaintiff avers that Defendant WILLIS did escort Plaintiff to the front desk of the precinct

at approximately 9:15am; and that WILLIS did begin to write on a "PRISONER

PEDIGREE CARD;"[4] and did ask Plaintiff for Plaintiffs "last name."



*Image 3 - NYPD PRISONER PEDIGREE CARD, dated "04/10/24" "0915"[am]*

71.     Plaintiff avers that Plaintiff did state to Defendant WILLIS that Plaintiff did not wish to

answer any questions.

72.     Plaintiff avers that Defendant WILLIS ascertained Plaintiffs identity for the "PRISONER

PEDIGREE CARD" as WILLIS identified a mailing address for Plaintiff; and WILLIS

printed a telephone number for Plaintiff which Plaintiff did not provide to Defendants

WILLIS, HICKEY, OR MIKOWSKI and which has been used in formal, written

correspondences between Plaintiff and Defendant CITY OF NEW YORK.

73.     Plaintiff avers that Defendant WILLIS did conduct a second physical search of Plaintiff;

_____

[4] *See* Prisoner Pedigree Card

and that WILLIS did use her hands to grope Plaintiffs limbs and hair.

74. Plaintiff avers that Defendant WILLIS did escort Plaintiff to a cell; and did place Plaintiff into the cell; and did close and lock the cell door.

75. Plaintiff avers that Plaintiff made a request to an unidentified NYPD Police Officer to use the restroom; and subsequently, Defendant WILLIS did arrive at the aforementioned cell to escort Plaintiff to the restroom.

76. Plaintiff avers that while Defendant WILLIS was escorting Plaintiff to the restroom, WILLIS did state to Plaintiff "What do you want to eat?"

77. Plaintiff avers that Plaintiff did state to Defendant WILLIS "A green juice - apple, kale, cucumber, and ginger."

78. Plaintiff avers that Plaintiff entered the doorway of the restroom; and that Defendant WILLIS did remove the handcuffs from Plaintiffs wrist.

79. Plaintiff avers that Plaintiff did use the restroom; and that upon exiting, Defendant WILLIS and NYPD Sergeant Theresa M. Tucker [TUCKER] were standing near the doorway of the restroom.

80. Plaintiff avers that Defendant WILLIS did place handcuffs around Plaintiffs wrists; and while doing so, did state to Plaintiff "What if I can't find that? What else do you want?"

81. Plaintiff avers that Plaintiff did respond to Defendant WILLIS and did state "Do you

remember that deli we passed on the way here? On Lafayette near the corner of Classon? They make juices - apple, kale, cucumber, ginger."

82.     Plaintiff avers that Defendant WILLIS did state to Plaintiff "What if that's too expensive? This comes out of our pocket."

83.     Plaintiff avers that Plaintiff did state to Defendant WILLIS "What is the budget?"

84.     Plaintiff avers that Defendant WILLIS did state to Plaintiff "Twenty dollars."

85.     Plaintiff avers that Plaintiff did state to Defendant WILLIS "Apple, kale, cucumber, and ginger."

86.     Plaintiff avers that TUCKER did state to Plaintiff "Look! You're in jail. You are in jail!"

87.     Plaintiff avers that Defendant WILLIS did escort Plaintiff back to the aforementioned cell; and did place Plaintiff in the cell; and did close and lock the cell door.

88.     Plaintiff avers that sometime in the two hours following Defendant WILLIS' request to know what Plaintiff would like to eat, WILLIS did bring Plaintiff a drink.

89.     Plaintiff avers that Plaintiff did immediately make a request to Defendant WILLIS to make a phone call.

90.     Plaintiff avers that Defendant WILLIS did open the aforementioned cell; and did escort Plaintiff approximately five (5) feet to a telephone.

91.    Plaintiff avers that Plaintiff did place two phone calls; and subsequently, Defendant WILLIS did escort Plaintiff back into the aforementioned cell; and did lock the cell door.

92.    Plaintiff avers that at approximately 9:40am, Defendant WILLIS did generate New York City Police Department Omniform System Complaint # 2024-088-001362; and did make the following narrative [in *whole*]:[5]

> "ON APRIL 10, 2024, AT 0630 HOURS US ATTORNEY EASTERN DISTRICT SEARCH WARRANT 24-MJ-288 WAS EXECUTED AT THE ABOVE LOCATION. DEFENDANT WAS FOUND IN POSSESS OF"

93.    Plaintiff avers the aforementioned complaint contained the following information [in pertinent part]:

> CRIM POSS WEAPON
> FELONY
> WEAPON POSSESSION 3
> DANGEROUS WEAPONS
> DETECTIVE ARREST
> No Victims for Complaint #2024-088-001362
> No Property Data for Complaint #2024-088-001362
> No Evidence Data for for Complaint #2024-088-001362
> **ARRESTS**:
> <u>Arrest ID</u> K24620473
> <u>Defendant Name</u> RHODES, ASSATA
> <u>Arrest Date</u> 04/10/2024
> Reporting/Investigating M.O.S. Name: DT2 MIKOWSKI WALTER
> Supervisor Approving Name: SDS COLLINS CRYSTAL
> Complaint Report Entered By: DT3 WILLIS

94.    Plaintiff avers that between 9:35am and 10:35am, Police Officer Daniel C. Carmosin [CARMOSIN] and Police Officer Mosa Effwa Parris [PARRIS] of the Police Department Evidence Collection Team did arrive at 309 Lafayette Avenue; and did enter 21G in the absence of Plaintiff; and without prior authorization from Plaintiff.

---

[5] *See* New York City Police Dept. Omniform System Complaint #2024-088-001362, dated "2024-04-10 09:40"[am]



***Image 4*** *- PO CARMOSIN and PO PARRIS captured in CARMOSIN'S self portrait, taken prior to entering Ryerson Towers (Credit: PO CARMOSIN)*

95.    Plaintiff avers that CARMOSIN and PARRIS were in 21G, in the absence of Plaintiff, for more than one hour.

96.    Plaintiff avers that CARMOSIN did take several photographs of private property in the care, custody, and /or control of Plaintiff; and did collect and confiscate DNA and / or DNA by-product from 21G.[6]

97.    Plaintiff avers that CARMOSIN did prepare an NYPD REQUEST FOR LABORATORY

---

[6] *See* NYPD Property Clerk Invoice 3001729293, created by PO CARMOSIN, dated 04/11/2024

EXAMINATION REPORT PD521-165; and did enter the following remarks [in pertinent part]:

> AT TPO, BNECT WAS REQUESTED TO LOCATION IN REGARDS TO A CPW ARREST THAT OCCURRED DURING SEARCH WARRANT #: 24-MJ-288. **A/O (DET MIKOWSKI) STATED THAT FIREARMS WERE FOUND IN BLACK CASES INSIDE THE CLOSETS NEAR THE APARTMENT FRONT DOOR BY SPECIAL AGENT JARED EANUCCI**. FIREARMS WERE REMOVED FROM THE CLOSETS AND PLACED IN THE REAR BEDROOM ON THE FLOOR WITH CASES OPEN.
>
> AFTER PROCESSING, FIREARMS AND OTHER ASSORTED ITEMS WERE HANDED OVER TO DET MIKOWSKI FOR VOUCHERING. [**emphasis added**]



*Image 5 - Excerpt of NYPD REQUEST FOR LABORATORY EXAMINATION REPORT, prepared and completed by PO CARMOSIN*

98.     Plaintiff avers that at approximately 11:45am, a male-appearing person, dressed in plain-clothes, arrived near the cell Plaintiff was in; and did identify himself to Plaintiff as an investigator; and did ask if Plaintiff would like to "go upstairs" and talk.[7]

99.     Plaintiff avers that Plaintiff did state to the aforementioned investigator "Why would I do that?"

100.    Plaintiff avers that Plaintiff made no further statements to the aforementioned investigator before he exited the area of the cell.

101.    Plaintiff avers that sometime after 4pm, Defendant HICKEY did begin to unlock the cell Plaintiff was being confined in; and did state to Plaintiff "come on."

102.    Plaintiff avers that Plaintiff was seated in the aforementioned cell; and did ask Defendant HICKEY "Where are we going?"

103.    Plaintiff avers that Defendant HICKEY did respond to Plaintiff "I'm going to take your prints and pictures."

104.    Plaintiff avers that Plaintiff did remain in a seated position; and did state to Defendant HICKEY "I do not wish to have my fingerprints or photographs taken;" and Plaintiff avers an arrestee locked in an adjacent cell did hear the interaction.

105.    Plaintiff avers that Defendant HICKEY did close the aforementioned cell door; and did lock it; and did leave the area of the cell.

---

[7] *See* NYPD ELECTRONIC RECORDING OF CUSTODIAL INTERROGATION

106.    Plaintiff avers that at approximately 4:58pm, Defendant HICKEY and / or Defendant

WILLIS did publish or did cause for agents of the 88th precinct to publish an image of

alleged "firearms" to the x.com [formally "Twitter" and/or twitter.com] profile page of

the NYPD 88th precinct.[8]



***Image 6*** *- Image posted to x.com account owned, managed, and operated by NYPD 88th*
*Precinct (Credit: x.com)*

107.    Plaintiff avers that the aforementioned image did contain a Smith and Wesson rifle

[hereinafter, "the S&W Rifle"] [third long-gun from bottom].

108.    Plaintiff avers that the aforementioned image was posted in accompaniment of the

following caption: "More dangerous firearms removed from the streets of the 88

precinct."

_____

[8] *See* x.com post

109. Plaintiff avers that Defendant WILLIS and Defendant HICKEY did know or did have reason to know that the items in the image published to x.com were not "firearms."[9]

110. Plaintiff avers that after an investigation by Defendant CITY OF NEW YORK Department of Investigation [DOI] into all of the X posts made between January 2022 and August 2024, DOI NYPD concluded that "Several of NYPD's practices regarding social media are not in compliance with the Citywide Social Media Policy to which all City agencies are required to adhere" and that some posts "raise questions with respect to whether they may be deemed prohibited engagement."[10]

111. Plaintiff avers that sometime after 5pm, Plaintiff made a request to an unidentified NYPD Police Officer to place a supper order.

112. Plaintiff avers that at approximate 6:35pm, NYPD COMPLAINT REPORT WORKSHEET PD313-152A[11] was completed; and the "OFFENSE" was identified as "PL 265 02 1 COUNT CPW-ASSAULT RIFLE."

113. Penal Law § 265.00 defines an "Assault weapon" as "a semiautomatic rifle…" and defines "Semiautomatic" as any repeating rifle, shotgun or pistol,… which utilizes a

---

[9] In relevant part, Penal Law § 265.00 (3) defines "Firearm" as "(b) a shotgun having one or more barrels less than eighteen inches in length; or (c) a rifle having one or more barrels less than sixteen inches in length;… or (e) an assault weapon;…"

Defendant ARAV measured the three (3) long-guns in the x.com image, and confirmed that both rifles measured more than sixteen inches in length; and that the shotgun measured more than eighteen inches in length. The measurement alone excludes all three long-guns from characterization as "firearms."

[10] See "An Assessment of NYPD's Use of Social Media" [ https://www.nyc.gov/assets/doi/reports/pdf/2025/04SocialMediaRpt_Release_01.28.2025.pdf ]

[11] See NYPD COMPLAINT REPORT WORKSHEET PD313-152A excerpt, dated April 10, 2024 at 6:35pm

portion of the energy of a firing cartridge or shell to extract the fired cartridge case or spent shell and chamber the next round, and which requires a separate pull of the trigger to fire each cartridge or shell.

114. Plaintiff avers that Defendant WILLIS and Defendant HICKEY did not know whether or not any of the long-guns seized from 21G or any of the long-guns in the x.com image "repeat[ed]", or utilized "a portion of the energy of a firing cartridge or shell to extract the fired cartridge case or spent shell and chamber the next round."

115. Plaintiff avers that Defendant WILLIS and Defendant HICKEY did not test or measure any of the long-guns; and that WILLIS and HICKEY had no knowledge of the operability status, functionality status, or condition of the long-guns at the time of arrest.

116. Plaintiff avers that Defendant WILLIS did not conduct any investigation into the operability status or functionality status of any of the long-guns prior to the arrest of Plaintiff.

117. Plaintiff avers that the facts and circumstances within the knowledge of Defendant WILLIS were insufficient to warrant WILLIS in the belief that Plaintiff was committing or had committed a criminal offense.

118. Plaintiff avers that the only "OFFENSE" charged was "PL 265 02 1 COUNT CPW-ASSAULT RIFLE;" and, that PL § 265.02(1) is classified as a "Class D Felony;" and that absent the assessment of such "Class D Felony" for the alleged criminal possession of an alleged "assault rifle," Plaintiff could have been issued a summons or other form of process without the effectuation of an arrest or an extended period of detainment..

119.    Plaintiff avers that absent the assessment of such "Class D Felony," Plaintiff could not have lawfully been arrested.

120.    Plaintiff avers that absent the assessment of such "Class D Felony," the arrest was excessive.

121.    Plaintiff avers that Plaintiff has reason to believe that Defendant CITY OF NEW YORK police department and it's agents have a pattern and/or practice of unnecessarily arresting individuals and subjecting arrestees to elongated periods of detainment.[12]

122.    Plaintiff avers that criminal behavior was imputed on Plaintiff by the creation and/or filing of any and all instruments / documents / subscriptions alleging that Plaintiff criminally possessed an assault rifle, firearm, and/or weapon.

123.    Plaintiff avers that the imputation of criminal possession of an "assault rifle" on Plaintiff was based on false information; and Plaintiff has reason to believe the misrepresentation was made in bad-faith.

124.    Plaintiff avers there was no basis for any implication that Plaintiff criminally possessed an "assault rifle."

---

[12] On March 21, 2025, five (5) days before the certification of this complaint, Soso Ramishvili, who was also charged with criminal possession, died while in NYPD custody at Brooklyn Central Bookings at 120 Schermerhorn Street, Brooklyn, New York. A joint statement between the Brooklyn Defenders and The  Legal Aid Society states [in pertinent part]: **"This person, who should have been granted a desk appearance and released based on the offense,** languished in pain in custody for three days and was **deprived of medical care** despite repeated pleas from defense lawyers and other personnel to secure them needed care." **[emphasis added]**
      *See* "Joint Statement from Legal Aid, Brooklyn Defenders on Death in NYPD Custody at Kings County Criminal Court"

125.    Plaintiff avers that sometime before 7pm, Defendant HICKEY did arrive at the aforementioned cell; and did state to Plaintiff "I'm going out for pizza. Do you want a slice?"

126.    Plaintiff avers that Plaintiff did state to Defendant HICKEY "I have a severe dairy allergy. I would like a vegetable pad thai from Danee Thai on Dekalb near Classon."

127.    Plaintiff avers that Defendant HICKEY did leave the area of the cell.

128.    Plaintiff avers that Defendant MIKOWSKI did enter the area of the cell; and did approach the aforementioned cell; and did state to Plaintiff, in sum and substance, that if Plaintiff did not consent to fingerprinting and photographing, Plaintiff would not be processed and would be left in the cell overnight.

129.    Plaintiff has reason to believe that the aforementioned statements made by Defendant MIKOWSKI to Plaintiff was a threat; and was MIKOWSKI'S first interaction with Plaintiff.[13]

130.    Plaintiff avers that Plaintiff did state to Defendant MIKOWSKI "I do not consent to being fingerprinted or photographed."

---

[13] Plaintiff has reason to believe that Defendant MIKOWSKI was **not** present at 21G prior to the arrest of Plaintiff; and that surveillance video from Ryerson Towers would display which law enforcement officers were present prior to the arrest of Plaintiff. Plaintiff made several attempts to obtain the surveillance videos from Ryerson Towers, including, but not limited to, the acquisition of Judicial Subpoenas Duces Tecum, served on the Ryerson Towers Board of Directors President and Chief Executive Officer of the Ryerson Towers managing agent. Both parties failed to substantively respond to the aforementioned subpoenas.
     See Judicial Subpoena Duces Tecum; and,
     Excerpts of Affirmation in Support of Judicial Subpoena Duces Tecum

131.    Plaintiff avers that Defendant MIKOWSKI did leave the area of the cell.

132.    Plaintiff avers that Plaintiff has reason to believe that Defendant MIKOWSKI; nor
Defendant HICKEY; nor Defendant WILLIS did contact the Borough Court Section
supervisor or cause for the Borough Court Section supervisor to be contacted.

133.    Plaintiff avers that Defendant WILLIS did enter the area of the cell; and did approach the
cell; and did state to Plaintiff "You're being difficult."

134.    Plaintiff avers that Plaintiff did state to Defendant WILLIS in response "How am I being
difficult?"

135.    Plaintiff avers that Defendant WILLIS did state in response "You don't want to be
fingerprinted."

136.    Plaintiff avers that Plaintiff did state to Defendant WILLIS in response "Is it not my right
to decline to be fingerprinted and photographed?"

137.    Plaintiff avers that Defendant WILLIS did state in response to Plaintiff "Yes, but didn't
we feed you? You asked for a green juice and I got it for you. You asked for Thai food.
That money is coming out of our pockets."

138.    Plaintiff avers that Plaintiff did state to Defendant WILLIS "I did not ask to be here. I
would have preferred to be let alone."

139.    Plaintiff avers that Plaintiff has reason to believe that Defendant WILLIS was personally

offended by Plaintiffs desire to be free from police inquiry and to be "let alone."

140.    Plaintiff avers that Defendant WILLIS did begin to walk away from the area of the cell; and that WILLIS stated, in an elevated tone "See! I got something for you. You want to be difficult?!"

141.    Plaintiff avers that Plaintiff did understand Defendant WILLIS' statement to be a threat; and that Plaintiff did fear for Plaintiffs life, safety, and overall well-being.

142.    Plaintiff avers that Defendant HICKEY did return to the area of the cell; and did unlock the cell door; and did provide Plaintiff with a container of food; a plastic spoon; and a bottle of Poland Spring branded water.

143.    Plaintiff avers that Plaintiff did begin to eat from the container of food.

144.    Plaintiff avers that Defendant MIKOWSKI and Defendant HICKEY did enter the area of the cell; and did begin to make several, various statements to Plaintiff regarding Plaintiffs non-consent to being fingerprinted and photographed.

145.    Plaintiff avers that Plaintiff did believe that Defendant MIKOWSKI and Defendant HICKEY did make the aforementioned several and varied statements to Plaintiff due to Defendant WILLIS' aforementioned statement of "I got something for you. You want to be difficult?"

146.    Plaintiff avers that Plaintiff was severely intimidated by Defendant HICKEY'S physical stature.

147.    Plaintiff avers that Defendant HICKEY has been the subject of 17 allegations of force including 11 allegations of physical force; and 14 allegations of abuse of authority including 8 allegations of unlawful search; and one former arrestee did file a complaint in the Eastern District of New York alleging that HICKEY forcibly manipulated the arrestee's body in violation of "8th and 14th amendment rights."[14]

148.    Plaintiff avers that Defendant HICKEY was the subject of a 42 USC § 1983 claim filed in the Eastern District of New York, alleging that HICKEY, "without probable cause and/or justification, arrested" and "falsely charged" the complainant.[15]

149.    Plaintiff avers that Defendant MIKOWSKI has been the subject of 3 allegations of force.[16]

150.    Plaintiff avers that Defendant MIKOWSKI is the subject of a 42 USC § 1983 claim, alleging MIKOWSKI fabricated evidence, filed in the Southern District of New York in January 2025.[17]

151.    Plaintiff stated to Defendants MIKOWSKI and HICKEY, in sum and substance, that Plaintiff weighs about one hundred pounds; and that Plaintiff is not interested in being injured if physical force was to be used to compel Plaintiff; and that Plaintiff does not consent to being fingerprinted and photographed.

---

[14] *See* EDNY 17CV423 Complaint excerpts; 50-a.org (HICKEY) [ https://www.50-a.org/officer/4LUX ]

[15] *See* EDNY 12CV3238 Complaint excerpts

[16] *See* 50-a.org excerpts (MIKOWSKI)

[17] *See* SDNY 25CV00572 Complaint excerpts

152.    Plaintiff avers that Plaintiff stated to Defendants MIKOWSKI and HICKEY "I do not
consent to being fingerprinted or photographed. If you compel me to be fingerprinted and
photographed, I will assess fees pursuant to the Schedule of Fees."

153.    Plaintiff avers that before Plaintiff did finish eating from the container of food, Defendant
MIKOWSKI did unlock and open the cell door; and did demand that Plaintiff stand and
exit the cell.

154.    Plaintiff avers that Plaintiff did state "Is that a lawful order?"

155.    Plaintiff avers that Defendant MIKOWSKI stated "Yes;" and that Plaintiff did stand and
did exit the cell under threat, duress, and coercion.

156.    Plaintiff avers that Plaintiff was not placed in leg restraints; and that Plaintiff was not
taken to the Borough Court Section.

157.    Plaintiff avers that Plaintiff did keep Plaintiffs arms and hands by Plaintiffs sides; and
that Plaintiff did state "I do not consent to being fingerprinted;" and that Plaintiff did look
into a security camera affixed to an area of the cell more than two feet above Plaintiff;
and did state "I do not consent."

158.    Plaintiff avers that Defendant MIKOWSKI did state to Plaintiff "Yeah, we know. We saw
your paperwork. You can charge us for it, okay?"

159.    Plaintiff avers that Plaintiff has reason to believe that Defendant MIKOWSKI was
referring to Plaintiffs Schedule of Fees when MIKOWSKI did state "We saw your

paperwork."

160.    Plaintiff avers that Defendant MIKOWSKI and Defendant HICKEY did know or did have reason to know that MIKOWSKI'S physical contact with Plaintiff was offensive.

161.    Plaintiff avers that Defendant MIKOWSKI did know or had reason to know that a probable consequence of compelling Plaintiff to be fingerprinted and photographed, and that making physical contact with Plaintiff would result in Plaintiffs assessment of fees based on Plaintiffs Schedule of Fees.

162.    Plaintiff avers that Defendant MIKOWSKI and Defendant HICKEY did agree to the assessment of fees by MIKOWSKI'S statement "You can charge us for it, okay?"; and that Plaintiff had reason to believe that Defendants would pay the fees assessed.

163.    Plaintiff avers that Defendant MIKOWSKI did grab for Plaintiffs left hand, and did begin to maneuver Plaintiffs left hand against an electronic machine.

164.    Plaintiff avers that Defendant MIKOWSKI did grab for Plaintiffs right hand, and did begin to maneuver Plaintiffs right hand against an electronic machine.

165.    Plaintiff avers that Defendant MIKOWSKI intended to cause physical contact with Plaintiff.

166.    Plaintiff avers that absent physical contact caused by Defendant MIKOWSKI, Plaintiff would not have voluntarily and / or willingly placed Plaintiffs hands upon the aforementioned electronic machine.

167. Plaintiff avers that as Plaintiff was being physically manipulated against Plaintiffs will, Plaintiff did look up to the corner of the area where a surveillance camera was positioned, and did state to the camera  "I do not want to be fingerprinted. I am being handled under threat, duress, and coercion. They have agreed to be subject to my Schedule of Fees."

168. Plaintiff avers that Plaintiff has reason to believe that the aforementioned statements made by Plaintiff would be visible on the surveillance camera footage.

169. Plaintiff avers that Plaintiff did decline to be fingerprinted no less than six (6) times.

170. Plaintiff avers that Plaintiff did not desire to have physical contact with any man, or any Defendant, or any male-appearing Defendant; and Plaintiff did wish to be free from undesired physical contact.

171. Plaintiff avers that Plaintiff believes undesired physical contact to be so extreme and outrageous that Plaintiff recognized such conduct in Plaintiffs Schedule of Fees;[18] and Plaintiff noticed Defendants of circumstances by which Plaintiff would assess such fees for undesired physical contact beginning in 2020.[19]

172. Plaintiff avers that Plaintiff believed that Defendant CITY OF NEW YORK would not subject Plaintiff to undesired physical contact, or search and seizure absent right or privilege to do so; and that CITY would compensate Plaintiff pursuant to Plaintiffs Schedule of Fees if such conduct took place absent right or privilege.

---

[18] *See* Schedule of Fees

[19] *See* USPS Certified Mail and Return Receipts

173.   Plaintiff avers that Defendant MIKOWSKI had knowledge that Plaintiff was susceptible to emotional distress prior to the undesired physical contact of MIKOWSKI as MIKOWSKI acknowledged seeing Plaintiffs "paperwork" which specified fees to be assessed for the conduct of assault, fingerprinting, and photographing.

174.   Plaintiff avers that Defendant MIKOWSKI proceeded to take Plaintiffs fingerprints, using physical contact to do so despite knowledge that Plaintiff did not desire the physical contact.

175.   Plaintiff has reason to believe that Defendant MIKOWSKI believed himself to be in a position of authority over Plaintiff; and that MIKOWSKI did exercise control over Plaintiff; and that MIKOWSKI was in a position to harm Plaintiff and Plaintiffs interests.

176.   Plaintiff avers that Plaintiff was offended by the physical contact of Defendant MIKOWSKI; and that the physical contact was against Plaintiffs sincerely held religious beliefs; and Plaintiff suffered a loss of personal dignity due to the physical contact of MIKOWSKI.

177.   Plaintiff avers that the conduct of Defendant MIKOWSKI continued despite Plaintiffs objection to being photographed.

178.   Plaintiff avers that Defendant MIKOWSKI did demand that Plaintiff walk approximately five feet to an area in front of a camera; and did demand that Plaintiff pose in two different positions for multiple photographs.

179.   Plaintiff avers that Defendant MIKOWSKI did take several photographs of Plaintiff; and

that the photographs were not taken in private; and that Defendant HICKEY was standing less than 10 feet from Plaintiff; and that Plaintiff was not allowed to wear any religious head covering.

180.    Plaintiff avers that Plaintiff did decline to be photographed no less than six (6) times.

181.    Plaintiff avers that Defendant MIKOWSKI did escort Plaintiff back into the cell; and did close and lock the cell door.

182.    Plaintiff avers that Plaintiff was held at the 88th Precinct for approximately 12 hours.

183.    Plaintiff avers that at approximately 9pm, Plaintiff was escorted, in handcuffs, by two unidentified, uniformed, male-appearing NYPD Police Officers, in a marked police vehicle, to Brooklyn Central Bookings at 120 Schermerhorn Street, Brooklyn, New York.

184.    Plaintiff avers that Plaintiff was held in handcuffs; physically searched more than once; photographed without a head-covering; subject to an interrogation by an unidentified, alleged, medical professional; and subject to interrogation by the New York City Central Justice Agency.

185.    Plaintiff avers that Plaintiff was placed in a cell for more than 18 hours without access to privacy, toilet tissue, nutrition, fresh air, natural sunlight, soap or other disinfectant, non-toxic feminine products, toiletries, or clean water; and, was subject to in-humane, absolutely atrocious conditions including, but not limited to, over-crowded cells strewn with trash, urine-covered floors, and clogged and unusable toilets.

186.    Plaintiff avers that on Thursday, April 11, 2024, Defendant MIKOWSKI did make the following statements [in pertinent part] pursuant to CPL § 210.45:

> "THE DEFENDANT [ASSATA RHODES] COMMITTED THE OFFENSE(S) OF CRIMINAL POSSESSION OF A WEAPON IN THE THIRD DEGREE; CRIMINAL POSSESSION OF A FIREARM; CRIMINAL POSSESSION OF A WEAPON IN THE FOURTH DEGREE"
>
> "DEPONENT OBSERVED NUMEROUS ITEMS WERE RECOVERED INSIDE THE ABOVE MENTIONED LOCATION..., INCLUDING; ONE AR SMITH & WESSON MODEL M&P 15 .22 CALIBER ASSAULT RIFLE"

187.    Plaintiff has reason to believe that the alleged "AR SMITH & WESSON MODEL M&P 15.22 CALIBER ASSAULT RIFLE" is the same S&W Rifle depicted in the image posted to the 88th precinct X account at 4:58pm on April 10, 2024 [*see* ¶106].

188.    Plaintiff avers that Defendant MIKOWSKI made the aforementioned statements in a criminal complaint; and did apply his signature to that statement; and did transmit, or did cause to be transmitted, the statements to the Kings County District Attorney's Office [KCDAO] on April 11, 2024.[20]

189.    Plaintiff has reason to believe that Defendant MIKOWSKI was not present in or near 21G prior to the arrest of Plaintiff; and that no "Turnover Arrest" was effectuated.[21]

---

[20] *See* Kings County Online Arrest Coversheet
    *See* Felony Complaint, signed by Defendant MIKOWSKI, dated April 10, 2024

[21] Plaintiff has reason to believe that Defendant MIKOWSKI was not present at 21G before or at the time of arrest. Defendant WILLIS significantly interrupted/restrained Plaintiffs liberty of movement, placed Plaintiff in handcuffs, stated to Plaintiff that WILLIS was placing Plaintiff under arrest, escorted Plaintiff by car to the 88th Precinct, completed the NYPD Prisoner Pedigree Card, created various complaint forms and other initiating instruments, and completed an indeterminate amount of documents/instruments. At the time of arrest and/or directly following the arrest: (1) no injuries were caused to any officers, (2) WILLIS was not off-duty, (3) the arrest was not effectuated for any other authority, (4) no warrant delegated the arrest, (5) there was no mass arrest, (6) the arrest was not made by a civilian, (7) the arrest was not connected to any family court matter, and (8) the arrest was not connected to any order of protection.

190.    Plaintiff avers that Defendant MIKOWSKI had not "recovered" any "A[ssault] R[ifle] SMITH & WESSON;" and Plaintiff has reason to believe that Defendant MIKOWSKI had not "recovered" any items from 21G prior to the arrest of Plaintiff.

191.    Plaintiff avers that Defendant MIKOWSKI did not test or measure any of the long-guns; and that MIKOWSKI had no knowledge of the operability status, functionality status, or condition of the long-guns.

192.    Plaintiff avers that Defendant MIKOWSKI did not conduct any investigation into the operability status or functionality status of any of the long-guns prior to the completion of the aforementioned complaint of MIKOWSKI, submission to the district attorney, and arraignment of Plaintiff.

193.    Plaintiff avers that Defendant MIKOWSKI'S statement that an "ASSAULT RIFLE" was "recovered" is the cause of Plaintiff being charged with "CRIMINAL POSSESSION OF A WEAPON IN THE THIRD DEGREE; CRIMINAL POSSESSION OF A FIREARM; CRIMINAL POSSESSION OF A WEAPON IN THE FOURTH DEGREE"

194.    Plaintiff avers that Plaintiff has reason to believe that Defendant MIKOWSKI'S statements made Plaintiff appear to be a danger or threat to law enforcement.

195.    Plaintiff avers that Plaintiff has reason to believe Defendant MIKOWSKI created, signed, and distributed the aforementioned complaint for the purpose of depriving Plaintiff of private personal property under the care, custody, and/or control of Plaintiff.

196.    Plaintiff avers that Plaintiff has reason to believe that Defendant WILLIS conspired with

Defendant MIKOWSKI to transmit false and misleading information to the KCDA.

197.    Plaintiff avers that the NYPD Activity Log Report, dated April 10, 2024, for both

Defendants WILLIS and MIKOWSKI indicate "No reported activities."



*Image 7 - Excerpt of NYPD Activity Log Report for Defendant WILLIS, dated 04/10/2024*



*Image 8 - Excerpt of NYPD Activity Log Report for Defendant MIKOWSKI, dated 04/10/2024*

198.    Plaintiff avers that on Thursday, April 11, 2024, Attorney Adam C. Myren [MYREN]

spoke with Plaintiff for less than 10 minutes about Plaintiffs life history; and Plaintiffs

inclination to submit a Notice of Appearance before arraignment.[22]

---

[22] At the very next Court ordered appearance, Plaintiff moved the Court and was granted leave to proceed "pro se."

199.    Plaintiff avers that Plaintiff did request to see the accusatory instrument upon which Plaintiff was charged.

200.    Plaintiff avers that Plaintiff did read the accusatory instrument - a felony complaint - sworn to by Defendant MIKOWSKI; and that the felony complaint did not include any statements / averments regarding probable cause.

201.    Plaintiff avers that the felony complaint, sworn to by Defendant MIKOWSKI, did substantially instigate and was the direct cause of the criminal proceeding against Plaintiff.

202.    Plaintiff avers that less than thirty minutes after Plaintiffs meeting with MYREN, Plaintiff was removed from the cell by an unidentified, uniformed, NYPD Officer, placed in handcuffs, and escorted into a court room for arraignment.

203.    Plaintiff avers that at arraignment, Assistant District Attorney Monique Eforghene Aziza [AZIZA] did make the following, false, intentionally misleading statements before the court:[23]

> "The target was the defendant.";
> "I have seen the warrant, and she's the target on the warrant";
> "The arresting officer observed *and* recovered the following items from the Defendant's apartment: One AR Smith Wesson model M&P 15-22.22 caliber *assault rifle*..." [*emphasis added*]

204.    Plaintiff avers that the false statements made at arraignment by AZIZA was the direct cause of the continuation of the criminal proceeding against Plaintiff.

---

[23] *See* Excerpt of Certified Transcript of April 11, 2024 Arraignment

205.    Plaintiff avers that pursuant to the false statements made by AZIZA, Judge Jennifer

Turbidy [TURBIDY] wrote on a Felony Complaint "Target of federal warrant △."[24]

206.    Plaintiff avers that pursuant to the false statements made by AZIZA, TURBIDY did state

the following:

> "I note that she has no record of criminal convictions or record of flight to
> avoid prosecution, but the pending charges are quite serious, and the
> alleged possession of the assault weapon and large capacity of the
> ammunition are bail eligible offenses under the CPL."

207.    Plaintiff avers that pursuant to the false, intentionally misleading statements made by

AZIZA, TURBIDY did issue a securing order in the amount of $100,000.00 bail; or

$10,000.00 bond.

208.    Plaintiff avers that Plaintiff was arraigned more than 33 hours after arrest.

209.    Plaintiff avers that Plaintiff was confined for more than 36 hours; and that Plaintiff was

conscious of the confinement; and that Plaintiff did not consent to the confinement.

210.    Plaintiff avers that Plaintiff was held on a $100,000.00 bond that was posted by Plaintiff's

family members; and Plaintiff was escorted from the cell and through the court room

before being released from the custody of NYPD.

211.    Plaintiff avers that Plaintiff did return to 21G on April 12, 2024; and that when Plaintiff

did return to 21G, Plaintiff was not given or provided with any writings or subscriptions

of any receipt, invoice, or voucher itemizing the private property taken / seized /

---

[24] *See* Felony Complaint, signed by Judge TURBIDY

confiscated from 21G by agents of the NYPD.

212.    Plaintiff avers that Plaintiff did not find or see any writings or subscriptions of any receipt or invoice itemizing the private property taken / seized / confiscated from 21G in 21G.

213.    Plaintiff avers that Plaintiff has not been given adequate notice of the proper procedures for reclaiming the private property taken / seized / confiscated from 21G.

214.    Plaintiff avers that Plaintiff, upon arrest, had not been provided with a written inventory of the taken / seized / confiscated private property, subscribed and sworn to by Defendants MIKOWSKI, WILLIS, or HICKEY.

215.    Plaintiff avers that Plaintiff, upon arraignment, had not been provided with a written inventory of the taken / seized / confiscated private property, subscribed and sworn to by Defendants MIKOWSKI, WILLIS, or HICKEY.

216.    Plaintiff avers that several items of private property were absent from 21G as of April 10, 2024, including, but not limited to antique family heirlooms, negotiable instruments, notes, and jewelry.

217.    Plaintiff avers that of the several items of private property which were absent from 21G, none were contraband.

218.    Plaintiff avers that of the several items of private property which were taken / seized / confiscated from 21G, none were contraband.

219.    Plaintiff avers that the search warrant did not authorize any Defendant to search, seize, confiscate, or retain any of the private property removed from 21G by any Defendant.

220.    Plaintiff avers that Plaintiff does have reason to believe that the private property which was under the care, custody, and/or control of Plaintiff, and which is currently in the possession of Defendant CITY OF NEW YORK, Defendant MIKOWSKI, Defendant WILLIS, Defendant HICKEY, and the KCDA was not taken / seized / confiscated for a tax, assessment, or fine.

221.    Plaintiff avers that Plaintiff does have reason to believe that the private property which was under the care, custody, and/or control of Plaintiff is wrongfully in the possession of Defendant CITY OF NEW YORK, Defendant MIKOWSKI, Defendant WILLIS, Defendant HICKEY, and/or the KCDA.

222.    Plaintiff avers that Plaintiff did not request for any agent of Defendant CITY OF NEW YORK, NYPD, Defendant MIKOWSKI, Defendant WILLIS, Defendant HICKEY, or the KCDA to remove or retain any of the private property located in 21G; and did not have an agreement with any agent thereof on or around April 10, 2024 to remove or retain any of the private property located in 21G.

223.    Plaintiff avers that either in Plaintiffs personal capacity, or professional capacity as trustee, all private property taken / seized / confiscated from 21G was lawfully under the care, custody, and/or control of Plaintiff.

224.    Plaintiff avers that Defendant CITY OF NEW YORK, NYPD, Defendant MIKOWSKI, Defendant WILLIS, Defendant HICKEY, and the KCDA have not provided a lawful

bases to Plaintiff for the confiscation and retention of the aforementioned private property.

225. Plaintiff avers that absent a valid search warrant authorizing the search and seizure of the specific items removed from 21G, Defendant CITY OF NEW YORK, NYPD, Defendant MIKOWSKI, Defendant WILLIS, Defendant HICKEY, and the KCDA had no authority to confiscate or retain the private property; and that CITY, NYPD, MIKOWSKI, WILLIS, HICKEY, or the KCDA and all actions of its agents were without right or privilege.

226. Plaintiff avers that on April 10, 2024 at 8:53pm, Defendant WILLIS did create six (6) NYPD Property Clerk Invoices [PCI]; and Defendant HICKEY did create two (2) PCI for property which Defendant MIKOWSKI swore was in possession of Plaintiff on April 10, 2024.

227. Plaintiff avers that at the April 16, 2024 adjournment date, MYREN did state to Plaintiff that MYREN was providing Plaintiff with the "entire case file"; and that the file did not include a written inventory of the taken / seized / confiscated property, subscribed and sworn to by Defendants MIKOWSKI, WILLIS, or HICKEY.

228. Plaintiff avers that on April 18, 2024, Defendant MIKOWSKI did create five (5) PCI's[25] for property which MIKOWSKI swore was in possession of Plaintiff on April 10, 2024.

229. Plaintiff avers that Defendants WILLIS, HICKEY, and MIKOWSKI have failed to record all items removed from 21G.

---

[25] *See* NYPD Property Clerk Invoices, created by Defendant MIKOWSKI, dated April 18, 2024

230.    Plaintiff avers that on or about August 29, 2024, Defendant CITY OF NEW YORK did settle a civil lawsuit initiated by a former arrestee of Defendant WILLIS; and that arrestee made similar claims with regard to the unlawful removal of property, failure to return such property, and the knowing and malicious transmission of false information to the district attorneys office.[26]

231.    Defendant CITY OF NEW YORK has settled no less than three (3) claims involving allegations of Defendant WILLIS making unlawful arrests absent probable cause and forwarding false information to the district attorneys office; costing New Yorkers more than $160,000.00, just $1,500 less than WILLIS' salary in 2024.[27]

232.    Plaintiff avers that Plaintiff has not been provided with complete chain of custody records for the aforementioned private property; and Plaintiff does have reason to believe that no such records exist.

233.    Plaintiff avers that on April 22, 2024, Assistant District Attorney Rebecca Annemarie Velez [VELEZ] did confer with NYPD Police Laboratory Detective Reginald Smith; and did request for DNA to be tested.[28]

234.    Plaintiff avers that on April 25, 2024, Assistant District Attorney Eric L. Kang did confer with NYPD Police Laboratory Officer Amanda C. Knapp.

---

[26] *See* Supreme Court Kings County Complaint excerpts; Index No. 537109/2023, Index No. 507891/2019 and, EDNY 11CV03299 Complaint excerpts

[27] *See* 50-a.org excerpt (WILLIS) [showing case settlement amounts]

[28] *See* Case Conferral Sheet; Lab # 2024-014091; Invoice # 3001729293

235.    Plaintiff avers that on May 1, 2024, Defendant, NYPD Detective Adrian J. Arav [ARAV] did perform an operability test on the S&W Rifle; and did complete a handwritten "OPERABILITY WORKSHEET:"[29] and did write on the worksheet that the S&W Rifle is a "S/A/Rifle" indicating that it is a ***single action* rifle**.

236.    Plaintiff avers that Defendant ARAV never tested the S&W Rifle for functionality as a semi-automatic rifle.



***Image 9*** *- Excerpts of Handwritten NYPD POLICE LABORATORY FIREARMS ANALYSIS OPERABILITY WORKSHEET, certified by Defendant ARAV*

237.    Plaintiff avers that NYPD has an established pattern, practice, and/or policy of labeling single action rifles as assault rifles without ever testing the rifles' operability as a semi-

---

[29] *See* Handwritten NYPD OPERABILITY WORKSHEET, completed by Defendant ARAV on "5/1/24"

automatic rifle.

238.   Plaintiff avers that Defendant CITY OF NEW YORK has shown a deliberate indifference to the constitutional rights of others by adopting patterns, practices, policies, procedures, and/or standards which impute criminal behavior where there is none.

239.   Plaintiff avers that Defendant ARAV'S action of certifying that the S&W Rifle was an assault weapon, and therefore a semi-automatic rifle, without ever testing its functionality, was unconstitutional.

240.   Plaintiff avers that Defendant CITY OF NEW YORK police department are informed by the NEW YORK STATE CRIME LABORATORY ADVISORY COMMITTEE standards on how to conduct assault weapon operability tests, and the completion and certification of operability reports.

241.   Plaintiff avers that Defendant CITY OF NEW YORK was informed, in or before 2020, that the methods of the NYPD Firearms Lab were "circular" and that Lab officers make determinations regarding "firearms" based on sight alone; and, that "NYPD does not consider the 'consequences of making a mistake.'"[30]

242.   Pursuant to Penal Law § 265.00, the S&W Rifle is *not* an "Assault weapon;" and is *not* "a semiautomatic rifle;" and is *not* a repeating rifle which utilizes a portion of the energy of a firing cartridge or shell to extract the fired cartridge case or spent shell and chamber the next round.

_____

[30] *See* "Legal Aid Lauds Ruling That Finds That NYPD's Ballistics Method Riddled With Significant Flaws; Bronx Judge Rejects Junk Science Used By Law Enforcement To Prosecute Cases"



***Image 10** - NEW YORK STATE CRIME LABORATORY ADVISORY COMMITTEE standards, used by Defendant CITY police department, for completion of firearms testing reports*

243. Plaintiff avers that the NEW YORK STATE CRIME LABORATORY ADVISORY COMMITTEE standards do not instruct on how to conduct functionality testing of alleged assault weapons; and that the standards require a restatement that any alleged "assault rifle" is "semi-automatic" without testing.

244. Plaintiff avers that Defendant ARAV did know, or did have reason to know that the S&W Rifle was operable as a single action, and not as a semi-automatic; and, therefore, was *not* an assault weapon nor an assault rifle.

245.    Plaintiff avers that Defendant ARAV did know, or did have reason to know that the S&W Rifle was operable as a single action as ARAV indicated such on the handwritten "OPERABILITY WORKSHEET."

246.    Plaintiff avers that Defendant ARAV did conduct an operability test of the three (3) long-guns; and ARAV did destroy nine (9) items of private property which was under the care, custody, and/or control of Plaintiff prior to the seizure of April 10, 2024.[31]

247.    Plaintiff avers that Defendant ARAV did knowingly provide false and misleading information to the KCDA by certifying that the S&W Rifle was both a "S/A/Rifle" and a "semi-automatic rifle."

248.    Plaintiff avers that the certifications of Defendant ARAV on or around May 1, 2024, did instigate and was the direct cause of the continuation of the criminal proceeding against Plaintiff.

249.    Plaintiff avers that on May 23, 2024, Kings County District Attorney Eric Gonzalez [GONZALEZ] and VELEZ did convene a grand jury for the purpose of obtaining a true bill against Plaintiff.

250.    Plaintiff avers that both Defendants WILLIS and MIKOWSKI did give testimony before the grand jury.

251.    Plaintiff avers that Defendant WILLIS was sworn; and WILLIS did state the following

---

[31] Pursuant to NYPD Firearms Analysis Reports # 2024-014091: 1, 2, and 4, Defendant ARAV "utilized submitted ammunition" labeled as 11.1, 11.2, and 11.3; and, 13.1, 13.2, and 13.3; and, 15.1, 15.2, and 15.3. The aforementioned nine items were effectively destroyed.

[in pertinent part]:[32]

>"When we arrived at the location, the person who owns the apartment, Assata Rhodes, she met us by the door. We showed the search warrant. We then entered and we proceeded to search the location.
>"So, **there were firearms recovered** from the location along with knives.
>"We took her back to the precinct.
>"She was placed under arrest.
>"We got her name and address.
>"She said she lives alone and there was clothes in the closet and everything else consistent with a female living there."[33] [**emphasis added**]

252.    Plaintiff avers that Defendant MIKOWSKI was sworn; and, MIKOWSKI did state the following [in pertinent part]:

>"When I arrived at the location, **there was several guns recovered**." —
>"In a closet."
>"They were ultimately processed by evidence collection and sent to the lab.
>"One was a Mossberg shotgun, a Rossi rifle and a Smith and Wesson." —
>"**It was an AR-15.**" — "It was vouchered." — "It is 3001733138."
>[**emphasis added**]

253.    Plaintiff avers that both Defendants WILLIS and MIKOWSKI testified that "firearms" and guns were "recovered;" and that neither WILLIS nor MIKOWSKI "recovered" any items prior to the arrest of Plaintiff; and that no "firearms" were "recovered."[34]

254.    Plaintiff avers that PO CARMOSIN did, *twice*,[35] indicate that the property in question was recovered by EANUCCI.

_____

[32] *See* Certified Grand Jury Transcript excerpts

[33] Plaintiff never stated to Defendant WILLIS that Plaintiff "owns the apartment" or "lives alone." Plaintiff made no substantive, un-coerced, independent statements to WILLIS regarding Plaintiff, declining to even provide a last name to WILLIS [*see* ¶70-71].

[34] PO CARMOSIN indicated "**(DET MIKOWSKI) STATED THAT FIREARMS WERE FOUND... BY SPECIAL AGENT JARED EANUCCI.**"
      *See* NYPD REQUEST FOR LABORATORY EXAMINATION REPORT excerpt

[35] *See* NYPD REQUEST FOR LABORATORY EXAMINATION REPORT excerpt



*Image 11 - PO CARMOSIN's handwritten notes, indicating "A/O" [arresting officer] as Defendant MIKOWSKI; and the "R/O" [recovery officer] as "Spec Agent Jared Eanucci"*

255.    Plaintiff avers that "AR-15" is a Colt's Manufacturing Company ("Colt") registered trademark which is used only to refer to the Colt line of semi-automatic rifles; that **"AR"** means "ArmaLite Rifle;" and, that Smith & Wesson does not manufacture ArmaLite Rifles.[36]



*Image 12 - Excerpts of United States Patent Office documents, regarding use of "AR-15" and ownership by COLT DEFENSE LLC*

---

[36] *See* United States Patent Office documents



***Image 13*** *- Photographic images produced to United States Patent Office, in support of patent of COLT AR-15's, bearing the COLT and "AR-15" insignia (Credit: COLT DEFENSE LLC)*

256.    Plaintiff avers that during the presentation of evidence, ADA VELEZ did read to the

Grand Jury the following from the NYPD Lab Report completed by Defendant ARAV:

> "Rifle (14) has a barrel length of 17 3/4 inches a collapsed length of 31 5/8 inches and an overall length of 34 15/16 inches.
> Rifle (14) is a semi-automatic rifle that has an ability to accept a detachable magazine and has the following characteristic(s):
> • a telescoping stock
> • a pistol grip that protrudes conspicuously beneath the action of the weapon
> • a flash suppressor, and a threaded barrel designed to accommodate a flash suppressor, muzzle brake, or muzzle compensator."

257.    Plaintiff avers that the only test of the S&W Rifle was that it was measured; and that the

operability results were entered into the Lab Report; and that numerous characteristics

were listed.

258.    Plaintiff avers that the requirement of an "Assault Weapon," which is that it be a "semi-

automatic" was not tested by Defendant ARAV, or any other agent of the NYPD; and that

ARAV assumed and/or repeated that the S&W Rifle was a "semi-automatic" and entered into the Lab Report.

259.    Plaintiff avers that a resident of the Ryerson Towers community was present as a member of the grand jury; and was present for the testimony of Defendant WILLIS and Defendant MIKOWSKI.[37]

260.    Plaintiff avers that the grand jury proceedings conducted by VELEZ on or around May 23, 2024, did instigate and was the direct cause of the continuation of the criminal proceeding against Plaintiff.

261.    Plaintiff avers that the indictment, signed by GONZALEZ, and filed with the court on or around June 7, 2024, did instigate and was the direct cause of the continuation of the criminal proceeding against Plaintiff.[38]

262.    Plaintiff avers that prior to the aforementioned indictment, Plaintiff had never been a participant in *any* grand jury activity in *any* capacity; and that Plaintiff had never been indicted before.

263.    Plaintiff avers that Grand Jury Reporter / Stenographer Danielle Fiocco did certify the transcript of the aforementioned grand jury proceedings on June 4, 2024.[39]

264.    Plaintiff avers that Plaintiff has reason to believe that the KCDA had access to the

---

[37] *See* Certified Grand Jury Transcript excerpts

[38] *See* Indictment, filed June 7, 2024

[39] *See* Certified Grand Jury Transcript certification, dated June 4, 2024

aforementioned certified grand jury transcript as early as June 4, 2024.

265.  Plaintiff avers that on June 24, 2024, Judge Herbert J. Moses made a sua sponte motion to inspect the grand jury minutes.[40]

266.  Plaintiff avers that the KCDA failed to provide the aforementioned transcript to the Court and to Plaintiff in a timely fashion — ignoring the schedule set by the court[41] and delaying it's production by delivering the transcript, by e-mail only, on July 23, 2024,[42] in further violation of the Court's instructions that all materials be delivered to Plaintiff by regular mail and electronic mail.

267.  Plaintiff avers that the delay in serving the grand jury transcript caused a significant, unnecessary, two-month delay, in the prosecution of the criminal case against Plaintiff.

268.  Plaintiff avers that the false claim of criminal possession of a firearm was published to a third-party report.[43]

269.  Plaintiff avers that on or around June 21, 2024, Plaintiff learned that Plaintiff suffered adverse action due to the aforementioned third-party report and criminal proceeding against Plaintiff.[44]

---

[40] *See* Certified Transcript excerpt, dated June 24, 2024 and September 6, 2024

[41] *See* Certified Transcript excerpt, dated June 24, 2024

[42] *See* KCDA e-mail, dated July 23, 2024

[43] *See* Checkr Report, dated June 10, 2024; Checkr Report, revised February 19, 2025

[44] *See* Uber chat screenshots

270.    Plaintiff avers that Plaintiff made a Freedom of Information request to Defendant CITY

OF NEW YORK Civilian Complaint Review Board [CCRB] for the entire investigatory

case file regarding an un-related matter; and, on April 12, 2024, the NYPD Arrest Report,

concerning Plaintiff, regarding the April 10, 2024 arrest, was delivered to the CCRB

investigator responsible for investigating Plaintiff's allegations against CITY police

department agents in the aforementioned CCRB case.[45]

271.    Plaintiff avers that on June 24, 2024, NYPD Police Officer Patrick T. Cesare [Tax ID. No.

973995] did state to NYPD Police Officer Anthony Coppola [Tax ID No. 945166], in

reference to Plaintiff, as captured on BWC footage, "search warrant - defendant was in

possession of an AR Smith and Wesson rifle... at her house, I guess."

272.    Plaintiff avers that on July 11, 2024, Plaintiff did serve an "Affidavit of Fact and Notice

of Claim," dated July 9, 2024, on Defendant, Comptroller Bradford Scott Lander

[LANDER] and Corporation Counsel.[46]

273.    Plaintiff avers that on July 30, 2024, Plaintiffs Notice of Claim was acknowledged by the

Comptroller; and Plaintiff was assigned Claim Number 2024PI023340.

274.    Plaintiff avers that Plaintiff did make the following statements before the Court on

September 6, 2024:[47]

> "The district attorney has at best been negligent with the handling of this case and
> at worst, has been vindictive, vexatious and retaliatory.  The unnecessary delays

---

[45] *See* CCRB case file excerpt

[46] *See* Coversheet of "Affidavit of Fact and Notice of Claim," dated July 9, 2024

[47] *See* Certified Transcript excerpt, dated September 6, 2024; transcript page 19-20

have caused adverse action to the accused including ...the loss of actual viable job opportunities making [it nearly impossible for] the accused to maintain and sustain the lifestyle which the accused led prior to the unscrupulous actions of, at a minimum, NYPD Detectives Ebony Shawntay Willis and Walter J. Mikowski. The longer this criminal matter drags on, the longer the accused has to wait to recover the cash confiscated from the accused by NYPD agents. To date, the accused is still waiting for the remaining NYPD property vouchers and complete chain of custody for those confiscated items, including, but not limited to more than $25,000 in cash, which to date remains unaccounted for by the NYPD."

275.   Plaintiff avers that Plaintiff has reason to believe that Defendant CASTELLANO knew or had reason to know that the conduct of prolonged retention of the property seized from the care, custody, and/or control of Plaintiff was unreasonable, insulting, injurious, a serious wrong, extreme, and outrageous.

276.   Plaintiff avers that on September 6, 2024, following the days court appearance, Defendant CASTELLANO filed a motion to compel the DNA of Plaintiff.

277.   Plaintiff avers that on September 12, 2024, Plaintiff did file a motion to dismiss the indictment; and on September 19, 2024, Plaintiff did oppose CASTELLANO's motion to compel.

278.   Plaintiff avers that on October 10, 2024, Defendant CASTELLANO did e-mail Plaintiff the following [in pertinent part]: "I hope you're doing well. The assigned detective is available for inspection of the tangible property on the following dates: **10/28, 10/30, 11/1, 11/6, 11/7**. Please let me know if you're available."[48]

---

[48] *See* E-mails, dated October 1, 2024 - October 10, 2024

279. Plaintiff avers that Plaintiff did *immediately* respond to Defendant CASTELLANO'S e-mail; and that CASTELLANO failed to make the required scheduling.

280. Plaintiff avers that Plaintiff was prohibited from accessing exculpatory evidence by Defendant CASTELLANO'S failure to allow Plaintiff access to photograph, inspect, and test the tangible items pursuant to state law and in spite of Plaintiffs several e-mailed requests for CASTELLANO to allow or otherwise arrange for such inspection and testing.[49]

281. Plaintiff avers that Plaintiff has reason to believe Defendant CASTELLANO knew or had reason to know that her refusal to allow for photographing, inspection, and testing of the tangible items precluded Plaintiff from proving that Plaintiff did not criminally possess any "AR-15," or "assault rifle," including the S&W rifle.[50]

282. Plaintiff avers that on October 11, 2024, Plaintiff did file to the Kings County Supreme

---

[49] Plaintiff [as *pro se* Defendant in the criminal matter] sent several e-mails to Defendant CASTELLANO, and did cc other ADA's directly involved with the prosecution of the criminal matter for the purpose of gaining statutorily required discoverable materials and access to inspect, test, and photograph the tangible items Plaintiff was criminally charged with possessing. In an attempt to evade contact with Plaintiff, CASTELLANO wrote to the Court requesting the Court confer with Plaintiff about the contact. In court, on July 24, 2024, Judge Kitsis addressed CASTELLANO'S correspondence and did state the following [in pertinent part]:
> "*I also note that I received an e-mail [from CASTELLANO] telling me that Ms. Rhodes has been reaching out to the District Attorney for discovery materials.*" "*So Ms. Rhodes, let me tell you where we start with this. You don't have to do one single thing....However, not for me to tell you how to conduct your case. You are the attorney on this case.*"

Plaintiff has reason to believe that CASTELLANO'S conduct of prohibiting access to discoverable items and complaining to the Court was willful and intentional, and meant to discourage Plaintiff from defending against the false accusations.

[50] "...a criminal defendant's constitutional right to receive exculpatory evidence must also extend to the pretrial period"; and, "when the prosecution possesses evidence "clearly supportive of a claim of innocence," disclosure is necessary to prevent a miscarriage of justice and uphold fundamental notions of 'elementary fairness.'" — Defendant CASTELLANO
> See The "Critical Stage" of Plea-Bargaining and Disclosure of Exculpatory Evidence, January 2021

Court Criminal Term case, by providing copies to Assistant District Attorney Audrey Chao and the Court, the USPS Certified Mail and Return Receipts from District Attorney GONZALEZ, and Plaintiffs "Affidavit of Truth and Status; with Reservation of Rights; and Schedule of Fees."[51]

283. Plaintiff avers that on October 11, 2024, Judge Michael D. Kitsis did grant Defendant CASTELLANO'S motion to compel the DNA of Plaintiff.[52]

284. Plaintiff avers that through the pendency of the case, the presiding judges did direct the District Attorneys to confer with Plaintiff, as defense attorney in the matter, more than three times; and that all involved District Attorneys[53] *generally* failed to do so.

285. Plaintiff avers that the criminal matter was terminated in Plaintiffs favor[54] on March 4, 2025,[55] after Plaintiff was required to make more than eight (8) appearances before the criminal court.[56]

286. Plaintiff avers that ADA Roman Galper, on behalf of and at the request of Defendant CASTELLANO did request a stay, delaying the sealing of the records related to the arrest and subsequent criminal action; and Judge Kitsis did grant the application, delaying

---

[51] *See* Certified Transcript excerpt, dated October 11, 2024

[52] *See* Decision and Order excerpt, filed October 11, 2024

[53] Defendant CASTELLANO failed to physically make an appearance at *any* adjournment date; and several other ADA's did physically appear, including Jorge Alfredo Sastoque, Caroline Campomanes, Garey A. Pierce, Christopher Armetta, Audrey Chao, Kaitlin M. Kinsella, and Roman Galper.

[54] *See* Decision and Order, dated March 4, 2025

[55] *See* Certificate of Disposition, dated March 4, 2025

[56] *See* NYS Unified Court System "Case Details - Appearances"

sealing of the records for an additional month after the matter was terminated.

287.    Plaintiff avers that on March 4, 2025, Plaintiff did visit the NYPD Property Clerk's Office at 11 Front Street, Brooklyn, New York; and NYPD Evidence and Property Clerk Specialist, Crystal Rodriguez, and a male-appearing agent, identified only as "EPCS Power" did refuse to accept Plaintiffs prepared demand for release; and did refuse to accept a completed copy of the NYPD PROPERTY CLERK DIVISION ACKNOWLEDGEMENT OF DEMAND / INQUIRY from Plaintiff; and did refuse to provide Plaintiff with any acknowledgement of demand / inquiry.[57]

288.    Plaintiff avers that Plaintiff did deliver a demand for release of property with relevant Inventory List and NYPD Property Clerk Invoices/Vouchers[58] attached, to Defendant CITY NYPD Property Clerk, NYPD Legal Bureau, and NYPD First Deputy Commissioner; prosecuting attorneys, Defendant CASTELLANO, KCDA GONZALEZ, and the KCDA Property Release Unit by electronic mail and/or fax, on March 4, 2025; and by hand-delivery, to the KCDA Property Release Unit at 120 Schermerhorn Street, Brooklyn, New York, on March 5, 2025.

289.    Plaintiff avers that on March 7, 2025, Plaintiff did receive an e-mail from KCDA Property Release Clerk Cassandra Allen, stating the following [in whole]: "We received instructions on 3-6-25 **not to issue a release.**"[59] **[emphasis added]**

290.    Plaintiff avers that Plaintiff was not charged with criminal possession of *all* of the items

---

[57] *See* "Property Demand to NYPD - 3.4.2025"

[58] *See* Inventory List and NYPD Property Clerk Invoices/Vouchers

[59] *See* E-mails, dated March 4, 2025 and March 7, 2025

seized from the care, custody, and/or control of Plaintiff; and that *all* items were not prohibited for sale, purchase, and/or possession.

291.   Plaintiff avers that Plaintiff was not provided with sufficient notice of all items seized by Defendants; nor was Plaintiff provided with explicit instructions for retrieval of all property.

292.   Plaintiff avers that Defendant CASTELLANO knows or should have reason to know that the KCDAO and/or Defendant CITY OF NEW YORK is unlawfully in possession of the private property removed from the care, custody, and/or control of Plaintiff;[60] and, any retention of the private property by any Defendant is unlawful, and a violation of Plaintiffs constitutionally protected rights under the second amendment.

293.   Plaintiff avers that Plaintiff has reason to believe that Defendant CASTELLANO'S refusal to release the property is intentional.

294.   Plaintiff avers that Defendant CITY OF NEW YORK'S act of taking possession of the private property under the care, custody, and/or control of Plaintiff created a bailment.

295.   Plaintiff avers that Defendant CASTELLANO, as a prosecutor and servant of the law,

_____

[60] The property recorded on the relevant Inventory Lists and NYPD Property Clerk Invoices/Vouchers were removed from the care, custody, and/or control of Plaintiff, absent probable cause, and in the absence of a valid seizure warrant. Plaintiff attempted to move the Criminal Court on four (4) occasions to dismiss the indictment and suppress the evidence. Defendant CASTELLANO failed to controvert any substantive claim made by Plaintiff with regard to the lawful nature of the property, effectively conceding to the claims. Additionally, Plaintiff has reason to believe CASTELLANO consciously and purposely prohibited Plaintiff from conducting any testing and inspection of the tangible items relevant to the criminal matter; and that had CASTELLANO *actually* arranged for testing pursuant to criminal procedure law, Plaintiff would have proven that the items unlawfully removed were *not* firearms or contraband.

**INCIDENT #2: The November 23, 2024 Removal and Subsequent Retention**

301.    Plaintiff avers that on November 23, 2024 at approximately 6:15pm, on the common heritage, at a location near 107-31 Guy R. Brewer Boulevard, Queens, New York, Defendant, NYPD Officer Michael C. Blanda [Tax ID No. 959495] [BLANDA], of the Queens Borough Patrol South Community Response Team, removed two, metal sheets [hereinafter, "the plates"] which were affixed to another piece of privately owned property [hereinafter, "the Jeep"]; all of which were under the care, custody, and/or control of Plaintiff.

302.    Plaintiff avers that just prior to Defendant BLANDA'S removal of the plates, Plaintiff did state to BLANDA [in pertinent part]: "I am in control of it [the Jeep]."

303.    Plaintiff avers that the Jeep was not in operation, and was not powered on, and was not being driven or otherwise propelled at or immediately prior to the time of the removal of the plates.

304.    Plaintiff avers that the plates do not contain or represent a distinctive number assigned and/or issued by any government authority, corresponding to any other number, identifying matter, or certificate of registration issued by any government authority.

305.    Plaintiff avers that on November 26, 2024, three days after Defendant BLANDA's unlawful removal, Defendant CITY's DOI released a report titled "A Review of NYPD's Community Response Team;"[62] and, DOI NYPD Inspector General Jeanene L. Barrett

---

[62] *See* "A Review of NYPD's Community Response Team"
[ https://www.nyc.gov/assets/doi/reports/pdf/2024/45CRT.Rpt.Release11.26.2024.pdf ]

concluded "The lack of transparency regarding NYPD's Community Response Team ("CRT") **risks non-compliance with the law, ethical breaches, and negative policing outcomes.**"[63] [**emphasis added**]

306.   Plaintiff avers that Defendant BLANDA has been the subject of no less than 6 allegations of abuse of authority, including seizure of property."[64]

307.   Plaintiff avers that Defendant CITY OF NEW YORK should have known or had reason to know that Defendant BLANDA was inadequately trained; and that CITY was at risk of liability for negative policing outcomes, including constitutional violations.

308.   Plaintiff avers that on November 25, 2024, Plaintiff did make a written request to Ritesh Barua, Property Clerk of the 103rd Precinct, the invoicing precinct; and to NYPD Legal Bureau Deputy Commissioner, Michael Gerber [hereinafter, "GERBER"], for the relevant NYPD PCI for the plates; and that attached to that request was title to- and the UCC Financing Statement for the plates.[65]

309.   Plaintiff avers that on November 26, 2024, Defendant BLANDA did e-mail[66] the relevant NYPD PCI to Plaintiff.[67]

310.   Plaintiff avers that the relevant NYPD PCI indicates that the plates were removed in

---

[63] *See* Defendant CITY DOI Press Release #45-2024 excerpt, dated November 26, 2024

[64] *See* 50-a.org excerpt (BLANDA)

[65] *See* E-mail to 103rd Precinct Property Clerk; dated November 25, 2024, 5:13pm

[66] *See* E-mail from BLANDA; dated November 26, 2024, 9:33pm

[67] *See* NYPD Property Clerk Invoice 4001170935

connection with a charge of "17030/CRIM POSS FORGD INST;" and that "NYPD DOCUMENT FRAUD SQUAD BULLETIN #2021-41," dated "3/15/2021" explicitly instructs officers that "It is NOT appropriate to charge any forged instrument related charges" in connection with the plates.

311.    Plaintiff avers that Plaintiff did make a formal demand for a release of the property to the Queens County District Attorney [QCDA] on December 16, 2024; and the QCDA did provide a release to Plaintiff, and to the NYPD Property Clerk.[68]

312.    Plaintiff avers that pursuant to the instructions of the QCDA, attached to the aforementioned release,[69] Plaintiff did call the NYPD Property Clerk; and did speak with Defendant, Specialist Jeffrey Clarke [CLARKE]; and did request to verify the release status of the plates; and Defendant CLARKE did state that the plates would not be released absent instruction to do so from the NYPD Legal Bureau.

313.    On December 30, 2024, a second, formal, written demand for release of property was delivered to Defendant CLARKE; and the NYPD Civil Enforcement Unit [CEU]; and GERBER.[70]

314.    Plaintiff avers that Defendant CLARKE failed to provide Plaintiff with "a written acknowledgment of demand" pursuant to 38 RCNY § 12-35(g); and Plaintiff sent an e-mail to the NYPD Internal Affairs Bureau [IAB] and the CEU, stating the following [in

---

[68] *See* Queens County District Attorney's Release

[69] "If the property you have requested is general personal property, please contact the Queens Property Clerk at 718-433-2678 to verify the property's release status and confirm you have proper identification and/or documentation to complete the release. If you are an authorized representative retrieving property on behalf of another, you will need a notarized letter to complete the release."

[70] *See* E-mail to NYPD Property Clerk; dated December 30, 2024, 8:15am

pertinent part]: "It has been more than 30 days; and acknowledgment of the demand has not been received. **Please advise**."[71]

315.　Plaintiff avers that on January 15, 2025 at 2:40pm, Lieutenant Richard Bacani Lovina [Tax ID No. 904394] [LOVINA] of the NYPD Legal Bureau did e-mail Plaintiff; and did state the following [in pertinent part]: "Please clarify why you are making a claim to this property."[72]

316.　Plaintiff avers that Plaintiff did respond with a notice titled "Notice to Lovina and Blanda - 1.15.2025;" and the notice did contain a notarized authorization; and the notice did contain a demand to Defendant BLANDA to update the owner information in NYPD's records.[73]

317.　Plaintiff avers that at 5:26pm, LOVINA did respond by e-mail with several questions and statements; and that at 6:16pm, Plaintiff did respond to each and every statement and question by e-mail.[74]

318.　Plaintiff avers that on January 17, 2025, Plaintiff did call Defendant CLARKE; and did ask for confirmation on instructions for having invoicing officer, Defendant BLANDA, update NYPD records to reflect the lawful owner pursuant to LOVINA's e-mails.

319.　Plaintiff avers that Defendant CLARKE did state that CLARKE would make the request

---

[71] *See* E-mail to IAB and CEU; dated January 13, 2025, 12:55pm

[72] *See* E-mail from LOVINA; dated January 15, 2025, 2:40pm

[73] *See* "Notice to Lovina and Blanda - 1.15.2025"

[74] *See* E-mails to/from LOVINA; dated January 15, 2025

to Defendant BLANDA himself; and CLARKE did confirm that Plaintiff should call

CLARKE on January 21, 2025 for a status update.

320.    Plaintiff avers that on January 21, 2025 at approximately 10:13am, Plaintiff received a

call from Sergeant Shu G. Li [Tax ID No. 952994][Sgt. Li] at the Property Clerk's Office;

and Sgt. Li did state the following [in pertinent part]:

> "Well Legal, they have the final say..."
> "There's nothing I can do unless Legal gives me permission to return those plates."

321.    Plaintiff avers that on January 22, 2025 at approximately 12:02pm, Plaintiff called

Defendant CLARKE for a status update on the request to Defendant BLANDA; and

CLARKE did state the following [in pertinent part]:

> "I reached out to him [LOVINA] and asked him whether or not that would be the best way to go about it and he recommended reaching out to [the arrestee], stating that that would be the easier way to go about it and that's why I reached out to [the arrestee]."
> **"We did not reach out to the officer.** I was advised that the better way to go about it was to reach out to [the arrestee]."
> **"Forfeiture proceedings have not - we're not issuing forfeiture proceedings."**
> "They're [the legal bureau] going to make a determination being that the officer didn't change the ownership."

322.    Plaintiff avers that Plaintiff did receive a notice from LOVINA on January 31, 2025

stating the following [in pertinent part]:

> "The Legal Bureau has assessed your demand to return property under the above vouchered invoice number. The Department will not be seeking forfeiture of the **NOVELTY LICENSE PLATES**.
>
> "Please contact the NYPD Property Clerk Division to arrange for the retrieval/**shipment of the property** as soon as possible." [**emphasis added**]

323.   Plaintiff avers that immediately following receipt of the aforementioned release, Plaintiff did e-mail Defendant CLARKE a copy of the aforementioned notice from LOVINA; and did state the following [in pertinent part]:

> "Please see the attached release from Lt. Richard Bacani Lovina (Legal Bureau). **All relevant property should be delivered** via Certified Mail or other mail tracking system, to the following address (of record, as noted on the release):…"; and,

> "Please respond with (1) confirmation of your receipt of this e-mail and release; and, (2) the mail tracking number as soon as it is available."

324.   Plaintiff avers that Plaintiff did not receive any response to the aforementioned e-mail; and Plaintiff did send a follow-up e-mail on February 4, 2025, at approximately 10:27am, stating the following [in whole]: "Acknowledgment has not been received - **please advise immediately**."

325.   Plaintiff avers that Plaintiff did receive an e-mail, at approximately 1:58pm, in response from Defendant CLARKE stating the following [in pertinent part]:

> "The owner can send a representative with a letter on the company's letterhead, signed by the owner giving their chosen representative authorization to pick up the property.  That owner would have to provide the representative with a copy of documentation showing ownership (tax documents, business certificate, etc.)."

326.   Plaintiff avers that at the time of Defendant CLARKE's e-mail, CLARKE was in possession of all documents required for the return of property, including, but not limited to, an uncontroverted notarized authorization, proof of ownership, and identification.

327.   Plaintiff avers that Plaintiff did provide documentation to Defendant CITY OF NEW YORK police department sufficient to establish possessory interest in the plates

including, but not limited to the UCC Financing Statement for the plates.

328.    Plaintiff avers that Defendant CITY OF NEW YORK'S act of taking possession of the private property under the care, custody, and/or control of Plaintiff created a bailment.

329.    Plaintiff avers that it has been more than 60 days since a demand was made for the plates; and Defendants have not returned the plates; and Plaintiff has reason to believe that no other claim has been made for the plates.

330.    Plaintiff avers that Defendant CITY OF NEW YORK property clerk has no intention of initiating forfeiture proceedings within the time prescribed by law and/or rule.

331.    Plaintiff avers that Plaintiff did serve a "Payment Demand; Affirmation; and Notice of Claim," dated January 27, 2025, on Defendant LANDER and Corporation Counsel.

332.    Plaintiff avers that on February 13, 2025, Plaintiff's Notice of Claim was acknowledged by Defendant LANDER; and Plaintiff was assigned Claim Number 2025P1004834.

333.    Plaintiff avers that on February 14, 2025, Plaintiff's Notice of Claim was *again* acknowledged by Defendant LANDER; and Plaintiff was assigned Claim Number 2025PI005215.

## INCIDENT #3: The December 19, 2024 Removal and Subsequent Retention

334.    Plaintiff avers that on December 19, 2024, at approximately 2:36pm, Defendant, NYPD Officer Kasey M. Lazaro [Tax ID No. 978596] [LAZARO] did cause for privately owned

property [the Jeep], to be removed from its lawful place on the common heritage, at a location near 314 Lafayette Avenue, Kings County New York, by Tow Operator "PIERCE, OCONNOR," as agent for MARK'S AUTOMOTIVE INC. [DCWP License No. 992248].

335.    Plaintiff has reason to believe that Defendant LAZARO did remove affixtures from the aforementioned private property, including, but not limited to, two, metal sheets, [the plates]; and did invoice the plates on NYPD PCI 3001850303.

336.    Plaintiff avers that the Jeep was not in operation, and was not powered on, and was not being driven or otherwise propelled at the time of the removal of the plates.

337.    Plaintiff avers that the plates do not contain or represent a distinctive number assigned and/or issued by any government authority, corresponding to any other number, identifying matter, or certificate of registration issued by any government authority.

338.    Plaintiff avers that at 2:41pm, Plaintiff did place a telephone call to the 88th Precinct [718-636-6511]; and was advised by [now deceased] Police Officer Nicole G. Alexander [Tax ID No. 941260] that no information was available with regard to the aforementioned private property and its associated identification number.

339.    Plaintiff avers that at 3:11pm, after tracking the Jeep, Plaintiff did place a telephone call to Mark D. Gillie, Owner of MARK'S AUTOMOTIVE INC. [718-389-0189]; and did verify that MARK'S AUTOMOTIVE INC. [MAI] was in possession of the aforementioned private property; and that MAI was not in possession of any written authorization to remove the aforementioned private property; and that MAI was not in

possession of any NYPD designated voucher or invoice number.

340.  Mr. Gillie did advise that for retrieval of the aforementioned private property, MAI

needed to be provided with the following:

(1) title; and,
(2) a hold harmless agreement, indemnifying MAI against any claims made by the private property owner; and,
(3) State issued registration certificate with accompanying State issued license plates; or,
(4) a private tow operator capable of towing the aforementioned private property from MAI's property; and,
(5) an unidentified document created by an unidentified agent of the 88th Precinct.

341.  Mr. Gillie did advise of the following business hours for MAI:

Open Monday through Friday, 9am to 4pm;
Closed Tuesday, December 24, 2024;
Closed on Wednesday, December 25, 2024;
Closed on Saturdays; and,
Closed on Sundays.

342.  Plaintiff avers that at 3:32pm, Plaintiff did place a telephone call to the 88th Precinct; and

did speak with Police Officer Andres P. Maldonado [Tax ID No. 969188]; and the call did

last approximately 58 minutes, ending at approximately 4:30pm; and PO Maldonado did

state the following:

"You need to come in with the paperwork for the vehicle to show that you're the owner in order to retrieve the vehicle. At this time, there is no invoice number, because... it's kind of too soon. But there will be, like, an invoice number and once you have all of that together, you can go about retrieving the vehicle."
"If you have the title of the vehicle that's under your name and if you have the registration with the plates, you can retrieve the vehicle. But otherwise, with just the title, you can have the vehicle towed away."

343.  Plaintiff avers that at 3:50pm [while Plaintiff was still engaged in the telephone call with

PO Maldonado about the relevant property], Defendant LAZARO created NYPD PCI

3001850300; and created NYPD Recovered Stolen Vehicle Report, identifying the Jeep as stolen.

344.    Plaintiff avers that at 4:18pm [while Plaintiff was still engaged in the telephone call with PO Maldonado about the relevant property], Defendant LAZARO created NYPD PCI 3001850303 invoicing the plates.

345.    Plaintiff avers that at approximately 4:29pm PO Maldonado, did provide Plaintiff with NYPD PCI Number 3001850300 [for the Jeep]; and did not provide Plaintiff with NYPD PCI Number 3001850303 [for the plates].

346.    Plaintiff avers that at 4:32pm, Sgt. TUCKER approved PCI 3001850303; and at 4:36pm, Sgt. TUCKER approved PCI 3001850300.

347.    Plaintiff avers that pursuant to the aforementioned conversation with Mr. Gillie, Plaintiff did provide a photographic copy of title [front and back] for the aforementioned private property; and, a notarized authorization from the private property owner granting Plaintiff authority as agent of the owner to retrieve the private property and, demanding specifically enumerated items via electronic mail to MAI at repobklyn@aol.com; and to the City of New York Law Department at ServiceECF@law.nyc.gov at 4:46pm.

348.    Plaintiff avers that on December 20, 2024 at 7:13am, Plaintiff requested all relevant NYPD PCI's; and did deliver the request to 88th Precinct Commanding Officer Michael E. Goodchild [GOODCHILD].[75]

---

[75] See E-mail to Commanding Officer Michael E. Goodchild; dated December 20, 2024, 7:13am

349.   Plaintiff avers that at approximately 9:17am, Plaintiff did place a call to Mr. Gillie; and Mr. Gillie did advise that MAI does not open until 9:30am; and that he had not reviewed the aforementioned e-mail; and that he would call Plaintiff in 45 minutes; and Plaintiff received no such phone call.

350.   At 10:18am, Plaintiff did place a call to Mr. Gillie; and did leave a voice message for Mr. Gillie to return the call.

351.   Plaintiff avers that at 10:24am, Plaintiff did place a call to Mr. Gillie; and during that call Mr. Gillie did review the aforementioned e-mail; and for the purpose of releasing the aforementioned private property to Plaintiff, Mr. Gillie did demand to have  the following:

> (1) a full-page photographic copy of title, front and back;
> (2) a full-page, unredacted, photographic copy of title;
> (3) proof of insurance;
> (4) government issued photographic identification for Plaintiff;
> (5) proof of insurance bearing an address of the insured; and,
> (6) an unidentified document from an unidentified officer at the 88th Precinct.

352.   Plaintiff avers that at 11:15am, Plaintiff did place a phone call to the 88th Precinct; and did speak with Police Officer Eon C. Adamson [Tax ID No. 905654]; and was instructed that PO Adamson would provide NYPD PCI 3001850300 [for the Jeep] to Plaintiff upon plaintiffs arrival at the 88th Precinct.

353.   Plaintiff avers that at approximately 12:15pm, Plaintiff did arrive at the 88th Precinct; and did wait for approximately 40 minutes in the vestibule of the 88th Precinct; and that at approximately 12:56pm, PO Adamson did provide Plaintiff with a hand-sized sheet of paper bearing the following in blue hand-writing: "INVOICE # 3001850300"



***Image 14** - Photographic copy of hand-sized sheet of paper provided to Plaintiff by PO Adamson in lieu of the requested NYPD Property Clerk Invoice*

354.    Plaintiff avers that PO Adamson did state that he would not provide any further details to Plaintiff pursuant to instructions from Defendant, Sergeant Nicholas M. Loweth [Tax ID No. 944749] [LOWETH].

355.    Plaintiff avers that Plaintiff did request to speak with Defendant LOWETH; and PO Adamson did summon LOWETH.

356.    Plaintiff avers that Defendant LOWETH did open the door to and did enter the vestibule where Plaintiff had been standing and waiting; and did state to Plaintiff that no information would be provided to Plaintiff until ownership of the Jeep could be verified; and Plaintiff did state to LOWETH that copy of the title; identification; and a notarized authorization had been provided to MAI [at repobklyn@aol.com]; and to NYPD Deputy Commissioner of Legal Matters, GERBER [at Michael.Gerber@nypd.org]; and to Corporation Counsel for Defendant City of New York, Muriel Goode-Trufant [at mgoodetr@law.nyc.gov].

357.    Plaintiff avers that Plaintiff did request to know what information needed to be provided

and to whom it should be provided to; and, Defendant LOWETH stated that Plaintiff would need to provide the following:

    (1) "proper plates ["from the New York DMV"];"
    (2) proper registration;
    (3) "proper insurance;" and,
    (4) an "affidavit from the owner, - saying that you're allowed to take this car" to be provided to "the location where the car is " "to authorize a release of the car by tow."

358.    Plaintiff avers that Plaintiff proceeded to show Defendant LOWETH the signature page of the requested authorization; and then did hand the document to LOWETH; and that after reviewing the document, LOEWTH demanded to be provided with a (5) "corporate consolidation report;" and, (6) "proof that the corporation exists" and "the paperwork that shows the corporation exists."

359.    Plaintiff avers that Plaintiff proceeded to hand Defendant LOWETH a redacted declaration of formation; and LOWETH rejected the document; and directed Plaintiff to "talk to an attorney" and "go to the DMV" before demanding that Plaintiff leave the 88th Precinct.

360.    Plaintiff avers that Plaintiff did immediately begin to collect the aforementioned documents and place them into their carrying case; and that as Plaintiff was doing so, LOWETH did re-open the vestibule door; and speak in an elevated, aggressive tone; and did demand that Plaintiff leave immediately.

361.    Plaintiff avers that LOWETH prohibited Plaintiff from obtaining relevant NYPD PCI's to recover the Jeep and all it's affixtures and contents, effectively depriving Plaintiff of access to the privately owned property absent due process of law.

362.   Plaintiff avers that following Plaintiffs expulsion from the 88th precinct, Plaintiff did
       create and deliver to 88th precinct Commanding Officer GOODCHILD; and Defendant
       TISCH a "Spoliation Letter / Notice to Preserve Evidence," demanding the preservation
       of all relevant evidence including, but not limited to, surveillance footage of the
       aforementioned interaction with Defendant LOWETH.[76]

363.   Defendant LOWETH has been the subject of no less than thirteen (13) misconduct
       allegations against, with four (4) of the substantiated allegations including claims of
       "Force," "Discourtesy" and "Untruthful Statement: False Official Statement."[77]

364.   Defendant CITY OF NEW YORK has settled no less than five (5) civil litigation claims
       involving misconduct allegations against Defendant LOWETH; costing New Yorkers
       more than $600,000.00.

365.   Plaintiff avers that Plaintiff placed a copy of the aforementioned notarized authorization,
       labeled "Notice to MARK'S AUTOMOTIVE INC. - 12.19.2024" with attachments at the
       window of PO Alexander; and exited the 88th Precinct.

366.   Plaintiff avers that calls placed to MAI on Friday afternoon and Sunday morning went
       unanswered.

367.   Plaintiff avers that on Sunday, December 22, 2024 at 7:52am, Plaintiff did send the
       "Demand to MARK'S AUTOMOTIVE INC. - 12.22.2024" for the release of the Jeep
       and all it's affixtures and contents, via e-mail, to repobklyn@aol.com.

---

[76] *See* Excerpt of "Spoliation Letter / Notice to Preserve Evidence," dated December 30, 2024

[77] *See* 50-a.org excerpt (LOWETH)

368.    Plaintiff avers that calls placed to MAI on Sunday went unanswered.

369.    Plaintiff avers that at 6:49pm, Mr. Gillie did respond to the aforementioned e-mail and did state the following:

> "I did receive the documents you sent however they are in complete and the vehicle would not be able to be released at this time. Moreover, after the altered title you sent me I must confirm any other documents your sending to assure there authenticity.
>
> Thank You,
> Mark"

370.    Plaintiff avers that at 8:35pm, Plaintiff did respond to the aforementioned e-mail of Mr. Gillie; and did state the following [in pertinent part]:

> "… unredacted originals of **all** required documents, including title and government issued identification, may be provided to you, to inspect and copy, for the purpose of retrieval of the private property at MARK'S AUTOMOTIVE INC., located at 51 Grattan Street, Brooklyn, New York, during normal business hours.
>
> "For clarity, no such "altered title" exists.
>
> "**Please advise immediately of all items and conditions required for retrieval of the subject private property at 51 Grattan Street, Brooklyn, New York, beginning tomorrow, Monday, December 23, 2024 at 9am, or other time and location specified by you as authorized by law.**"

371.    Plaintiff avers that no further communication was received from MAI on Sunday, December 22, 2024.

372.    Plaintiff avers that Plaintiff has reason to believe that by 3:11pm on Thursday, December 19, 2024, MAI was not in possession of a "completed authorization to tow" from the NYPD; and the tow was not "specifically authorized by law or rule;" and, MAI was unlawfully in possession of the Jeep and all it's affixtures and contents.

373.   Plaintiff avers that although Plaintiff was ready, willing, and able to retrieve the aforementioned private property, MARK'S AUTOMOTIVE INC. was closed for business on both Saturday, December 21, 2024 and Sunday, December 22, 2024, depriving Plaintiff of a full and fair opportunity to retrieve the private property.

374.   Plaintiff avers that MAI had no lawful authority to retain the property after production of title, authorization of the owner, and identification.

375.   Plaintiff avers that Plaintiff made a complaint to the CCRB[78] on December 23, 2024; and that on December 26, 2024, the CCRB informed Plaintiff that the aforementioned complaint was forwarded to the IAB;[79] and that the subject of the aforementioned complaints was Defendant LOWETH.[80]

376.   Plaintiff avers that on January 13, 2025 at approximately 7:41am, Plaintiff received a phone call from Defendant, Lieutenant Mikhail Goncharov [Tax ID No. 949043] [GONCHAROV] of the 88th precinct regarding the aforementioned IAB Complaint against Defendant LOWETH.

377.   Plaintiff avers that following the call with Defendant GONCHAROV, Plaintiff did write a follow-up notice titled "Follow-Up with Goncharov - 1.13.2025."[81]

378.   Plaintiff avers that on January 13, 2025 at approximately 3:19pm, Plaintiff received a

---

[78] *See* Excerpt of CCRB Complaint, dated December 23, 2024

[79] *See* Letter from CCRB Director of Case Management Eshwarie Mahadeo, dated December 26, 2024

[80] *See* Excerpt of IAB Complaint, dated December 30, 2024

[81] *See* "Follow-Up with Goncharov - 1.13.2025" excerpt

phone call [hereinafter, "the first call"] from Defendant, Sergeant Stephanie F. Malvica [Tax ID No. 967179] [MALVICA] of the 88th Precinct regarding the aforementioned IAB Complaint against Defendant LOWETH.

379.   Plaintiff avers that following the call with Defendant MALVICA, Plaintiff did write a follow-up notice titled "Follow-Up with Malvica - 1.13.2025."[82]

380.   Plaintiff avers that on January 18, 2025 at approximately 9:39am, Defendant MALVICA did place a call to Plaintiff [hereinafter, "the second call"] and did state to Plaintiff the following [in pertinent part]:

> "And the plates that were on the vehicle - I'm not sure where they came from."
> "So, what we do is, **we can take the plates, but we don't necessarily have to voucher the plates.**" [emphasis added]

381.   Plaintiff avers that during the second call, Plaintiff did request to know the location of the plates; and did confirm that Defendant MALVICA would call Plaintiff to follow-up on the location of the plates.

382.   Plaintiff avers that on January 22, 2025, Plaintiff did place a call to Defendant MALVICA at the 88th Precinct; and did not reach Defendant MALVICA; and did leave a message with Police Officer Nataly Gonzalez [Tax ID No. 960605] for MALVICA to call Plaintiff.

383.   Plaintiff avers that at approximately 2:17pm, Defendant MALVICA did return plaintiffs call [hereinafter, "the third call"]; and did provide Plaintiff with NYPD PCI Number 3001850303 for the plates; and did instruct Plaintiff to go to the 88th Precinct with "paperwork" to retrieve the plates; and Plaintiff did request to know when MALVICA would be available at the precinct; and MALVICA did advise that MALVICA would be

---

[82] *See* "Follow-Up with Malvica - 1.13.2025" excerpt

available at the 88th Precinct beginning at 7:00am on January 25, 2025.

384. Plaintiff avers that on January 25, 2025 at approximately 7:42am, Plaintiff did call Defendant MALVICA; and MALVICA did state the following [in pertinent part]: "I inquired about it [the plates] with my property guy. You can't pick up the plates."

385. Plaintiff avers that following the third call from Defendant MALVICA, Plaintiff did send an e-mail to MALVICA; and 88th Precinct Property Clerk, Defendant Ali Walker [Tax ID No. 929329] [WALKER]; and to Defendant LAZARO, IAB, CCRB, NYPD CEU, and NYPD Legal Bureau Commissioner GERBER; and did request "...a copy of that PCI and explicit instructions for retrieval of the property."[83]

386. Plaintiff avers that on February 23, 2025 at approximately 7:57am, Defendant GONCHAROV did place a phone call to Plaintiff; and did state to Plaintiff that GONCHAROV would send Plaintiff NYPD Property Clerk Invoice 3001850303 [for the plates].

387. Plaintiff avers that during the aforementioned conversation, Defendant GONCHAROV did make the following statement to Plaintiff:

> "For the future reference, I will make sure that whoever you interact with in terms of police involved, those officers will do what they have to do - provide names, shield numbers, invoice numbers, and advise you with more details what documentation is needed, if you have any questions, uhh... — for property, that is in police possession or any other questions related to police business."

388. Plaintiff avers that at approximately 9:54am, Defendant WALKER did update the PCI to include the following instruction: "DO NOT RELEASE UNLESS A REGISTERED OWNER FOR LISTED PLATE PROVIDES VALID CREDENTIALS FROM DMV";

---

[83] *See* E-mail, dated January 25, 2025, 7:53am

and, that Defendant GONCHAROV did approve the aforementioned update.

389.   Plaintiff avers that at 10:13am, Defendant GONCHAROV did e-mail Plaintiff NYPD PCI 3001850303;[84] and the version delivered to Plaintiff did not have instructions for property retrieval.

390.   Defendant WALKER has been the subject of no less than four (4) misconduct allegations, two of which were for failure to provide information.

391.   Plaintiff avers that after reviewing the PCI 3001850303, Plaintiff did create a notice, "Follow-Up to NYPD - 2.23.2025," and did affirm the facts stated in the notice; and did deliver the notice to several agents of the NYPD including, but not limited to, Defendants GONCHAROV, Defendant MALVICA, and Defendant WALKER.

392.   Plaintiff avers that the plates are not arrest evidence; nor are the plates contraband; nor are the plates prohibited for sale, purchase, or possession.

393.   Plaintiff avers that Defendant CITY OF NEW YORK'S act of taking possession of the private property under the care, custody, and/or control of Plaintiff created a bailment.

394.   Plaintiff avers that Plaintiff did provide documentation to Defendant CITY OF NEW YORK police department sufficient to establish possessory interest in the plates including, but not limited to the UCC Financing Statement for the plates.

395.   Plaintiff avers that Plaintiff was not provided with sufficient notice of all items seized by

---

[84] *See* NYPD PCI 3001850303

Defendants; nor was Plaintiff provided with explicit instructions for retrieval of all property.

396.    Plaintiff has reason to believe that the NYPD has a pattern and practice of seizing private property absent lawful authority to do so; and that agents of the 88th Precinct have a pattern and practice of withholding property invoices / vouchers absent the lawful authority to do so; and that agents of the 88th Precinct have conspired to seize property under the care, custody, and/or control of Plaintiff absent the lawful authority to do so.

397.    Plaintiff avers that Defendant LAZARO removed property under the care, custody, and/or control of Plaintiff; and Defendant LOWETH prevented Plaintiff from retrieving the property; and Defendant MALVICA, under the guise of investigating a complaint against LOWETH further prevented Plaintiff from retrieving the property; all without lawful authority to do so.

398.    Plaintiff avers that Defendant GONCHAROV attempted to prevent Plaintiff from accessing the property invoiced on PCI 3001850303 by approving the updates to the NYPD PCI made on February 23, 2025.

399.    Plaintiff avers that Plaintiff did serve a "Payment Demand; Affirmation; and Notice of Claim," dated January 27, 2025, on Defendant LANDER and Corporation Counsel.

400.    Plaintiff avers that on February 6, 2025, Plaintiffs Notice of Claim was acknowledged by Defendant LANDER; and Plaintiff was assigned Claim Number 2025PD003862.

## A DEBT IS OWED TO PLAINTIFF

401.    Plaintiff avers that in light of plaintiffs genuine and sincerely held religious beliefs, Plaintiff did ordain and establish, under the authority of God the father, an **Affidavit of Truth and Status; with Reservation of Rights; and Schedule of Fees,** hereinafter "Affidavit of Status," in the year of our Lord 2020, having an apostille date of August 25, 2020, numbered by the New York Department of State, A-1466665; an authenticated public document.

402.    Plaintiff avers that plaintiffs **Schedule of Fees,**[85] set forth, amongst other things, notice to all foreseeable tortfeasors of the fees or value placed on particular actions taken against Plaintiff; or for the compelled performance of Plaintiff **by all acting under the color of law**; and for actions against Plaintiff purported to be privileged or by right, but are **in fact not privileged or by right, or are otherwise unlawful**.

403.    Plaintiff avers that, for the *first* time, Plaintiffs **Affidavit of Status** was presented to and received by certified mail and / or e-mail, several agents, including but not limited to:

- City of New York Chief Executive Officer on September 9, 2020;
- City of New York Corporation Counsel on September 8, 2020;
- City of New York Head of Police Department on September 8, 2020 and,
- Kings County District Attorney Eric Gonzalez on September 4, 2020.[86]

---

[85] *See* Schedule of Fees

[86] *See* USPS Certified Mail and Return Receipts



***Image 15*** - *USPS Certified Mail and Return Mail Receipts, evincing delivery of plaintiffs Affidavit of Status to the Office of Defendant ADAMS and Corporation Counsel*

404.    Plaintiff avers that notice to one is notice to all.

405.    Plaintiff avers that plaintiffs **Affidavit of Status** contained a mechanism for rebuttal; objection; interrogatories; and non acceptance of each averment, of fees, and of fee assessment; and did embody all of the terms of a valid contract.

406.    Plaintiff avers that to date there has been no rebuttal; objection; interrogatories; or non acceptance to any averment, fee, or to fee assessment, which constitutes acquiescence and tacit agreement; and implicates laches.

407.  Plaintiffs Schedule of Fees has been delivered to Defendant CITY OF NEW YORK and Corporation Counsel; and that Plaintiffs Schedule of Fees is a contract between Plaintiff and "…all foreseeable tortfeasors" — in this case, Defendant CITY OF NEW YORK and all its agents.

408.  Essential terms of the contract are Defendants' actions against Plaintiff absent right or privilege; Plaintiffs performance, performance which is compelled by Defendant;[87] Plaintiffs assessment of fees for Plaintiffs performance; Defendants acceptance of or objection to assessed fees; and, Defendants payment of the assessed fees in lawful money.

409.  Plaintiff avers that Plaintiff was compelled to perform by Defendants; and Plaintiff did perform; and Plaintiff was compelled to confer a benefit on Defendants; and Plaintiff did confer such benefit; and Plaintiff did assess fees; and did deliver the fee assessment / statement of account to Defendants by USPS and electronic mail; and Defendants did accept the fee assessment / statement of account without objection; and Defendants have failed to issue payment, violating the terms of the contract.

---

[87] *See* Schedule of Fees:

¶ 45: "…**your affiant reserves the right to assess fees for any and all violations of your affiant's rights; or compelled performance**; and your affiant reserves the right to assess fees for any and all incidents and occurrences nunc pro tunc… This assessment of **fees shall be compensation for compelled performance; or a remedy for violations**, but not the sole remedy."

¶ 46: "…any corporation; or natural person **who, by coercion; threat; force; or demand, requires your affiant to perform; to produce material; to answer; to comply with, or to act in accord with any particular act as set forth in the Schedule of Fees, shall be assessed according to this schedule of fees.**"

¶ 47: "Your affiant avers that all intervenors and actors, both Principles and Agents, **agree to be held liable in their private; individual; and corporate capacity for their actions; and that Principles are liable for fees assessed on Agents under the doctrine of respondeat superior;**…" [emphasis added]

410.   Plaintiff avers that Defendants assumed the obligation to pay Plaintiff by the conduct stated herein this complaint.

411.   As a result of the actions taken **without right or privilege** by Individual Defendants, Plaintiff generated affidavits/affirmations with Notices of Claim; and, three (3) bill of exchanges with payment demands[88] as follows:

   (a)   Notice of Claim, dated July 9, 2024; Claim Number 2024PI023340;

   (b)   Notice of Claim, dated January 27, 2025; Payment Demand RF 407 195 262 US; Claim Numbers 2025P1004834 and 2025PD005215;

   (c)   Notice of Claim, dated January 27, 2025; Payment Demand RF 407 195 259 US; Claim Number 2025PD003862; and,

   (d)   Notice of Claim, dated March 9, 2025; Payment Demand RF 407 195 276 US;[89]

412.   Plaintiff avers that the aforementioned Payment Demands have been received by all Defendants.[90]

413.   Plaintiff avers that the actions taken without right or privilege by Individual Defendants, including, but not limited to objecting to the Schedule of Fees, created a fiduciary duty between Plaintiff and Individual Defendants.

414.   Plaintiff's bill of exchanges are all "instrument(s) for the payment of money only" within the meaning of Article 32 of New York Civil Practice Law Rule § 3213; an unconditional order to pay; a payment demand; and a negotiable instrument within the meaning of UCC

---

[88] *See* Payment Demands / Drafts / Negotiable Instruments / Bills of Exchange

[89] *See* Acknowledgment letters from the office of Defendant LANDER

[90] *See* USPS Certified Mail and Return Receipts

§ 3-104 for which Plaintiff is entitled to payment.

415. Plaintiff avers that each of the aforementioned Notices of Claim contained a statement of account; and did embody all of the terms of a valid contract.

416. Plaintiff avers that value was conferred on Defendants, including, but not limited to, the value of all property seized from the care, custody, and/or control of Plaintiff, in the possession of Defendants.

417. Plaintiff's payment demands were accepted for value received by all Defendants without protest or rebuttal. More than thirty (30) days have passed since presentment of the payment demands; no payments have been made; and the payment demands have been retained by all Defendants without protest.

418. Plaintiff avers Defendants silence constitutes acquiescence and tacit agreement; and implicates laches.

419. The City of New York Office of the Comptroller has a pattern and practice of accepting Notices of Claim from Plaintiff; failing to investigate the claims;[91] and silently, administratively closing the claims.

420. All Defendants have had ample opportunity to object, or to protest the statements of accounts and payment demands. All Defendants have proven unwilling to accept responsibility, and liability for their actions making all good faith attempts by Plaintiff to

---

[91] Plaintiff, as claimant, has never been timely served with notice of any 50-H hearing to be conducted on behalf of-or for the benefit of Defendant CITY OF NEW YORK, with regard to any claim filed by Plaintiff against CITY.

amicably settle this matter out of court unavailing.

**I.**                    **First Cause of Action**
**42 U.S.C. § 1983 First Amendment Retaliation**
**First and Fourteenth Amendment Violations Against**
**Defendants WILLIS and MIKOWSKI in Their Individual and Corporate Capacity**

421.    Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth
in the foregoing paragraphs with the same force and effect as if fully set forth herein this
claim, and cause of action.

422.    All of the aforementioned acts of Defendants WILLIS and MIKOWSKI were carried out
under the color of state law. The actions taken against Plaintiff occurred because, or in
retaliation for Plaintiffs speech.

423.    By their conduct, as described herein, and acting under color of state law to deprive
Plaintiff of the right to freedom of speech under the First Amendment, Individual
Defendants WILLIS and MIKOWSKI are liable for violations of 42 U.S.C. § 1983 which
prohibits the deprivations under color of state law of rights secured under the United
States Constitution.

424.    Individual Defendants have violated Plaintiff's rights to free speech; subjecting Plaintiff
to unlawful excessive force to deter the exercise of Plaintiff's rights protected by the First
Amendment; and interfering with and/or terminating Plaintiff's lawful protected activity
of speech deemed offensive or undesirable by Defendant CITY and/or its agents and
employees; and Defendants WILLIS and MIKOWSKI. Individual Defendants WILLIS
and MIKOWSKI'S actions were taken in retaliation for Plaintiffs exercise of rights

protected by the First Amendment.

425.    The actions complained of herein were carried out by Defendants WILLIS and MIKOWSKI in their capacities as law enforcement officers, without entire actual and/or apparent authority attendant thereto.

426.    The acts complained of were carried out by the Individual Defendants WILLIS and MIKOWSKI in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York Police Department under the supervision of ranking officers of the department.

427.    Individual Defendants WILLIS and MIKOWSKI, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality, which is forbidden by the New York State Constitution, and the Constitution of the United States.

428.    As a direct and proximate result of Individual Defendants' unlawful actions, Plaintiff has suffered, and will continue to suffer damages including, physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

429.    As a result of the foregoing, Plaintiff has been damaged and demands compensatory and punitive damages.

430.    Plaintiff alleges that Defendant WILLIS and Defendant MIKOWSKI, in their individual and corporate capacity, are liable to Plaintiff for all damages set forth below.

**II.**                    **Second Cause of Action**

**42 U.S.C. § 1983 Defamation**

**Against Defendants WILLIS and MIKOWSKI in Their Individual and Corporate Capacity**

431.    Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth in the foregoing paragraphs with the same force and effect as if fully set forth herein this claim, and cause of action.

432.    Plaintiff avers that Defendants WILLIS and MIKOWSKI did publish, and/or did cause to be published, false statements, with knowledge that the statements were false, and/or with reckless disregard of whether the statements were true or not.

433.    Plaintiff avers that the actions and conduct of Defendants WILLIS and MIKOWSKI caused damage to the reputation of Plaintiff; and did cause and continues to cause emotional distress; and the actions and conduct have presented Plaintiff in a false light; and has resulted in criticism, dishonor, or condemnation of Plaintiff.

434.    The actions complained of herein were carried out by the aforementioned Defendants in their capacities as law enforcement officers, with the entire actual and / or apparent authority attendant thereto.

435.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered, and will continue to suffer damages including, but not limited to, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment; and deprivation of rights protected by the state and federal constitutions.

436.    Plaintiff alleges that the unlawful conduct and actions of Defendants were willful, malicious, oppressive, tortious; and / or reckless; and was carried out with knowledge of the same.

437.    As a result of the foregoing, Plaintiff has been damaged and demands compensatory and punitive damages.

438.    Plaintiff alleges that Defendant, WILLIS and Defendant MIKOWSKI, in their individual and corporate capacity, are liable to Plaintiff for all damages set forth below.

**III.**                                          **Third Cause of Action**
**42 U.S.C. § 1983 False Arrest and False Imprisonment**
**Fourth and Fourteenth Amendment Violations Against**
**Defendants WILLIS and MIKOWSKI in Their Individual and Corporate Capacity**

439.    Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth in the foregoing paragraphs with the same force and effect as if fully set forth herein this claim, and cause of action.

440.    Plaintiff avers that Defendant WILLIS and Defendant MIKOWSKI intentionally arrested Plaintiff; and Plaintiff was aware of the arrest; and Plaintiff did not consent to the arrest; and the arrest was not supported by probable cause.

441.    Plaintiff avers that Defendant WILLIS and Defendant MIKOWSKI did actually restrain plaintiffs physical liberty; and that WILLIS and MIKOWSKI intended to confine Plaintiff; and Plaintiff and Defendants were conscious of the confinement; and Plaintiff did not consent to the confinement and the confinement was against Plaintiffs will; and

the confinement was not otherwise privileged.

442.    By their conduct, as described herein, and acting under color of state law to deprive Plaintiff of Plaintiff's rights to be free from unreasonable searches and seizures and arrests without reasonable suspicion or probable cause as required by the Fourth and Fourteenth Amendments which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

443.    The actions complained of herein were carried out by the aforementioned Defendants in their capacities as law enforcement officers, with the entire actual and / or apparent authority attendant thereto.

444.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered, and will continue to suffer damages including, but not limited to, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment; and deprivation of rights protected by the state and federal constitutions.

445.    Plaintiff alleges that the unlawful conduct and actions of Defendant were willful, malicious, oppressive, tortious; and / or reckless; and was carried out with knowledge of the same, that in addition to Plaintiff's assessment of fees, punitive damages should be imposed.

446.    As a result of the foregoing, Plaintiff has been damaged and demands compensatory and punitive damages.

447.    Plaintiff alleges that Defendant WILLIS and Defendant MIKOWSKI, in their individual

and corporate capacity, are liable to Plaintiff for all damages set forth below.

IV.                      **Fourth Cause of Action**
              **42 U.S.C. § 1983 Excessive Force**
      **Fourth and Fourteenth Amendment Violations Against**
      **Defendant WILLIS in Her Individual and Corporate Capacity**

448.    Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth in the foregoing paragraphs with the same force and effect as if fully set forth herein this claim, and cause of action.

449.    Plaintiff did not commit the crimes alleged by Defendant WILLIS.

450.    Plaintiff posed no immediate threat to the safety of the Defendants or others; and Plaintiff did not actively resist the arrest or attempt to evade arrest by flight.

451.    There was no need for any force whatsoever.

452.    The actions complained of herein were carried out by the aforementioned Defendant in her capacity as a law enforcement officer, with the entire actual and / or apparent authority attendant thereto.

453.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered, and will continue to suffer damages including mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment; and deprivation of rights protected by the state and federal constitutions.

454.    Plaintiff alleges that the unlawful conduct and actions of Defendant were willful, malicious, oppressive, tortious; and / or reckless; and was carried out with knowledge of the same, that in addition to Plaintiff's assessment of fees, punitive damages should be imposed.

455.    As a result of the foregoing, Plaintiff has been damaged and demands compensatory and punitive damages.

456.    Plaintiff alleges that Defendant WILLIS, in her individual and corporate capacity, is liable to Plaintiff for all damages set forth below.

## V.                      Fifth Cause of Action
### 42 U.S.C. § 1983 Malicious Abuse of Process
### Fourth and Fourteenth Amendment Violations Against
### Defendant MIKOWSKI in His Individual and Corporate Capacity

457.    Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth in the foregoing paragraphs with the same force and effect as if fully set forth herein this claim, and cause of action.

458.    Plaintiff alleges that Defendant MIKOWSKI employed regularly issued criminal process to compel Plaintiffs performance, with an intent to do harm and without excuse or justification; and MIKOWSKI's use of the process was in a perverted manner to obtain a collateral objective.

459.    Plaintiff alleges that Defendant MIKOWSKI did seize Plaintiff without privilege; without articulable reasonable suspicion of a crime; without probable cause of a crime; and

without arguable probable cause of a crime; and against Plaintiffs will.

460. The actions complained of herein were carried out by the aforementioned Defendants in their capacities as law enforcement officers, with the entire actual and / or apparent authority attendant thereto.

461. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered, and will continue to suffer damages including, but not limited to, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment; and deprivation of rights protected by the state and federal constitutions.

462. As a result of the foregoing, Plaintiff has been damaged and demands compensatory and punitive damages.

463. Plaintiff alleges that Defendant, MIKOWSKI, in his individual and corporate capacity, is liable to Plaintiff for all damages set forth below.

## VI.      Sixth Cause of Action
### 42 U.S.C. § 1983 Unlawful Search
**Fourth and Fourteenth Amendment Violations Against**
**Defendant CITY OF NEW YORK and Defendants WILLIS and MIKOWSKI in Their**
**Individual and Corporate Capacity**

464. Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth in the foregoing paragraphs with the same force and effect as if fully set forth herein this claim, and cause of action.

465.  Defendant WILLIS; Defendant MIKOWSKI; Defendant HICKEY; non-party CARMOSIN; and non-party PARRIS, as agents of Defendant CITY OF NEW YORK, and under the direct supervision of Sergeant Crystal R. Collins [Tax ID No. 917065]; Sergeant Kevin Chow [Tax ID No. 951610]; Sergeant Kimberly A. Zawalich [Tax ID No. 952368]; and Sergeant Kevin P. Farell [Tax ID. No 919022], did initiate and authorize a search of Private property under the care, custody, and/or control of Plaintiff on April 10, 2024, at or around 9:00am, against Plaintiffs will.

466.  The search conducted by Defendant WILLIS; Defendant MIKOWSKI; non-party CARMOSIN; and non-party PARRIS, as agents of Defendant, CITY OF NEW YORK, and under the direct supervision of Sgt. Crystal R. Collins; Sgt. Kevin Chow; Sgt. Kimberly A. Zawalich; and Sgt. Kevin P. Farell, as agents of Defendant, CITY OF NEW YORK, was not privileged; was without articulable reasonable suspicion of a crime; was without probable cause of a crime; was without arguable probable cause of a crime; and was not incident a lawful arrest.

467.  In committing the acts cited herein, Defendants acted under color of state law to deprive Plaintiff of natural rights; rights protected by the constitutions; and rights affirmed under the common law, to be free from warrantless arrest; searches and seizures, absent probable cause of a crime.

468.  The search constitutes an unlawful search; and Plaintiff alleges that Defendant WILLIS; Defendant MIKOWSKI; non-party CARMOSIN; and non-party PARRIS, as agents of Defendant, CITY OF NEW YORK; conducted the search with knowledge that such a search is not authorized by law, and with knowledge that such a search is unlawful.

469.    As a direct and proximate result of Defendant's deprivation of Plaintiffs rights, Plaintiff did sustain the injury set forth above.

470.    Plaintiff alleges that the unlawful conduct and actions of Defendant were willful, malicious, oppressive, tortious; and / or reckless; and was carried out with knowledge of the same, that in addition to Plaintiff's assessment of fees, punitive damages should be imposed.

471.    Plaintiff alleges that Defendant, CITY OF NEW YORK; and, Defendant WILLIS and Defendant MIKOWSKI, in their individual and corporate capacity, are liable to Plaintiff for all damages set forth below.

## VII.    Seventh Cause of Action
### 42 U.S.C. § 1983 Unlawful Seizure
**Fourth and Fourteenth Amendment Violations Against**
**Defendant CITY OF NEW YORK and Defendants WILLIS, MIKOWSKI, and HICKEY**
**in Their Individual and Corporate Capacity**

472.    Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth in the foregoing paragraphs with the same force and effect as if fully set forth herein this claim, and cause of action.

473.    Plaintiff alleges that Defendant WILLIS; Defendant MIKOWSKI; Defendant HICKEY; non-party CARMOSIN; and non-party PARRIS, as agents of Defendant CITY OF NEW YORK, and under the direct supervision of Sgt. Crystal R. Collins; Sgt. Kevin Chow; Sgt. Kimberly A. Zawalich; and Sgt. Kevin P. Farell, did seize private property under the care, custody, and/or control of Plaintiff without privilege; without articulable reasonable

suspicion of a crime; without probable cause of a crime; and without arguable probable cause of a crime; against Plaintiffs will; and over Plaintiffs objections when Defendant seized Private property under the care, custody, and/or control of Plaintiff, from the common heritage at a location near 309 Lafayette Avenue, Kings County New York, which constitutes an unlawful seizure.

474. Plaintiff avers that Plaintiff was not provided with sufficient notice of all items seized by Defendants; nor was Plaintiff provided with explicit instructions for retrieval of all property.

475. Plaintiff alleges that in committing the acts cited herein, Defendants acted under color of state law to deprive Plaintiff of natural rights; rights protected by the constitutions; and rights affirmed under the common law, to be free from warrantless arrest; searches and seizures, absent probable cause of a crime.

476. Plaintiff alleges that Defendants did seize private property under the care, custody, and/or control of Plaintiff with knowledge that such a seizure is not authorized by law, and is unlawful as a matter of law.

477. Plaintiff alleges that as a direct and proximate result of Defendants deprivation of Plaintiffs rights, and compelled performance, Plaintiff did sustain the injury set forth above.

478. Plaintiff alleges that the unlawful conduct and actions of Defendants were willful, malicious, oppressive, tortious; and / or reckless; and was carried out with knowledge of the same, that in addition to Plaintiff's assessment of fees, punitive damages should be

imposed.

479. Plaintiff alleges that Defendant CITY OF NEW YORK; and, Defendant WILLIS,
Defendant MIKOWSKI, and Defendant HICKEY, in their individual and corporate
capacity, are liable to Plaintiff for all damages set forth below.

## VIII.                          Eighth Cause of Action
### 42 U.S.C. § 1983 Unlawful Seizure
### Second Amendment Violation Against
### Defendant CITY OF NEW YORK and Defendants WILLIS, MIKOWSKI, and HICKEY
### in Their Individual and Corporate Capacity

480. Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth
in the foregoing paragraphs with the same force and effect as if fully set forth herein this
claim, and cause of action.

481. Plaintiff alleges that Defendant WILLIS; Defendant MIKOWSKI; Defendant HICKEY;
non-party CARMOSIN; and non-party PARRIS, as agents of Defendant CITY OF NEW
YORK, and under the direct supervision of Sgt. Crystal R. Collins; Sgt. Kevin Chow;
Sgt. Kimberly A. Zawalich; and Sgt. Kevin P. Farell, did seize private property from the
care, custody, and/or control of Plaintiff without privilege; without articulable reasonable
suspicion of a crime; without probable cause of a crime; and without arguable probable
cause of a crime; and against Plaintiffs will when Defendant seized private property from
the care, custody, and/or control of Plaintiff from the common heritage at a location near
309 Lafayette Avenue, Kings County New York, which constitutes an unlawful seizure.

482. Plaintiff avers that Plaintiff was not provided with sufficient notice of all items seized by

Defendants; nor was Plaintiff provided with explicit instructions for retrieval of all property.

483.   Plaintiff alleges that in committing the acts cited herein, Defendant acted under color of state law to deprive Plaintiff of natural rights; rights protected by the constitutions; and rights affirmed under the common law, to be free from warrantless arrest; searches and seizures, absent probable cause of a crime.

484.   Plaintiff alleges that Defendant did seize private property from the care, custody, and/or control of Plaintiff with knowledge that such a seizure is not authorized by law, and is unlawful as a matter of law.

485.   Plaintiff alleges that as a direct and proximate result of Defendants deprivation of Plaintiffs rights, and compelled performance, Plaintiff did sustain the injury set forth above.

486.   Plaintiff alleges that the unlawful conduct and actions of Defendants were willful, malicious, oppressive, tortious; and / or reckless; and was carried out with knowledge of the same, that in addition to Plaintiff's assessment of fees, punitive damages should be imposed.

487.   Plaintiff alleges that Defendant CITY OF NEW YORK; and, Defendant WILLIS, Defendant MIKOWSKI, and 2Defendant HICKEY, in their individual and corporate capacity, are liable to Plaintiff for all damages set forth below.

IX.                              **Ninth Cause of Action**

**42 U.S.C. § 1983 Assault**

**Fourth and Fourteenth Amendment Violations Against**

**Defendant MIKOWSKI in His Individual and Corporate Capacity**

488.    Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth in the foregoing paragraphs with the same force and effect as if fully set forth herein this claim, and cause of action.

489.    Plaintiff alleges that Defendant MIKOWSKI intended to cause offensive contact with Plaintiff; and that MIKOWSKI actually made offensive contact with Plaintiff; and that Plaintiff did not consent to the offensive contact; and that Plaintiff was put in imminent apprehension as a result.

490.    Acting under color of state law, Defendant MIKOWSKI used force in excess of that justified by law.

491.    By Defendant MIKOWSKI's conduct, as described herein, and acting under color of state law to deprive Plaintiff of the right to be free from assault as required by the Fourth, and Fourteenth Amendments, which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

492.    Acting under color of state law, Defendant MIKOWSKI assaulted Plaintiff without justification or excuse therefor.

493.    Acting under color of state law, Individual Defendants aided and abetted in the assault of Plaintiff without justification or excuse therefor.

494.    As a direct and proximate result of Defendants MIKOWSKI's actions, Plaintiff has suffered, and will continue to suffer damages including mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

495.    Plaintiff alleges that Defendant MIKOWSKI, in his individual and corporate capacity, is liable to Plaintiff for all damages set forth below.

496.    As a result of the foregoing, Plaintiff has been damaged and demands compensatory and punitive damages.

X.                                   **Tenth Cause of Action**
                              **42 U.S.C. § 1983 Excessive Force**
                    **Fourth and Fourteenth Amendment Violations Against**
                **Defendants MIKOWSKI in His Individual and Corporate Capacity**

497.    Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth in the foregoing paragraphs with the same force and effect as if fully set forth herein this claim, and cause of action.

498.    Plaintiff did not commit the crimes alleged byDefendant MIKOWSKI.

499.    Plaintiff posed no immediate threat to the safety of the Defendant or others; and there was no need for any force whatsoever.

500.    The actions complained of herein were carried out by the aforementioned Defendant in his capacity as a law enforcement officer, with the entire actual and / or apparent authority attendant thereto.

501.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered, and will continue to suffer damages including mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment; and deprivation of rights protected by the state and federal constitutions.

502.   Plaintiff alleges that the unlawful conduct and actions of Defendant were willful, malicious, oppressive, tortious; and / or reckless; and was carried out with knowledge of the same, that in addition to Plaintiff's assessment of fees, punitive damages should be imposed.

503.   As a result of the foregoing, Plaintiff has been damaged and demands compensatory and punitive damages.

504.   Plaintiff alleges that Defendant MIKOWSKI, in his individual and corporate capacity, is liable to Plaintiff for all damages set forth below.

## XI.                          Eleventh Cause of Action
### 42 U.S.C. § 1983 Denial of Right to a Fair Trial
### Sixth and Fourteenth Amendment Violations Against
### Defendants WILLIS and MIKOWSKI in Their Individual and Corporate Capacity

505.   Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth in the foregoing paragraphs with the same force and effect as if fully set forth herein this claim, and cause of action.

506.   Plaintiff alleges that Defendants WILLIS and MIKOWSKI, as alleged investigating officials, did fabricate evidence and forward that information to the Kings County District

Attorney; and that information did influence the grand jury's decision; and that Plaintiff suffered a deprivation of liberty as a result.

507.    As a direct and proximate result of Defendant WILLIS and MIKOWSKI's unlawful actions, Plaintiff has suffered, and will continue to suffer damages including mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment; and deprivation of liberty and rights protected by the state and federal constitutions.

508.    Plaintiff alleges that the unlawful conduct and actions of Defendant were willful, malicious, oppressive, tortious; and / or reckless; and was carried out with knowledge of the same, that in addition to Plaintiff's assessment of fees, punitive damages should be imposed.

509.    As a result of the foregoing, Plaintiff has been damaged and demands compensatory and punitive damages.

510.    Plaintiff alleges that Defendant WILLIS and Defendant MIKOWSKI, in their individual and corporate capacity, are liable to Plaintiff for all damages set forth below.

## XII.                    Twelfth Cause of Action
### 42 U.S.C. § 1983 Failure to Intervene
### Fourteenth Amendment Violation Against
### Defendant HICKEY in His Individual and Corporate Capacity

511.    Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth in the foregoing paragraphs with the same force and effect as if fully set forth herein this claim, and cause of action.

512.   Plaintiff alleges that Defendant WILLIS and Defendant MIKOWSKI used excessive force against Plaintiff; and that Defendant HICKEY had a realistic opportunity to intervene and prevent the harm caused by WILLIS and MIKOWSKI; and that a reasonable person in HICKEY's shoes would have known that the Plaintiffs constitutional rights were being violated; and that HICKEY did not take reasonable steps to intervene.

513.   As a direct and proximate result of Defendants HICKEY's actions, Plaintiff has suffered, and will continue to suffer damages including, but not limited to, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment; and deprivation of rights protected by the state and federal constitutions.

514.   As a result of the foregoing, Plaintiff has been damaged and demands compensatory and punitive damages.

515.   Plaintiff alleges that Defendant HICKEY, in his individual and corporate capacity, is liable to Plaintiff for all damages set forth below.

### XIII.                  Thirteenth Cause of Action
#### 42 U.S.C. § 1983 Denial of Right to a Fair Trial
#### Sixth and Fourteenth Amendment Violations Against
#### Defendant ARAV in His Individual and Corporate Capacity

516.   Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth in the foregoing paragraphs with the same force and effect as if fully set forth herein this claim, and cause of action.

517.   Plaintiff alleges that Defendant ARAV, as an investigating official, did fabricate evidence

and forward that information to the Kings County District Attorney; and that information
did influence the grand jury's decision; and that Plaintiff suffered a deprivation of liberty
as a result.

518. As a direct and proximate result of Defendant ARAV's unlawful actions, Plaintiff has
suffered, and will continue to suffer damages including, but not limited to, mental and
emotional injury and pain, mental anguish, suffering, humiliation and embarrassment;
and deprivation of liberty and rights protected by the state and federal constitutions.

519. As a result of the foregoing, Plaintiff has been damaged and demands compensatory and
punitive damages.

520. Plaintiff alleges that Defendant ARAV, in his individual and corporate capacity, is liable
to Plaintiff for all damages set forth below.

XIV.                    **Fourteenth Cause of Action**
                        **42 U.S.C. § 1983 Monell Claim**
                   **Against Defendant CITY OF NEW YORK**

521. Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth
in the foregoing paragraphs with the same force and effect as if fully set forth herein this
claim, and cause of action.

522. At all relevant times herein, Defendant CITY OF NEW YORK, acting through its
POLICE DEPARTMENT, developed, implemented, enforced, encouraged and sanctioned
de facto policies, practices, and/or customs exhibiting deliberate indifference to
Plaintiff's rights protected by the constitutions, which caused the violations of such

rights.

523.    Plaintiff alleges Defendants WILLIS, MIKOWSKI, and ARAV acted pursuant to an expressly adopted official policy or a widespread or longstanding practice or custom of Defendant CITY OF NEW YORK.

524.    Defendant  CITY OF NEW YORK maintained a policy or custom that caused Plaintiff to be deprived of their civil rights, tacitly approved of such improper conduct or was deliberately indifferent toward the potential exposure of individuals, such as Plaintiff, to such improper behavior.

525.    Upon information and belief, Defendant CITY OF NEW YORK has, acting through its POLICE DEPARTMENT, developed, implemented, enforced, encouraged, and sanctioned a de facto policy, practice, and/or custom of unlawfully interfering with individuals who exercise their rights under the Second Amendment.

526.    Defendant  CITY OF NEW YORK's employee police officers have engaged in an illegal pattern and practice of misconduct, so consistent and widespread that it constitutes a custom or usage, of which a supervisor or policymaker must have been aware of them.

527.    Defendant  CITY OF NEW YORK repeated refusal or failure to install or apply corrective or preventive measures constitutes the tacit approval of such violent behaviors or a deliberate indifference to the rights of those who may be affected by such behavior.

528.    Individual Defendants have acted with deliberate indifference to the rights of Plaintiff which are protected by the constitution. As a direct and proximate result of the acts as

stated herein by each of the Defendants, the Plaintiff's protected rights have been violated which has caused Plaintiff to suffer physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

529.    Defendant CITY OF NEW YORK is liable for the damages suffered by Plaintiff as a result of the conduct of their employees, agents, and servants, in that they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, as detailed within this claim and complaint.

530.    Defendant CITY OF NEW YORK and its employees, agents and servants have been reckless, grossly negligent and/or negligent in training and managing subordinates who caused the unlawful events suffered by Plaintiff, as detailed within this claim and complaint.

531.    The policy of Defendant CITY OF NEW YORK; its employees; agents; and servants, caused the violation of Plaintiff's second and sixth amendment rights protected by the constitution in this case.

532.    Plaintiff alleges that the unlawful conduct and actions of Defendant were willful, malicious, oppressive, tortious; and / or reckless; and was carried out with knowledge of the same, that in addition to Plaintiff's assessment of fees, punitive damages should be imposed.

533.    As a result of the foregoing, Plaintiff has been damaged and demands compensatory and punitive damages.

534.    Under 42 U.S.C. § 1983, Defendant CITY OF NEW YORK is jointly and severally liable with Individual Defendants and each of them for the general and specific damages Plaintiff sustained, as well as the costs and disbursements of the action.

**XV.**                         **Fifteenth Cause of Action**
                    **42 U.S.C. § 1983 Malicious Prosecution**
              **Fourth and Fourteenth Amendment Violations Against**
    **Defendants WILLIS and MIKOWSKI in Their Individual and Corporate Capacity**

535.    Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth in the foregoing paragraphs with the same force and effect as if fully set forth herein this claim, and cause of action.

536.    Acting under color of state law, Defendant WILLIS and Defendant MIKOWSKI brought charges against Plaintiff without probable cause of a crime, and without arguable probable cause of a crime at such time as they knew; or should have known there was no probable cause of a crime, nor arguable probable cause of a crime, and Plaintiff was subject to post-arraignment deprivation.

537.    Individual Defendant WILLIS and Defendant MIKOWSKI caused the prior case to be commenced and continued with actual or legal malice.

538.    With knowledge and forethought, Defendant WILLIS and Defendant MIKOWSKI willingly manufactured probable cause of crimes through fabrications and omissions, with knowledge of the same; Defendant WILLIS's and Defendant MIKOWSKI's unlawful acts were not mistakes of fact, nor mistakes of law, but intentional acts to deprive Plaintiff of due process; to injure; and / or to deprive Plaintiff of rights protected

under the Second, Fourth, and Fourteenth Amendments, which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

539.   Defendant WILLIS and Defendant MIKOWSKI defended, and continued the prosecution of Plaintiff for the duration of the criminal case with the knowledge that they fabricated the probable cause; and with the knowledge that Plaintiff had committed no crimes or offenses. Defendant WILLIS and Defendant MIKOWSKI initiated, and pursued criminal prosecution against Plaintiff without good cause; and without legal justification.

540.   The criminal prosecution of Plaintiff terminated with all charges dismissed in Plaintiff's favor on March 4th, 2025.

541.   There was no bona fide probable cause or legal justification for the prior case.

542.   As a direct and proximate result of Defendant WILLIS' and Defendant MIKOWSKI'S unlawful actions, Plaintiff has suffered, and will continue to suffer damages including mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment; and deprivation of rights protected by the state and federal constitutions.

543.   As a result of the foregoing, Plaintiff has been damaged and demands compensatory and punitive damages.

544.   Plaintiff alleges that Defendant, CITY OF NEW YORK; and, Defendant WILLIS and Defendant MIKOWSKI, in their individual and corporate capacity, are liable to Plaintiff for all damages set forth below.

XVI.                    **Sixteenth Cause of Action**
                **Intentional Infliction of Emotional Distress**
**Against Defendants WILLIS and MIKOWSKI in Their Individual and Corporate Capacity**

545.    Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth in the foregoing paragraphs with the same force and effect as if fully set forth herein this claim, and cause of action.

546.    Plaintiff alleges that Defendant WILLIS and Defendant MIKOWSKI intended to inflict emotional distress or that they knew or should have known that emotional distress was the likely result of their conduct; and that the conduct was extreme and outrageous; and that the Defendant's conduct was the cause of the Plaintiff's distress; and that the emotional distress sustained by the Plaintiff was severe.

547.    Defendants WILLIS and MIKOWSKI acting under color of state law, intentionally inflicted emotional distress upon Plaintiff without good cause, and with knowledge that Plaintiff had committed no crime.

548.    As a direct and proximate result of Defendants WILLIS and MIKOWSKI'S actions, Plaintiff has suffered, and will continue to suffer damages including mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment; and deprivation of rights protected by the state and federal constitutions.

549.    Plaintiff alleges that Defendant WILLIS and Defendant MIKOWSKI, in their individual and corporate capacity, are liable to Plaintiff for all damages set forth below.

550.    As a result of the foregoing, Plaintiff has been damaged and demands compensatory and punitive damages.

**XVII.**              **Seventeenth Cause of Action**
                            **Conversion**
        **Against Defendant CITY OF NEW YORK and Defendant CASTELLANO**

551.    Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth in the foregoing paragraphs with the same force and effect as if fully set forth herein this claim, and cause of action.

552.    Plaintiff alleges that Defendants WILLIS, HICKEY, MIKOWSKI; and, non-party CARMOSIN and non-party PARRIS, as agents of Defendant CITY OF NEW YORK, did seize private property from the care, custody, and/or control of Plaintiff without privilege; without articulable reasonable suspicion of a crime; without probable cause of a crime; and without arguable probable cause of a crime; and against Plaintiffs will when Defendants seized private property from the care, custody, and/or control of Plaintiff from the common heritage at a location near 309 Lafayette Avenue, Kings County New York, which constitutes an unlawful seizure.

553.    Plaintiff alleges that Plaintiff did make a demand for property; and that demand was refused by non-party Crystal Rodriguez non-party "EPCS Power," as agents of Defendant CITY OF NEW YORK; and, non-party Cassandra Allen, as agent of the KCDAO and/or under the direct supervision of— and/or at the direction of Defendant CASTELLANO.

554.    Plaintiff alleges that in committing the acts cited herein, Defendants acted under color of

state law to deprive Plaintiff of natural rights; rights protected by the constitutions; and rights affirmed under the common law, to be free from warrantless arrest; searches and seizures, absent probable cause of a crime.

555.    Plaintiff alleges that Defendants did retain private property, which was unlawfully seized from the care, custody, and/or control of Plaintiff; its fixtures; and its contents with knowledge that such a retention is not authorized by law, and is unlawful as a matter of law.

556.    Plaintiff alleges Plaintiff did have and continues to have possessory rights and/or interest in the property and Defendant's interference with the property and subsequent dominion over the property are in violation of Plaintiff's rights.

557.    Plaintiff alleges that as a direct and proximate result of Defendants deprivation of Plaintiffs rights, and compelled performance, Plaintiff did sustain the injury set forth above.

558.    Plaintiff alleges that the unlawful conduct and actions of Defendants were willful, malicious, oppressive, tortious; and / or reckless; and was carried out with knowledge of the same, that in addition to Plaintiff's assessment of fees, punitive damages should be imposed.

559.    Plaintiff alleges that Defendant CITY OF NEW YORK and Defendant CASTELLANO are liable to Plaintiff for all damages set forth below.

**XVIII.**             **Eighteenth Cause of Action**

**Intentional Infliction of Emotional Distress**

**Against Defendant CASTELLANO**

560.     Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth in the foregoing paragraphs with the same force and effect as if fully set forth herein this claim, and cause of action.

561.     Plaintiff alleges that Defendant CASTELLANO intended to inflict emotional distress or that she knew or should have known that emotional distress was the likely result of her conduct; and that the conduct was extreme and outrageous; and that the Defendant's conduct was the cause of the Plaintiff's distress; and that the emotional distress sustained by the Plaintiff was severe.

562.     Defendant CASTELLANO acting under color of state law, intentionally inflicted emotional distress upon Plaintiff without good cause, and with knowledge that Plaintiff had committed no crime.

563.     As a direct and proximate result of Defendants CASTELLANO's actions, Plaintiff has suffered, and will continue to suffer damages including mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment; and deprivation of rights protected by the state and federal constitutions.

564.     Plaintiff alleges that Defendant CASTELLANO is liable to Plaintiff for all damages set forth below.

565.    As a result of the foregoing, Plaintiff has been damaged and demands compensatory and punitive damages.

## XIX.                **Nineteenth Cause of Action**
### 42 U.S.C. § 1983 Unlawful Search
**Fourth and Fourteenth Amendment Violations Against**
**Defendant BLANDA in His Individual and Corporate Capacity**

566.    Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth in the foregoing paragraphs with the same force and effect as if fully set forth herein this claim, and cause of action.

567.    Defendant BLANDA, as agent of Defendant CITY OF NEW YORK, and under the direct supervision of non-party, Sergeant Danny Lei [Tax ID No. 936939], did initiate and authorize a search of private property under the care, custody, and/or control of Plaintiff on November 25, 2024, at or around 6:00pm, against Plaintiffs will.

568.    The search conducted by Defendant BLANDA, as agent of Defendant, CITY OF NEW YORK, and under the direct supervision of Sgt. Danny Lei, was not privileged; was without articulable reasonable suspicion of a crime; was without probable cause of a crime; was without arguable probable cause of a crime; and was not incident a lawful arrest.

569.    In committing the acts cited herein, Defendant acted under color of state law to deprive Plaintiff of natural rights; rights protected by the constitutions; and rights affirmed under the common law, to be free from warrantless arrest; searches and seizures, absent

probable cause of a crime.

570. The search constitutes an unlawful search; and Plaintiff alleges that Defendant BLANDA, agent of Defendant, CITY OF NEW YORK conducted the search with knowledge that such a search is not authorized by law, and with knowledge that such a search is unlawful.

571. As a direct and proximate result of Defendant's deprivation of Plaintiffs rights, Plaintiff did sustain the injury set forth above.

572. Plaintiff alleges that the unlawful conduct and actions of Defendant were willful, malicious, oppressive, tortious; and / or reckless; and was carried out with knowledge of the same, that in addition to Plaintiff's assessment of fees, punitive damages should be imposed.

573. Plaintiff alleges that Defendant BLANDA, in his individual and corporate capacity, is liable to Plaintiff for all damages set forth below.

## XX.           Twentieth Cause of Action
### 42 U.S.C. § 1983 Unlawful Seizure
### Fourth and Fourteenth Amendment Violations Against
### Defendant BLANDA in His Individual and Corporate Capacity

574. Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth in the foregoing paragraphs with the same force and effect as if fully set forth herein this claim, and cause of action.

575.   Plaintiff alleges that Defendant BLANDA, under the direct supervision of Sgt. Danny Lei, agents of Defendant, CITY OF NEW YORK, did seize private property under the care, custody, and/or control of Plaintiff without privilege; without articulable reasonable suspicion of a crime; without probable cause of a crime; and without arguable probable cause of a crime; against Plaintiffs will; and over Plaintiffs objections when Defendant seized Private property under the care, custody, and/or control of Plaintiff, from the common heritage, at a location near 107-31 Guy R. Brewer Boulevard, which constitutes an unlawful seizure.

576.   Plaintiff alleges that in committing the acts cited herein, Defendant acted under color of state law to deprive Plaintiff of natural rights; rights protected by the constitutions; and rights affirmed under the common law, to be free from warrantless arrest; searches and seizures, absent probable cause of a crime.

577.   Plaintiff alleges that Defendant did seize private property under the care, custody, and/or control of Plaintiff, its fixtures, and its contents with knowledge that such a seizure is not authorized by law, and is unlawful as a matter of law.

578.   Plaintiff alleges that as a direct and proximate result of Defendants deprivation of Plaintiffs rights, and compelled performance, Plaintiff did sustain the injury set forth above.

579.   Plaintiff alleges that the unlawful conduct and actions of Defendant were willful, malicious, oppressive, tortious; and / or reckless; and was carried out with knowledge of the same, that in addition to Plaintiff's assessment of fees, punitive damages should be imposed.

580.   Plaintiff alleges that Defendant BLANDA in his individual and corporate capacity, are liable to Plaintiff for all damages set forth below.

## XXI.                    Twenty-First Cause of Action
### Conversion
**Against Defendant CITY OF NEW YORK, and Defendant CLARKE in His Individual and Corporate Capacity**

581.   Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth in the foregoing paragraphs with the same force and effect as if fully set forth herein this claim, and cause of action.

582.   Plaintiff alleges that Defendant CLARKE, under the direct supervision of Sgt. Shu Li, agents of Defendant, CITY OF NEW YORK, did retain private property which had been under the care, custody, and/or control of Plaintiff without privilege; without articulable reasonable suspicion of a crime; without probable cause of a crime; and without arguable probable cause of a crime; against Plaintiffs will; and over Plaintiffs objections, when Defendant failed to return the private property after a timely and sufficient demand was made, which constitutes conversion.

583.   Plaintiff alleges that in committing the acts cited herein, Defendant acted under color of state law to deprive Plaintiff of natural rights; rights protected by the constitutions; and rights affirmed under the common law, to be free from warrantless arrest; searches and seizures, absent probable cause of a crime.

584.   Plaintiff alleges that Defendant did retain private property, which was unlawfully seized from the care, custody, and/or control of Plaintiff; its fixtures; and its contents with

knowledge that such a retention is not authorized by law, and is unlawful as a matter of law.

585.    Plaintiff alleges Plaintiff did have and continues to have possessory rights and/or interest in the property and Defendant's interference with the property and subsequent dominion over the property are in violation of Plaintiff's rights.

586.    Plaintiff alleges that as a direct and proximate result of Defendants deprivation of Plaintiffs rights, and compelled performance, Plaintiff did sustain the injury set forth . above.

587.    Plaintiff alleges that the unlawful conduct and actions of Defendants were willful, malicious, oppressive, tortious; and / or reckless; and was carried out with knowledge of the same, that in addition to Plaintiff's assessment of fees, punitive damages should be imposed.

588.    Plaintiff alleges that Defendant CITY OF NEW YORK, and Defendant CLARKE in his individual and corporate capacity, is liable to Plaintiff for all damages set forth below.

## XXII.              Twenty-Second Cause of Action
### 42 U.S.C. § 1983 Unlawful Search
### Fourth and Fourteenth Amendment Violations Against
### Defendant LAZARO in His Individual and Corporate Capacity

589.    Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth in the foregoing paragraphs with the same force and effect as if fully set forth herein this claim, and cause of action.

590.   Defendant LAZARO, as agent of Defendant CITY OF NEW YORK, and under the direct supervision of Defendant GONCHAROV, did initiate and authorize a search of private property under the care, custody, and/or control of Plaintiff on December 19, 2024, at or around 2:30pm, against Plaintiffs will.

591.   The search conducted by Defendant LAZARO, agent of Defendant, CITY OF NEW YORK, and under the direct supervision of Defendant GONCHAROV, was not privileged; was without articulable reasonable suspicion of a crime; was without probable cause of a crime; was without arguable probable cause of a crime; and was not incident a lawful arrest.

592.   In committing the acts cited herein, Defendant acted under color of state law to deprive Plaintiff of natural rights; rights protected by the constitutions; and rights affirmed under the common law, to be free from warrantless arrest; searches and seizures, absent probable cause of a crime.

593.   The search constitutes an unlawful search; and Plaintiff alleges that Defendant LAZARO, agent of Defendant, CITY OF NEW YORK conducted the search with knowledge that such a search is not authorized by law, and with knowledge that such a search is unlawful.

594.   As a direct and proximate result of Defendant's deprivation of Plaintiffs rights, Plaintiff did sustain the injury set forth above.

595.   Plaintiff alleges that the unlawful conduct and actions of Defendant were willful, malicious, oppressive, tortious; and / or reckless; and was carried out with knowledge of

the same, that in addition to Plaintiff's assessment of fees, punitive damages should be imposed.

596.    Plaintiff alleges that Defendant LAZARO, in his individual and corporate capacity, is liable to Plaintiff for all damages set forth below.

## XXIII.                    Twenty-Third Cause of Action
### 42 U.S.C. § 1983 Unlawful Seizure
**Fourth and Fourteenth Amendment Violations Against
Defendants LAZARO in His Individual and Corporate Capacity**

597.    Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth in the foregoing paragraphs with the same force and effect as if fully set forth herein this claim, and cause of action.

598.    Plaintiff alleges that Defendant LAZARO under the direct supervision of Defendant GONCHAROV, agents of Defendant, CITY OF NEW YORK, did seize private property under the care, custody, and/or control of Plaintiff without privilege; without articulable reasonable suspicion of a crime; without probable cause of a crime; and without arguable probable cause of a crime; against Plaintiffs will; and over Plaintiffs objections when Defendant seized private property under the care, custody, and/or control of Plaintiff, from the common heritage at a location near 314 Lafayette Avenue, which constitutes an unlawful seizure.

599.    Plaintiff avers that Plaintiff was not provided with sufficient notice of all items seized by Defendant LAZARO; nor was Plaintiff provided with explicit instructions for retrieval of all property by Defendants.

600. Plaintiff alleges that in committing the acts cited herein, Defendant acted under color of state law to deprive Plaintiff of natural rights; rights protected by the constitutions; and rights affirmed under the common law, to be free from warrantless arrest; searches and seizures, absent probable cause of a crime.

601. Plaintiff alleges that Defendant did seize private property under the care, custody, and/or control of Plaintiff, its fixtures, and its contents with knowledge that such a seizure is not authorized by law, and is unlawful as a matter of law.

602. Plaintiff alleges that as a direct and proximate result of Defendants deprivation of Plaintiffs rights, and compelled performance, Plaintiff did sustain the injury set forth above.

603. Plaintiff alleges that the unlawful conduct and actions of Defendants were willful, malicious, oppressive, tortious; and / or reckless; and was carried out with knowledge of the same, that in addition to Plaintiff's assessment of fees, punitive damages should be imposed.

604. Plaintiff alleges that Defendant LAZARO in his individual and corporate capacity, is liable to Plaintiff for all damages set forth below.

## XXIV.                    Twenty-Fourth Cause of Action

### Conversion

**Against Defendant CITY OF NEW YORK and Defendants LOWETH, MALVICA, GONCHAROV, and WALKER in Their Individual and Corporate Capacity**

605. Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth

in the foregoing paragraphs with the same force and effect as if fully set forth herein this claim, and cause of action.

606. Plaintiff alleges that Defendants LOWETH, MALVICA, and WALKER under the direct supervision of Defendant GONCHAROV, agents of Defendant, CITY OF NEW YORK, did retain private property seized from the care, custody, and/or control of Plaintiff without privilege; without articulable reasonable suspicion of a crime; without probable cause of a crime; and without arguable probable cause of a crime; against Plaintiffs will; and over Plaintiffs objections when Defendants refused to return the private property upon timely and sufficient demand, which constitutes conversion.

607. Plaintiff avers that Plaintiff was not provided with sufficient notice of all items seized by Defendant LAZARO; nor was Plaintiff provided with explicit instructions for retrieval of all property by Defendant MALVICA, Defendant GONCHAROV, and Defendant WALKER.

608. Plaintiff alleges that in committing the acts cited herein, Defendant acted under color of state law to deprive Plaintiff of natural rights; rights protected by the constitutions; and rights affirmed under the common law, to be free from warrantless arrest; searches and seizures, absent probable cause of a crime.

609. Plaintiff alleges that Defendants did retain private property, which was unlawfully seized from the care, custody, and/or control of Plaintiff; its fixtures; and its contents with knowledge that such a retention is not authorized by law, and is unlawful as a matter of law.

610. Plaintiff alleges Plaintiff did have and continues to have possessory rights and/or interest in the property and Defendant's interference with the property and subsequent dominion over the property are in violation of Plaintiff's rights.

611. Plaintiff alleges that as a direct and proximate result of Defendants deprivation of Plaintiffs rights, and compelled performance, Plaintiff did sustain the injury set forth above.

612. Plaintiff alleges that the unlawful conduct and actions of Defendants were willful, malicious, oppressive, tortious; and / or reckless; and was carried out with knowledge of the same, that in addition to Plaintiff's assessment of fees, punitive damages should be imposed.

613. Plaintiff alleges that Defendant CITY OF NEW YORK; and Defendant LAZARO, Defendant MALVICA, Defendant GONCHAROV, and Defendant WALKER, in their individual and corporate capacity, are liable to Plaintiff for all damages set forth below.

XXV.          **Twenty-Fifth Cause of Action**
              **42 U.S.C. § 1983 Unlawful Seizure**
          **First and Fourteenth Amendment Violations Against**
        **Defendant BLANDA in His Individual and Corporate Capacity**

614. Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth in the foregoing paragraphs with the same force and effect as if fully set forth herein this claim, and cause of action.

615. Plaintiff alleges that Defendant BLANDA, under the direct supervision of Sgt. Lei,

agents of Defendant, CITY OF NEW YORK, did seize private property under the care, custody, and/or control of Plaintiff without privilege; without articulable reasonable suspicion of a crime; without probable cause of a crime; and without arguable probable cause of a crime; against Plaintiffs will; and over Plaintiffs objections when Defendant seized private property under the care, custody, and/or control of Plaintiff from the common heritage at a location near 107-31 Guy R. Brewer Boulevard, which constitutes an unlawful seizure.

616. Plaintiff alleges that in committing the acts cited herein, Defendants acted under color of state law to deprive Plaintiff of natural rights; rights protected by the constitutions; and rights affirmed under the common law, to be free from warrantless arrest; searches and seizures, absent probable cause of a crime.

617. Plaintiff alleges that Defendants did seize private property under the care, custody, and/or control of Plaintiff, its fixtures, and its contents with knowledge that such a seizure is not authorized by law, and is unlawful as a matter of law.

618. Plaintiff alleges that as a direct and proximate result of Defendants deprivation of Plaintiffs rights, and compelled performance, Plaintiff did sustain the injury set forth above.

619. Plaintiff alleges that the unlawful conduct and actions of Defendant were willful, malicious, oppressive, tortious; and / or reckless; and was carried out with knowledge of the same, that in addition to Plaintiff's assessment of fees, punitive damages should be imposed.

620.   Plaintiff alleges that Defendant BLANDA in his individual and corporate capacity, are liable to Plaintiff for all damages set forth below.

**XXVI.**                    **Twenty-Sixth Cause of Action**
**42 U.S.C. § 1983 Unlawful Seizure**
**First and Fourteenth Amendment Violations Against**
**Defendant LAZARO in His Individual and Corporate Capacity**

621.   Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth in the foregoing paragraphs with the same force and effect as if fully set forth herein this claim, and cause of action.

622.   Plaintiff alleges that Defendant LAZARO, under the direct supervision of Defendant GONCHAROV, agents of Defendant, CITY OF NEW YORK, did seize private property under the care, custody, and/or control of Plaintiff without privilege; without articulable reasonable suspicion of a crime; without probable cause of a crime; and without arguable probable cause of a crime; and against Plaintiffs will when Defendant seized private property under the care, custody, and/or control of Plaintiff from the common heritage at a location near 314 Lafayette Avenue, which constitutes an unlawful seizure.

623.   Plaintiff avers that Plaintiff was not provided with sufficient notice of all items seized by Defendant LAZARO; nor was Plaintiff provided with explicit instructions for retrieval of all property.

624.   Plaintiff alleges that in committing the acts cited herein, Defendants acted under color of state law to deprive Plaintiff of natural rights; rights protected by the constitutions; and rights affirmed under the common law, to be free from warrantless arrest; searches and

seizures, absent probable cause of a crime.

625.    Plaintiff alleges that Defendant did seize private property under the care, custody, and/or control of Plaintiff, its fixtures, and its contents with knowledge that such a seizure is not authorized by law, and is unlawful as a matter of law.

626.    Plaintiff alleges that as a direct and proximate result of Defendants deprivation of Plaintiffs rights, and compelled performance, Plaintiff did sustain the injury set forth above.

627.    Plaintiff alleges that the unlawful conduct and actions of Defendant were willful, malicious, oppressive, tortious; and / or reckless; and was carried out with knowledge of the same, that in addition to Plaintiff's assessment of fees, punitive damages should be imposed.

628.    Plaintiff alleges that Defendant LAZARO in his individual and corporate capacity, are liable to Plaintiff for all damages set forth below.

XXVII.                    **Twenty-Seventh Cause of Action**
                    **42 U.S.C. § 1983 First Amendment Retaliation**
            **First and Fourteenth Amendment Violations Against**
**Defendants BLANDA, CLARKE,  LAZARO, LOWETH, MALVICA, WALKER, and GONCHAROV in Their Individual and Corporate Capacity**

629.    Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth in the foregoing paragraphs with the same force and effect as if fully set forth herein this claim, and cause of action.

630.    All of the aforementioned acts of Defendants BLANDA, CLARKE, LAZARO, LOWETH, MALVICA, GONCHAROV, and WALKER were carried out under the color of State law. The actions taken against Plaintiff occurred because, or in retaliation for, Plaintiff's speech.

631.    By their conduct, as described herein, and acting under color of state law to deprive Plaintiff of the right to freedom of speech under the First Amendment, Individual Defendants BLANDA, CLARKE, LAZARO, LOWETH, MALVICA, WALKER, and GONCHAROV are liable for violations of 42 U.S.C. § 1983 which prohibits the deprivations under color of state law of rights secured under the United States Constitution.

632.    Individual Defendants have violated Plaintiff's rights to press and free speech; subjecting Plaintiff to unlawful excessive force to deter the exercise of Plaintiff's rights protected by the First Amendment; and interfering with and/or terminating Plaintiff's lawful protected activity of speech deemed offensive or undesirable by Defendant CITY and/or its agents and employees. Individual Defendants BLANDA, CLARKE, LAZARO, LOWETH, MALVICA, WALKER, and GONCHAROV's actions were taken in retaliation for Plaintiff's exercise of rights protected by the First Amendment.

633.    The actions complained of herein were carried out by Defendants BLANDA, CLARKE, LAZARO, LOWETH, MALVICA, WALKER, and GONCHAROV in their capacities as law enforcement officers and agents of Defendant CITY OF NEW YORK.

634.    The acts complained of were carried out by the Individual Defendants BLANDA, CLARKE, LAZARO, LOWETH, MALVICA, WALKER, and GONCHAROV, in their

capacities as police officers and property clerks for the Defendant CITY OF NEW YORK, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York Police Department under the supervision of ranking officers of the department.

635.   Individual Defendants BLANDA, CLARKE,  LAZARO, LOWETH, MALVICA, WALKER, and GONCHAROV, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality, which is forbidden by the New York State Constitution, and the Constitution of the United States.

636.   As a direct and proximate result of Individual Defendants' unlawful actions, Plaintiff has suffered, and will continue to suffer damages including, but not limited to, physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

637.   As a result of the foregoing, Plaintiff has been damaged and demands compensatory and punitive damages.

638.   Plaintiff alleges that Defendant, CITY OF NEW YORK; and, Defendants BLANDA, CLARKE, LAZARO, LOWETH, MALVICA, WALKER, and GONCHAROV, in their individual and corporate capacity, are liable to Plaintiff for all damages set forth below.

XXVIII.                    **Twenty-Eighth Cause of Action**
                                    **Replevin**
**Against Defendant CITY OF NEW YORK, and Defendants CLARKE and WALKER in Their Individual and Corporate Capacity**

639.    Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth in the foregoing paragraphs with the same force and effect as if fully set forth herein this claim, and cause of action.

640.    Plaintiff re-avers that timely Notices of Claim were served upon all Defendants.

641.    Plaintiff alleges that Defendant CLARKE, Defendant WALKER, and Defendant CITY OF NEW YORK are wrongfully in possession of several items of private property, which was seized from the care, custody, and/or control of Plaintiff, as described on the annexed Inventory List and NYPD Property Clerk Invoices/Vouchers.[92]

642.    Plaintiff avers that the items of private property wrongfully in possession of Defendant CITY OF NEW YORK are specifically described in the annexed Inventory and NYPD Property Clerk Invoices/Vouchers.

643.    Plaintiff is the lawful owner and/or authorized representative of the lawful owner for the aforementioned property.

644.    Plaintiff alleges that Defendants wrongfully became in possession of the aforementioned items of private property on April 10, 2024; November 23, 2024; and December 19, 2024, by removing them from Plaintiffs care, custody, and/or control.

---

[92] *See* Inventory List and NYPD Property Clerk Invoices/Vouchers

645.    Plaintiff has reason to believe that absent right or privilege to be in possession of the aforementioned private property, Defendants deprivation of the private property seized from the care, custody, and/or control of Plaintiff is subject to Plaintiffs Schedule of Fees.

646.    Plaintiff avers that Plaintiff did demand that Defendants return the private property to Plaintiff on several dates, including, but not limited to January 25, 2025; February 23, 2025; and March 4, 2025.

647.    Plaintiff alleges that Defendants' continued retention of the private property is a refusal of Plaintiffs demands for a return of the aforementioned property.

648.    Plaintiff alleges that Defendants did wrongfully detain; and have wrongfully retained the private property.

649.    Plaintiff alleges that Defendants did wrongfully retain the private property; and that the retention was not for a tax, assessment, or fine.

650.    Plaintiff alleges that Plaintiff has suffered damages as a result of Defendants wrongful retention of the private property.

651.    Plaintiff alleges that Defendants did not return the private property to Plaintiff on January 31, 2025; or, at any time thereafter.

652.    Plaintiff alleges that Defendants silence to Plaintiffs demands for a return of the private property to Plaintiff is a refusal to Plaintiffs demands for a return of the aforementioned property.

653. Plaintiff alleges that Defendant CITY OF NEW YORK; and, Defendant CLARKE, Defendant WALKER, and Defendant CITY, in their individual and corporate capacity, are liable to Plaintiff for all damages set forth below.

## XXIX.                    Twenty-Ninth Cause of Action
### Breach of Implied Contract
**Against Defendants CITY OF NEW YORK and CASTELLANO, and Defendants WILLIS, MIKOWSKI, HICKEY, ARAV, BLANDA, CLARKE, LAZARO, MALVICA, WALKER, LANDER, and ADAMS in Their Individual and Corporate Capacity**

654. Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth in the foregoing paragraphs with the same force and effect as if fully set forth herein this claim, and cause of action.

655. Plaintiff alleges that a contract existed between Plaintiff and Defendant CITY OF NEW YORK; and that a bailment exists.

656. Plaintiff alleges that a valid and implied contract exists between Plaintiff and Defendant CITY OF NEW YORK; and that contract requires payment of the outstanding balances.

657. Plaintiff alleges that Defendant, LANDER; Defendant, CITY OF NEW YORK; and all remaining Individual Defendants owed Plaintiff a fiduciary duty.

658. Plaintiff alleges Defendant CITY OF NEW YORK came into possession of private property under the care, custody, and/or control of Plaintiff with the expectation of return of the property; and fair and reasonable compensation as expressly identified in the Schedule of Fees and statements of account.

659.   Plaintiff alleges that Plaintiff was compelled to perform; and was compelled to perform under threat, duress, and coercion; and was deprived of property; and all was done in accordance with Plaintiffs Affidavit of Status and Schedule of Fees.

660.   Plaintiff delivered Plaintiffs Schedule of Fees, notices, statements of account, and Payment Demands / Drafts / Negotiable Instruments / Bills of Exchange to Defendants; and Plaintiff alleges that Defendant, LANDER; Defendant, CITY OF NEW YORK; and all remaining individual Defendants did receive and accept Plaintiffs Payment Demands / Drafts / Negotiable Instruments / Bills of Exchange.

661.   Plaintiff alleges that Plaintiffs delivery of Plaintiffs notices, statements of account, and Payment Demands / Drafts / Negotiable Instruments / Bills of Exchange to Defendants; and Defendants acceptance are sufficiently clear and concrete to establish such an intent by Plaintiff and Defendant to establish a contract; and a fiduciary relationship.

662.   Plaintiff alleges faith in Defendant that Defendant would not cause injury to Plaintiff absent right or privilege; and if Defendant did injure Plaintiff, Defendant would compensate Plaintiff.  Plaintiff alleges it is reasonable to believe that Plaintiff could expect that Defendant would not evade liability for wrongdoings and misconduct of its agents following receipt; and acceptance; and acknowledgement of acceptance of Plaintiffs Schedule of Fees.

663.   Plaintiff alleges that Defendant, LANDER; Defendant, CITY OF NEW YORK; and all remaining Individual Defendants did commit misconduct by not returning, and / or protesting the statements of account.

664.    Plaintiff alleges that Defendant, LANDER; Defendant, CITY OF NEW YORK; and all remaining Individual Defendants did commit misconduct by not returning, and / or protesting the Payment Demands / Drafts / Negotiable Instruments / Bills of Exchange.

665.    Plaintiff alleges that Defendant, LANDER; Defendant, CITY OF NEW YORK; and all remaining Individual Defendants did commit misconduct by retaining the Payment Demands / Drafts / Negotiable Instruments / Bills of Exchange without payment.

666.    By reason of the foregoing, Defendants have materially and willfully breached their contractual obligations, causing Plaintiff substantial economic harm.

667.    Plaintiff did suffer damages due to the misconduct of Defendants.

668.    Plaintiff alleges that as a direct and proximate result of Defendants misconduct, Plaintiff did sustain the injuries set forth above.

669.    Plaintiff alleges that the misconduct and actions of Defendant were intentional and willful; and were carried out with knowledge of the same; and that in addition to Plaintiffs assessment of fees, punitive damages should be imposed.

670.    Plaintiff alleges that Defendants CITY OF NEW YORK and CASTELLANO; and, Defendant LANDER and all remaining Individual Defendants named in this cause of action, in their individual and corporate capacity, are liable to Plaintiff for all damages set forth below.

XXX.           **Thirtieth Cause of Action**

**Account Stated**

**Against Defendants CITY OF NEW YORK and CASTELLANO, and Defendants WILLIS, MIKOWSKI, HICKEY, ARAV, BLANDA, CLARKE, LAZARO, MALVICA, WALKER, LANDER, and ADAMS in Their Individual and Corporate Capacity**

671. Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth in the foregoing paragraphs with the same force and effect as if fully set forth herein this claim, and cause of action.

672. Plaintiff alleges an account was presented to Defendants, it was accepted as correct without protest; and Defendants implicitly promised to pay the amount stated.

673. Plaintiff avers that Plaintiff duly submitted notices, statements of account, and Payment Demands / Drafts / Negotiable Instruments / Bills of Exchange for payment to Defendant CITY OF NEW YORK and all Individual Defendants, for the outstanding balances.

674. Plaintiff avers that Defendant CITY OF NEW YORK and all Individual Defendants received the notices, statements of account, and Payment Demands / Drafts / Negotiable Instruments / Bills of Exchange; and Defendant CITY and all Individual Defendants failed to object to said notices, statements of account, and Payment Demands / Drafts / Negotiable Instruments / Bills of Exchange within a reasonable amount of time. As such, Defendant CITY and all Individual Defendants has accepted those notices, statements of account, and Payment Demands / Drafts / Negotiable Instruments / Bills of Exchange as accurate, acquiescing  to pay same.

675. Plaintiff alleges that Defendants CITY OF NEW YORK and CASTELLANO; and,

Defendant LANDER and all remaining Individual Defendants named in this cause of action, in their individual and corporate capacity, are liable to Plaintiff for all damages set forth below.

**XXXI.**          **Thirty-First Cause of Action**
**Unjust Enrichment**
**Against Defendant CITY OF NEW YORK, and Defendant ADAMS in His Individual and Corporate Capacity**

676.    Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth in the foregoing paragraphs with the same force and effect as if fully set forth herein this claim, and cause of action.

677.    Plaintiff alleges that Plaintiff did confer a benefit on Defendant, CITY OF NEW YORK and Defendant ADAMS when Defendant CITY came into possession of private property under the care, custody, and/or control of Plaintiff.

678.    Plaintiff did not consent to the conference of the benefit of the private property seized from the care, custody, and/or control of Plaintiff.

679.    Plaintiff only conferred the benefit of Plaintiffs property as Plaintiff was forced to do so; and the benefit was conferred at Plaintiffs expense.

680.    Plaintiff alleges that Defendant, CITY OF NEW YORK and Defendant ADAMS had no right to possession of the private property seized from the care, custody, and/or control of Plaintiff and, therefore, had no right to become enriched by demanding and receiving the private property.

681.    Plaintiff alleges Defendants CITY OF NEW YORK and ADAMS were enriched by the benefit of the private property seized from the care, custody, and/or control of Plaintiff; and that it is unjust for Defendant CITY OF NEW YORK to retain the benefit of Plaintiffs property without compensating Plaintiff.

682.    Plaintiff alleges the relevant circumstances are such that in equity and good conscience the Defendant CITY OF NEW YORK should return all property to the Plaintiff.

683.    Plaintiff alleges that Defendant CITY OF NEW YORK, and Defendant ADAMS, in his individual and corporate capacity, are liable to Plaintiff for all damages set forth below.

**XXXII.**                     **Thirty-Second Cause of Action**
**Respondeat Superior**
**Against Defendant CITY OF NEW YORK, and Defendants TISCH and ADAMS in Their Individual and Corporate Capacity**

684.    Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth in the foregoing paragraphs with the same force and effect as if fully set forth herein this claim, and cause of action.

685.    Plaintiff alleges that all Individual Defendants; and all agents of Defendant, CITY OF NEW YORK (upon information and belief), were acting within the scope of their employment when they injured Plaintiff; when they failed to intervene and protect Plaintiff; and when they retaliated against Plaintiff.

686.    Plaintiff alleges that Defendants WILLIS, MIKOWSKI, HICKEY, ARAV, BLANDA, CLARKE, LAZARO, LOWETH, MALVICA, WALKER, GONCHAROV, and

BLANDER'S employer is Defendant, CITY OF NEW YORK and Defendant, ERIC LEROY ADAMS; and that NYPD Defendants were under the direct supervision of Defendant, TISCH on March 7, 2025.

687. Plaintiff alleges that all named Defendants are agents of Defendant CITY OF NEW YORK.

688. Plaintiff alleges that Defendants were performing acts to further their employer's business interest; or to carry out duties incumbent upon Defendants in furthering the employer's business interest.

689. The constitutional abuses and violations by Defendant CITY OF NEW YORK, through the actions of its police department and Individual Defendants were and are directly and proximately caused by policies, practices and/or customs that developed the failure: (a) to adequately supervise and train its officers and agents, including the above-named defendants, thereby failing to adequately discourage further constitutional violations on the part of its police officers; (b) to properly and adequately monitor and discipline its officers, including the above-named defendants; and (c) to adequately and properly investigate complaints of police misconduct, and, instead, acts of misconduct were tolerated by Defendant CITY.

690. Plaintiff alleges that the unlawful conduct and actions of Individual Defendants were willful, malicious, oppressive, tortious; and / or reckless; and were carried out with knowledge of the same, that in addition to Plaintiff's assessment of fees, punitive damages should be imposed.

691. Plaintiff alleges that Defendant, CITY OF NEW YORK; and Defendant TISCH and Defendant ADAMS, in their individual and corporate capacity, are liable to Plaintiff for all damages set forth below.

692. Plaintiff invokes the doctrine of respondeat superior as to every forgoing claim and cause of action.

XXXIII.                   **Thirty-Third Cause of Action**
            **42 U.S.C. § 1983 Municipal and Supervisory Liability**
              **Against Defendant TISCH and Defendant ADAMS**

693. Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation set forth in the foregoing paragraphs with the same force and effect as if fully set forth herein this claim, and cause of action.

694. Plaintiff alleges that Defendant TISCH and Defendant ADAMS knew or should have known of the Individual Defendants' propensity for the conduct which caused violations of Plaintiffs rights.

695. This failure to act, failure to train, deliberate indifference, and these policies, practices and customs caused the officer Defendants in the present case to violate Plaintiff's rights, without fear of reprisal.

696. Plaintiff has been damaged as a result of the deliberate indifference of Defendant CITY OF NEW YORK to the constitutional rights of New Yorkers, including Plaintiff.

697. Under 42 U.S.C. § 1983, Defendant CITY OF NEW YORK is jointly and severally liable

with Individual Defendants and each of them for the general and specific damages Plaintiff sustained, as well as the costs and disbursements of the action.

698.    For example, the well documented failures of the CCRB to substantiate obviously meritorious complaints has gone uncorrected. The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating serious charges brought to them.

699.    In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; as a result, officers have no real incentive to come forward, or to testify truthfully at the CCRB.

700.    Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer.

701.    Further, Defendant CITY OF NEW YORK has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct. Without this notification, improper behaviors; misconduct; use of excessive force; and the use of non-credible testimony go uncorrected.

702.    Additionally, according to a report of the New York City Bar Association issued in 2000,

Defendant CITY OF NEW YORK has isolated their law department from the discipline of police officers, so that civil actions against police officers for actions taken in their capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions.[93]

703.    In 1999, the New York City Comptroller reported that there was a "a total disconnect" between the settlements of substantial civil claims and police department action against officers.[94]

704.    The constitutional abuses and violations by Defendant CITY OF NEW YORK, through the actions of its police department and Individual Defendants were and are directly and proximately caused by policies, practices and/or customs that developed the failure: (a) to adequately supervise and train its officers and agents, including the above-named defendants, thereby failing to adequately discourage further constitutional violations on the part of its police officers; (b) to properly and adequately monitor and discipline its officers, including the above-named defendants; and (c) to adequately and properly investigate complaints of police misconduct, and, instead, acts of misconduct were tolerated by Defendant CITY.

705.    Defendant CITY OF NEW YORK is aware that all of the aforementioned has resulted in violations of constitutional rights.

---

[93] "The Failure of Civil Damages Claims to Modify Police Practices and Recommendations for Change" — New York City Bar [ https://www.nycbar.org/reports/the-failure-of-civil-damages-claims-to-modify-police-practices-and-recommendations-for-change/ ]

[94] "Record Payout In Settlements Against Police" — New York Times [ https://www.nytimes.com/1999/10/01/nyregion/record-payout-in-settlements-against-police.html ]

706.    Despite such notice, Defendant CITY OF NEW YORK has failed to take corrective action and/or to provide proper training to its officers.

707.    Defendant CITY OF NEW YORK has acted with deliberate indifference with regard to the above actions and omissions.

708.    Defendant CITY OF NEW YORK, it's policymakers and supervisors fail to provide adequate training or supervision to their subordinates, to such an extent that it is tantamount to the CITY'S deliberate indifference towards the rights of those who may come into contact with Defendant CITY employees.

709.    Individual Defendants' unlawful actions were done willfully and with the specific intent to deprive Plaintiff of rights protected under the Second, Fourth, and Fourteenth Amendments to the U.S. Constitution.

**WHEREFORE**, Plaintiff demands judgment and prays for the following relief, jointly and severally, against all Defendants:

A.    A declaration that Individual Defendants' conduct violated Plaintiff's rights that are protected by the First, Second, Fourth, and Fourteenth Amendments of the U.S. Constitution;

B.    An injunction enjoining defendants from engaging in conduct to unlawfully disrupt, disperse, interfere with or prevent the lawful First Amendment activities explained of herein;

C.    An injunction enjoining defendants from engaging in conduct to unlawfully disrupt, disperse, interfere with or prevent the lawful Second Amendment activities explained of herein;

D.    An order granting an immediate return of all property removed from the care,

custody, and/or control of Plaintiff, which came into possession of Individual Defendants and Defendant CITY OF NEW YORK, as described on the annexed Inventory and NYPD Property Clerk Invoices/Vouchers; delivered to the address of record;

      E.     An order granting full compensation in the amount for fees owed to Plaintiff for value received;

      F.     Punitive damages in an amount to be determined by a jury;

      G.     Costs and disbursements; and,

      H.     Such other and further relief as appears just and proper.

Pursuant to 28 U.S. Code § 1746, I declare under penalty of perjury under the laws of the united states of America that the foregoing is true and correct.

Dated:  Kings County, New York
        March 26, 2025

Assata-Makeya:Rhodes, sui juris
c/o 309 Lafayette Avenue 21G
Kings County New York [11238]
929-355-6411
assata@assatamakeyarhodes.info

**Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case- related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: March 26, 2025

Signature of Plaintiff _____

Printed Name of Plaintiff _____ Assata-Makeya:Rhodes _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————X

ASSATA RHODES,

                              Plaintiff,

        -v-

EBONY SHAWNTAY WILLIS, WALTER J. MIKOWSKI,
JOSEPH HICKEY, ADRIAN J. ARAV, GABRIELLA
TERESA CASTELLANO, MICHAEL C. BLANDA,
JEFFREY CLARKE, KASEY M. LAZARO, NICHOLAS
M. LOWETH, STEPHANIE F. MALVICA, ALI WALKER,
MIKHAIL GONCHAROV, JESSICA TISCH, BRADFORD
SCOTT LANDER, ERIC LEROY ADAMS,
CITY OF NEW YORK,

                              Defendant,

———————————————————————X

**ATTACHMENTS TO
COMPLAINT**

25 - CV - _____

## <u>INDEX OF ATTACHMENTS TO PLAINTIFFS' COMPLAINT</u>

Plaintiff submits the following evidence, in support of Plaintiffs Complaint, declaring under penalty of perjury that the following is true and correct:

| Footnote Number | Attachment | Complaint Page Number | Attachment Page Number(s) |
|---|---|---|---|
| 3, 20 | Felony Complaint, signed by Defendant MIKOWSKI, dated April 10, 2024 | 10, 33 | 144-145 |
| 4 | Prisoner Pedigree Card | 13 | 146 |
| 5 | New York City Police Dept. Omniform System Complaint #2024-088-001362, dated "2024-04-10 09:40"[am] | 16 | 147-148 |
| 6 | NYPD Property Clerk Invoice 3001729293, created by PO CARMOSIN, dated 04/11/2024 | 17 | 149-150 |
| 7 | NYPD ELECTRONIC RECORDING OF CUSTODIAL INTERROGATION | 19 | 151 |
| 8 | x.com post | 20 | 152 |
| 11 | NYPD COMPLAINT REPORT WORKSHEET PD313-152A excerpt, dated April 10, 2024 at 6:35pm | 21 | 153-154 |
| 12 | "Joint Statement from Legal Aid, Brooklyn Defenders on Death in NYPD Custody at Kings County Criminal Court" | 23 | 155 |

| 13 | Judicial Subpoena Duces Tecum; and, Excerpts of Affirmation in Support of Judicial Subpoena Duces Tecum | 24 | 156-161 |
|---|---|---|---|
| 14 | EDNY 17CV423 Complaint excerpts | 27 | 162-165 |
| 15 | EDNY 12CV3238 Complaint excerpts | 27 | 166-169 |
| 16 | 50-a.org excerpt (MIKOWSKI) | 27 | 170 |
| 17 | SDNY 25-cv-00572 Complaint excerpts | 27 | 171-174 |
| 20 | Kings County Online Arrest Coversheet | 33 | 175 |
| 23 | Excerpt of Certified Transcript of April 11, 2024 Arraignment | 36 | 176-180 |
| 24 | Felony Complaint, signed by Judge TURBIDY | 37 | 181 |
| 25 | NYPD Property Clerk Invoices, created by Defendant MIKOWSKI, dated April 18, 2024 | 40 | 182-191 |
| 26 | Supreme Court Kings County Complaint excerpts; Index No. 537109/2023, Index No. 507891/2019; and, EDNY 11CV03299 Complaint excerpts | 41 | 192-201 |
| 27 | 50-a.org excerpt (WILLIS) | 41 | 202 |
| 28 | Case Conferral Sheet; Lab # 2024-014091; Invoice # 3001729293 | 41 | 203-204 |
| 29 | Handwritten NYPD OPERABILITY WORKSHEET, completed by Defendant ARAV on "5/1/24" | 42 | 205 |
| 30 | "Legal Aid Lauds Ruling That Finds That NYPD's Ballistics Method Riddled With Significant Flaws; Bronx Judge Rejects Junk Science Used By Law Enforcement To Prosecute Cases" | 43 | 206-207 |
| 32, 37 | Certified Grand Jury Transcript excerpts | 46, 49 | 208-217 |
| 34, 35 | NYPD REQUEST FOR LABORATORY EXAMINATION REPORT excerpt | 46 | 218-219 |
| 36 | United States Patent Office documents | 47 | 220-229 |
| 38 | Indictment, filed June 7, 2024 | 49 | 230-236 |
| 39 | Certified Grand Jury Transcript certification, dated June 4, 2024 | 49 | 217 |
| 40 | Certified Transcript excerpt, dated June 24, 2024 and September 6, 2024 | 50 | 237-244 |
| 41 | Certified Transcript excerpt, dated June 24, 2024 | 50 | 237-239 |
| 42 | KCDA e-mail, dated July 23, 2024 | 50 | 245 |
| 43 | Checkr Report excerpts, dated June 10, 2024; Checkr Report excerpts, revised February 19, 2025 | 50 | 246-252 |

| 44 | Uber chat screenshots; | 50 | 253 |
|---|---|---|---|
| 45 | CCRB case file excerpt | 51 | 254 |
| 46 | Coversheet of "Affidavit of Fact and Notice of Claim," dated July 9, 2024 | 51 | 255 |
| 47 | Certified Transcript excerpt, dated September 6, 2024; transcript page 19-20 | 51 | 242-243 |
| 48 | E-mails, dated October 1, 2024 - October 10, 2024 | 52 | 256-258 |
| 50, 61 | The "Critical Stage" of Plea-Bargaining and Disclosure of Exculpatory Evidence, January 2021, by Defendant Castellano | 53, 57 | 259-265 |
| 51 | Certified Transcript excerpt, dated October 11, 2024 | 54 | 266-269 |
| 52 | Decision and Order excerpt, filed October 11, 2024 | 54 | 270-271 |
| 54 | Decision and Order, dated March 4, 2025 | 54 | 272-273 |
| 55 | Certificate of Disposition, dated March 4, 2025 | 54 | 274-275 |
| 56 | NYS Unified Court System "Case Details - Appearances" | 54 | 276-277 |
| 57 | "Property Demand to NYPD - 3.4.2025" | 55 | 278-280 |
| 58, 92 | Inventory List and NYPD Property Clerk Invoices/Vouchers | 55, 125 | 333-345 |
| 59 | E-mails, dated March 4, 2025 and March 7, 2025 | 55 | 281 |
| 63 | Defendant CITY DOI Press Release #45-2024 excerpt, dated November 26, 2024 | 59 | 282 |
| 64 | 50-a.org excerpt (BLANDA) | 59 | 283-284 |
| 65 | E-mail to 103rd Precinct Property Clerk; dated November 25, 2024, 5:13pm | 59 | 285 |
| 66 | E-mail from BLANDA; dated November 26, 2024, 9:33pm | 59 | 286 |
| 67 | NYPD Property Clerk Invoice 4001170935 | 59 | 287-288 |
| 68 | Queens County District Attorney's Release | 60 | 289-290 |
| 70 | E-mail to NYPD Property Clerk; dated December 30, 2024, 8:15am | 60 | 291 |
| 71 | E-mail to IAB and CEU; dated January 13, 2025, 12:55pm | 61 | 292 |
| 72 | E-mail from LOVINA; dated January 15, 2025, 2:40pm | 61 | 292 |
| 73 | "Notice to Lovina and Blanda - 1.15.2025" | 61 | 293-295 |
| 74 | E-mails to/from LOVINA; dated January 15, 2025 | 61 | 296-297 |

| 75 | E-mail to Commanding Officer Michael E. Goodchild; dated December 20, 2024, 7:13am | 67 | 298 |
| 76 | Excerpt of "Spoliation Letter / Notice to Preserve Evidence," dated December 30, 2024 | 71 | 299-300 |
| 77 | 50-a.org excerpt (LOWETH) | 71 | 301-303 |
| 78 | Excerpt of CCRB Complaint, dated December 23, 2024 | 73 | 304-305 |
| 79 | Letter from CCRB Director of Case Management Eshwarie Mahadeo, dated December 26, 2024 | 73 | 306 |
| 80 | Excerpt of IAB Complaint, dated December 30, 2024 | 73 | 307 |
| 81 | "Follow-Up with Goncharov - 1.13.2025" excerpt | 73 | 308-309 |
| 82 | "Follow-Up with Malvica - 1.13.2025" excerpt | 74 | 310-311 |
| 83 | E-mail, dated January 25, 2025, 7:53am | 75 | 312 |
| 84 | NYPD PCI 3001850303 | 76 | 313-314 |
| 18, 85, 87 | Schedule of Fees | 30, 78, 80 | 315-319 |
| 19, 86, 90 | USPS Certified Mail and Return Receipts | 30, 78, 81 | 320-321 |
| 88 | Payment Demands / Drafts / Negotiable Instruments / Bills of Exchange | 81 | 322-328 |
| 89 | Acknowledgment letters from the office of Defendant LANDER | 81 | 329-332 |

Dated:   Kings County, New York
March 26, 2025

Assata-Makeya:Rhodes, sui juris
c/o 309 Lafayette Avenue 21G
Kings County New York [11238]
929-355-6411
assata@assatamakeyarhodes.info

CRIMINAL COURT OF THE CITY OF NEW YORK
PART APAR COUNTY OF KINGS

_____                STATE OF NEW YORK
THE PEOPLE OF THE STATE OF NEW YORK             COUNTY OF KINGS

v.

ASSATA   RHODES
_____

DETECTIVE WALTER J. MIKOWSKI SHIELD NO.5848, OF 216 COMMAND SAYS THAT ON OR
ABOUT APRIL 10, 2024 AT APPROXIMATELY 06:30 AM AT 309 LAFAYETTE AVENUE, APT.21G,
COUNTY OF KINGS, STATE OF NEW YORK,

THE DEFENDANT COMMITTED THE OFFENSE(S) OF:

PL 265.02(7)           CRIMINAL POSSESSION OF A WEAPON IN THE THIRD DEGREE
                       (DQO)
PL 265.02(8)           CRIMINAL POSSESSION OF A WEAPON IN THE THIRD DEGREE
                       (DQO)
PL 265.01-B(1)         CRIMINAL POSSESSION OF A FIREARM (DQO)
PL 265.01(1)           CRIMINAL POSSESSION OF A WEAPON IN THE FOURTH
                       DEGREE (61 COUNTS)
AC 10-131(B)(1)        SELLING OR POSSESSING OF AIR PISTOLS AND AIR RIFLES
AC 10-131(G)(1)        SALE OR POSSESSION OF TOY OR IMMITATION FIREARM (2
                       COUNTS)
PL 265.37              UNLAWFUL POSSESION OF CERTAIN AMMUNITION FEEDING
                       DEVICE (NOT IN HOME)
AC 10-131(I)(5)        POSSESSION OF RIFLE AMMUNITITON (99 COUNTS)
AC 10-131(I)(6)        POSSESSION OF AMMUNITION FEEDING DEVICE
AC 10-134(2)(D)        UNLAWFUL POSSESSION OR USE OF LASER POINTER


IN THAT THE DEFENDANT DID:

SELL, OFFER TO SELL OR HAVE IN SUCH PERSON'S POSSESSION ANY AIR PISTOL OR RIFLE
OR SIMILAR INSTRUMENT IN WHICH THE PROPELLING FORCE WAS A SPRING OR AIR; SELL OR
OFFER FOR SALE, POSSESS OR USE OR ATTEMPT TO GIVE AWAY, ANY TOY OR IMMITATION
FIREARM WHICH SUBSTANTIALLY DUPLICATES OR CAN REASONABLY BE PERCEIVED TO BE AN
ACTUAL FIREARM UNLESS (A) THE EXTERIOR  SURFACE OF SUCH TOY OR IMMITATION
FIREARM IS COLORED WHITE, BRIGHT RED, BRIGHT ORANGE, BRIGHT YELLOW, BRIGHT
GREEN, BRIGHT BLUE, BRIGHT PINK, OR BRIGHT PURPLE, EITHER SINGLY OR AS THE
PREDOMINANT COLOR IN COMBINATION WITH OTHER COLORS IN ANY PATTERN; OR (B) SUCH
TOY OR IMMITATION FIREARM IS CONSTRUCTED ENTIRELY OF TRANSPARENT OR TRANSLUCENT
MATERIALS WHICH PERMITS UNMISTAKEABLE OBSERVATION OF THE IMMITATION OR TOY
FIREARM'S COMPLETE CONTENTS; AND (C) THE BARREL OF SUCH TOY OR IMMITATION
FIREARM IS CLOSED WITH THE SAME MATERIAL OF WHICH THE TOY OR IMMITATION FIREARM
IS MADE FOR A DISTANCE OF NOT LESS THAN ONE-HALF INCH FROM THE FRONT END OF SAID
BARREL, AND (D) SUCH TOY OR IMMITATION FIREARM HAS LEGIBLY STAMPED THEREON, THE
NAME OF THE MANUFACTURER OR SOME TRADE NAME, MARK OR BRAND BY WHICH THE
MANUFACTURER CAN BE READILY IDENTIFIED; AND SUCH TOY OR IMMITATION FIREARM DOES
NOT HAVE ATTACHED THERETO A LASER POINTER;; NOT BEING AUTHORIZED TO POSSESS A
RIFLE WITHIN THE CITY OF NEW YORK, DID POSSESS AMMUNITION SUITABLE FOR USE IN A
RIFLE;; POSSESS ANY AMMUNITION FEEDING DEVICE DESIGNED FOR USE IN A FIREARM;;
BEING A PERSON TWENTY YEARS OF AGE OR YOUNGER, POSSESS A LASER POINTER ON SCHOOL
PREMISES; OR, BEING A PERSON EIGHTEEN YEARS OF AGE OR YOUNGER, POSSESS A LASER
POINTER IN A PUBLIC PLACE; OR DIRECT LIGHT EMITTED FROM A LASER POINTER INTO OR
THROUGH A PUBLIC PLACE; POSSESS ANY FIREARM, ELECTRONIC DART GUN, ELECTRONIC
STUN GUN, SWITCHBLADE KNIFE, PILUM BALLISTIC KNIFE, METAL KNUCKLE KNIFE, CANE
SWORD, BILLY, BLACKJACK, BLUDGEON, PLASTIC KNUCKLES, METAL KNUCKLES, CHUKA
STICK, SAND BAG, SANDCLUB, WRIST-BRACE TYPE SLINGSHOT OR SLINGSHOT, SHIRKEN OR
KUNG FU STAR; POSSESS ANY FIREARM;; DEFENDANT DID POSSESS AN ASSAULT WEAPON;;
POSSESS A LARGE CAPACITY AMMUNITION FEEDING DEVICE; KNOWINGLY POSSESS AN
AMMUNITION FEEDING DEVICE THAT SUCH PERSON LAWFULLY POSSESSED BEFORE THE
EFFECTIVE DATE OF THE CHAPTER OF THE LAWS OF TWO THOUSAND THIRTEEN WHICH ADDED
THIS SECTION, THAT HAS A CAPACITY OF, OR THAT CAN BE READILY RESTORED OR
CONVERTED TO ACCEPT MORE THAN SEVEN  ROUNDS OF AMMUNITION, WHERE SUCH DEVICE
CONTAINS MORE THAN SEVEN ROUNDS OF AMMUNITION AND SUCH DEVICE IS POSSESSED IN
ANY LOCATION OTHER THAN THE HOME OF THE DEFENDANT;.

THE SOURCE OF DEPONENT'S INFORMATION AND THE GROUNDS FOR DEPONENT'S BELIEF ARE AS FOLLOWS:

DEPONENT STATES THAT, AT THE ABOVE TIME AND PLACE, DEFENDANT'S RESIDENCE, DEPONENT OBSERVED NUMEROUS ITEMS WERE RECOVERED INSIDE THE ABOVE MENTIONED LOCATION PURSUANT TO UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF NEW YORK, SEARCH WARRANT NO.24-MJ-288, ISSUED BY JUDGE MERKL, INCLUDING: ONE AR SMITH & WESSON MODEL M&P 15-22 .22 CALIBER ASSAULT RIFLE, ONE MOSSBERG 510 401 CALIBER SHOTGUN, AND ONE ROSSI RIFLE CO.RB22 .22 CALIBER RIFLE.

DEPONENT FURTHER STATES THAT, AT THE ABOVE TIME AND PLACE, DEPONENT OBSERVED RECOVERED APPROXIMATELY 17 KUNG FU STARS, APPROXIMATELY 42 DAGGERS, BUTTERFLY KNIVES, THROWING DARTS, THROWING KNIVES, FOLDING KNIVES, FORK KNIFE, AND ONE SLING SHOT.

DEPONENT FURTHER STATES THAT, AT THE ABOVE TIME AND PLACE, DEPONENT OBSERVED RECOVERED APPROXIMATELY 2552 ROUNDS OF 9MM AND .22 CALIBER ROUNDS OF AMMUNITION FOR RIFLE AND SHOTGUN,
APPROXIMATELY 253 41 CALIBER ROUNDS OF AMMUNITION FOR RIFLE AND SHOTGUN, APPROXIMATELY EIGHT .410 CARTRIDGES, ONE 10 ROUND PLASTIC MAGAZINE, APPROXIMATELY FOUR .22 CALIBER LING RANGE MAGAZINES, APPROXIMATELY FIVE MAGAZINES, AND ONE BLACK LASER POINTER.

DEPONENT FURTHER STATES THAT, AT THE ABOVE TIME AND PLACE, DEPONENT OBSERVED RECOVERED ONE TOY GUN THAT HAD THE SHAPE AND APPEARANCE OF A REAL PISTOL, AND ONE WALTHER USA AIR/CO2 POWERED AIR PISTOL, THAT HAD THE SHAPE AND APPEARANCE OF A REAL PISTOL.

DEPONENT IS INFORMED BY THE OFFICIAL RECORDS OF THE NEW YORK CITY POLICE DEPARTMENT, WHICH ARE KEPT AND MAINTAINED IN THE ORDINARY COURSE OF BUSINESS, THAT THE DEFENDANT DOES NOT HAVE A PISTOL LICENSE NOR IS THE DEFENDANT A LICENSED RIFLE OR SHOTGUN DEALER.

FALSE STATEMENTS MADE IN THIS DOCUMENT ARE PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT TO SECTION 210.45 OF THE PENAL LAW.

DATE          SIGNATURE

Thanks for reaching out, Assata. My name is Shubham from Uber Support, I'll be assisting you today.

Sorry to hear about this. Thanks for letting us know about the issue you're having. I'm happy to help.

Fri, Jun 21, 9:47 AM

You don't need to worry about it as we are here for you and I will surely check your account details to help you with your concern.

Fri, Jun 21, 9:48 AM

I can understand that it is really upsetting when such a

This email also contains instructions on how to dispute the results so be sure to check your spam and junk mail folders.

Please note that Checkr does not determine the standards used to evaluate eligibility to drive with Uber and is not involved in this decision.

Uber makes a decision based on the report (or amended report) that Checkr provides.

If you haven't received a copy of your background check report, you can request one by signing into the Checkr Candidate Portal [https://candidate.checkr.com/#login]

information being disputed.

Fri, Jun 21, 9:52 AM

Is there anything else I can further assist you with?

Fri, Jun 21, 9:55 AM

Hey, are you still there? I'm happy to assist you further to make sure all of your issues are addressed, just let me know.

Fri, Jun 21, 9:56 AM

Assata, I waited for your response. Since I haven't heard back from you in a while, I'm respectfully closing the chat so that I can assist another customer. Feel free to

Fri, Jun 21, 9:48 AM

I can understand that it is really upsetting when such a thing happens. If I were in your position, I think I'd feel just as you do.

Fri, Jun 21, 9:50 AM

We've received the results of your background check report from Checkr and have determined that you are not eligible to access the app based on the criminal portion of your report.

Checkr should have sent you an email regarding this decision with a copy of your background check report.

This email also contains

If you haven't received a copy of your background check report, you can request one by signing into the Checkr Candidate Portal [https://candidate.checkr.com/#login].

If you have any questions or concerns about the contents of your background check report, please follow up with Checkr. We will monitor your report for up to 15 business days for an update by Checkr if a dispute is filed.

Please know the dispute investigation process generally may take 30 days, depending on the nature, scope, and source of the information being disputed.

Fri, Jun 21, 9:56 AM

Assata, I waited for your response. Since I haven't heard back from you in a while, I'm respectfully closing the chat so that I can assist another customer. Feel free to contact us again for any issues you can visit for help at https://help.uber.com/.

I don't want to leave the chat until all your concerns are sorted out for you. However, you've been idle for quite some time now. In the meantime, I am going to leave this chat so that I can assist another driver. Don't worry, you can still chat with us back once you're available. For more details and to check the

*CCRB*
*July 29, 2024*

## Investigative Actions

| CCRB Case #: 202311008 | Investigator: Griffin Sherbert | Complainant: Assata-Makeya Rhodes |
|---|---|---|

| IA #<br>69<br>BR 17 | Date<br>04/12/2024 | Time<br>11:05 AM | Action<br>**Link media digital file -** Griffin Sherbert<br>OCA Results for Ms. Rhodes: |
|---|---|---|---|



--See attached

Digital Record Type: Court Documents and OCA Histories
The digital file linked to this record is: 202311008_20240412_1105_DMI.PDF

| 70 | 04/12/2024 | 11:08 AM | **Link media digital file -** Griffin Sherbert<br>Arrest Report #K24620473 (088 PCT) of Ms. Rhodes from 04/10/2024. |
|---|---|---|---|

--Narrative: "ON APRIL 10, 2024 AT 0630 HOURS UNITED STATES SOUTHERN DISTRICT EXECUTED SEARCH WARRANT #24-MJ-288 . THE DEFENDANT WAS IN POSSESSION OF AN AR SMITH & WESSON RIFLE SERIAL #JAS7577, MOSSBERG 510 SERIAL #V1094354, ROSSI RB22 SERIAL #7CB053021R, KUNG FU STARS, THROWING KNIVES, .22 LONG RIFLE AMMUNITION, 9MM AMMUNITION AND FIREARM ACCESSORIES."

--See attached

Digital Record Type: Police Documents (with Receipts)
The digital file linked to this record is: 202311008_20240412_1108_DMI.PDF

| 71<br>BR 5 | 04/12/2024 | 11:48 AM | **Link media digital file -** Griffin Sherbert<br>Richmond Towing Inc. Invoice, provided by Ms. Rhodes. |
|---|---|---|---|

--See attached

Digital Record Type: C/V/W provided Docs and Photos
The digital file linked to this record is: 202311008_20240412_1148_DMI.PDF

# Assata-Makeya:Rhodes

c/o 309 Lafayette Avenue 21G · Kings County New York [non-domestic] · contact@assatamakeyarhodes.info

Tuesday, July 9, 2024

Bradford Scott Lander, Comptroller
Office of the Comptroller
One Centre Street, Room 1225
New York, New York 10007
BLander@comptroller.nyc.gov

## AFFIDAVIT OF FACT and NOTICE OF CLAIM

### PLEASE TAKE NOTICE OF THIS SWORN AFFIDAVIT:

**Failure to rebut this duly sworn affidavit point for point** shall constitute acquiescence to each averment; acquiescence to any claim; and shall be an estoppel to any defense made in any action, with regards to the matters discussed herein, whereby ASSATA RHODES seeks fees; damages; and/or equitable relief from any respondent or superior named herein.

### NOTICE TO ONE IS NOTICE TO ALL
### APPLICATION IS TO ALL SUCCESSORS AND ASSIGNS
### ALL ARE WITHOUT EXCUSE

### PARTIES AND RELEVANT NON-PARTIES

1. Comes now the man with the attribute, Assata-Makeya:Rhodes, hereinafter your affiant, sui juris; a private sentient being; a creditor; by special appearance; non-domicile, non-resident, non-citizen American original; being competent to testify and being over 21 years of age, after first being duly sworn according to law to tell the truth to the facts related herein states that your affiant has firsthand knowledge of the facts stated herein and believe these facts to be true to the best of your affiants knowledge.

2. Your affiant avers that the CITY OF NEW YORK, hereinafter Respondent, is a corporate entity with its principal business within, the corporate entity, The State of New York.

3. Your affiant avers that Eric Leroy Adams in his private and corporate capacities, hereinafter Respondent, is the Chief Executive Officer of the Respondent corporation, CITY OF NEW YORK.

**From:** assata@assatamakeyarhodes.info
**Subject:** Re: Serving the People's Response to Defendant's Motion to Dismiss - Rhodes, Assata IND-73294-24
**Date:** October 10, 2024 at 6:11 PM
**To:** CASTELLANO, GABRIELLA CASTELLANG@BrooklynDA.org
**Cc:** Christopher Hoyt CHoyt@cwhesq.com, orlandoa@brooklynda.org, gonzalee@brooklynda.org, azizam@brooklynda.org, REBECCA VELEZ velezr@brooklynda.org
**Bcc:** assata@assatamakeyarhodes.info

Ms. Castellano,

Your well wishes seem disingenuous as you are *continuing* to withhold the seizure warrant in your possession, despite the several e-mails I have sent [which you have failed to acknowledge]. The defense has yet to be notified of any order of the Court relieving the People of the statutorily mandated obligation to provide automatic discovery. Again, you have been directed by Judge Kitsis to forward all discovery in the People's possession to the defense digitally and by mail - I haven't received the seizure warrant by either method. **When can the defense expect for you to produce the seizure warrant you referenced in your latest motion?**

The defense is prepared to conduct the inspection on Thursday, November 7, 2024. **Please respond promptly with the <u>time and location</u> for photographing, inspection, and testing of the tangible items.**

I expect a prompt response considering the time-sensitive nature of these matter.

Assata-Makeya:Rhodes
assata@assatamakeyarhodes.info
AssataMakeyaRhodes.info
✕✕✕✕✕

On Oct 10, 2024, at 5:39 PM, CASTELLANO, GABRIELLA <CASTELLANG@BrooklynDA.org> wrote:

Ms. Rhodes,

I hope you're doing well. The assigned detective is available for inspection of the tangible property on the following dates: **10/28, 10/30, 11/1, 11/6, 11/7**.

Please let me know if you're available. Thank you.

**GABRIELLA CASTELLANO**
ASSISTANT DISTRICT ATTORNEY
KINGS COUNTY DISTRICT ATTORNEY'S OFFICE
TRIAL BUREAU I – RED ZONE
P: (718) 250-2957
F: (718) 350-1246
E: CASTELLANG@BROOKLYNDA.ORG



**From:** Assata AMR <assata@assatamakeyarhodes.info>
**Sent:** Friday, October 4, 2024 9:46 AM
**To:** CASTELLANO, GABRIELLA <CASTELLANG@BrooklynDA.org>
**Cc:** ORLANDO, ANDREA <ORLANDOA@BrooklynDA.org>; GONZALEZ, ERIC <GONZALEE@BrooklynDA.org>; AZIZA, MONIQUE <AZIZAM@BrooklynDA.org>; VELEZ, REBECCA <VELEZR@BrooklynDA.org>; CAMPOMANES, CAROLINE <CAMPOMAC@BrooklynDA.org>; PIERCE, GAREY <PIERCEG@BrooklynDA.org>; ARMETTA, CHRISTOPHER <ARMETTAC@BrooklynDA.org>; KANG, ERIC <KANGE@BrooklynDA.org>; PUCKHABER, KERRY J <PUCKHABK@BrooklynDA.org>; Christopher Hoyt <CHoyt@cwhesq.com>; Alexis Flyer <aflyer@nycourts.gov>

**Subject:** Re: Serving the People's Response to Defendant's Motion to Dismiss - Rhodes, Assata IND-73294-24

Ms. Castellano, I am following up *again* as I have not received any response from you, whatsoever.

Again, the defense is *still* awaiting [at a minimum] the **court ordered bill of particulars**, the **"seizure warrant" referenced in your latest motion**, and a **schedule for inspection, photographing, and testing** of the tangible items. Your prolonged withholding of discoverable items which are [obviously] in your possession has prevented the defense from making arguments and motions.

**Please advise** — a response is expected from you [or anyone at the KCDA office] soon.

Assata-Makeya:Rhodes
assata@assatamakeyarhodes.info
AssataMakeyaRhodes.info


> On Oct 2, 2024, at 12:58 PM, assata@assatamakeyarhodes.info wrote:
>
> Greetings,
>
> **Please see Defense Sur Reply attached**. The attachment will be filed via EDDS.
>
> Additionally, Ms. Castellano, you have not responded to any of my requests regarding (1) inspection, photographing, and testing of the tangible items; or (2) the court ordered bill of particulars. It appears from your response to Defense's Motion to Dismiss that you have not reviewed any of the transcript exhibits (or e-mail attachments) regarding in-court appearances.
>
> The Bill of Particulars was ordered by the Court on August 24, 2024 - a response (answer or denial) from you was due within 15 days of that order; and no response was received. **I brought this issue to the attention of the KCDA and the Court attorney on September 12, 2024, 21 days ago**; and no response has been received from you. Additionally, it seems you are withholding the "seizure warrant" referenced in your Motion to Compel; and, you have yet to produce (electronically or by mail, as directed by the Court) the chain of custody for the "Smith and Wesson" from arrest date to April 18th [the creation date of the NYPD Property Clerk Invoice].
>
> You requested to know Defense's availability for inspection, photographing, and testing on July 12, 2024. Despite the inspection being a statutorily mandated part of initial discovery, you have failed to set a schedule or even respond to Defenses' e-mails.
>
> For your convenience, you can review Defenses e-mails to you regarding the aforementioned issues delivered on the following dates: **July 26, 2024, 8:03am; August 12, 2024, 8:00am; August 14, 2024, 3:30pm; September 9, 2024, 12:48pm; September 12, 2024, 1:00pm**
>
> **Ms. Castellano, please advise**.
>
> Assata-Makeya:Rhodes

assata@assatamakeyarhodes.info
AssataMakeyaRhodes.info
▨▨▨▨▨▨▨

On Oct 1, 2024, at 7:14 PM, CASTELLANO, GABRIELLA <CASTELLANG@BrooklynDA.org> wrote:

Good Evening,

I am serving the attached response to your motion to dismiss for People v. Assata Rhodes, Indictment No. 73294-24.

Thank you.

**Gabriella Castellano**
Assistant District Attorney
Kings County District Attorney's Office
Trial Bureau I – Red Zone
P: (718) 250-2957
F: (718) 350-1246
E: CastellanG@BrooklynDA.org



This email communication and any files transmitted with it contain privileged and confidential information from the Kings County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

This email communication and any files transmitted with it contain privileged and confidential information from the Kings County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.



VOLUME 65 | 2020/21

GABRIELLA CASTELLANO

# The "Critical Stage" of Plea-Bargaining and Disclosure of Exculpatory Evidence

65 N.Y.L. Sch. L. Rev. [•] (2020–2021)

ABOUT THE AUTHOR: Gabriella Castellano was a Staff Editor of the 2019–2020 *New York Law School Law Review.* She received her J.D. from New York Law School in 2020.

105

THE "CRITICAL STAGE" AND EXCULPATORY EVIDENCE

## I. INTRODUCTION

A "critical stage" of criminal prosecution denotes any formal or informal step of the process, in or out of court, involving crucial confrontations between the accused and the prosecution, when the absence of the accused's counsel might affect their right to a fair trial.[1] These confrontations force the accused to make decisions that can ultimately dictate their fate, and thus presence of counsel is of paramount importance, even during the pretrial period.[2] Perhaps the most significant part of that period is the plea-bargaining stage, when a defendant decides to plead guilty or not guilty, shaping their fate before even stepping into the courtroom.[3]

The U.S. Supreme Court crafted the "critical stage" formulation in 1967, recognizing that—in our modern criminal justice system—the time most critical for a criminal defendant is the pretrial period, because it triggers the attachment of constitutional rights.[4] Even before that, in 1963, the Court's ruling in *Brady v. Maryland* established a defendant's due process right to exculpatory evidence.[5] Although the Court has not affirmatively extended that right to the pretrial stage, pursuant to the principles underlying *Brady* and in an era when criminal justice is equivalent to plea justice, a criminal defendant's constitutional right to receive exculpatory evidence must also extend to the pretrial period.

This Note addresses the circuit split on pretrial application of the *Brady* rule stemming from varying interpretations of the 2002 case of *United States v. Ruiz*, the Supreme Court's most recent decision on the issue.[6] First, this Note reviews the evolution of due process and the Court's *Brady* rule in Part II.A. Part II.B focuses on

---

1.  *See* United States v. Wade, 388 U.S. 218, 224, 226 (1967) (noting that the Sixth Amendment right to counsel is construed to apply to "critical stages" of criminal proceedings and that "the accused . . . need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial").

2.  *See* Bell v. Cone, 535 U.S. 685, 695–96 (2002) (citations omitted) ("A trial would be presumptively unfair . . . where the accused is denied the presence of counsel at 'a critical stage,' . . . that [holds] significant consequences for the accused."); *see also Wade*, 388 U.S. at 224–25 (stating that a criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings).

3.  *See Wade*, 388 U.S. at 224 ("[T]oday's law enforcement machinery involves critical confrontations of the accused by the prosecution at pretrial proceedings where the results might well settle the accused's fate and reduce the trial itself to a mere formality."); *see also* Missouri v. Frye, 566 U.S. 134, 141 (2012) (citations omitted) (acknowledging that the Supreme Court has "made clear that 'the negotiation of a plea bargain is a critical phase of litigation'").

4.  *See* Lafler v. Cooper, 566 U.S. 156, 165 (2012) ("The Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding. . . . The constitutional guarantee applies to pretrial critical stages that are part of the whole course of a criminal proceeding, a proceeding in which defendants cannot be presumed to make critical decisions without counsel's advice."); *see also Wade*, 388 U.S. at 224–25.

5.  *See* 373 U.S. 83, 87 (1963) (establishing a criminal defendant's due process right to obtain favorable, "material" evidence and thereby creating a prosecutorial obligation to disclose such evidence to a criminal defendant). Exculpatory evidence is "[e]vidence tending to establish a criminal defendant's innocence." *Evidence*, BLACK'S LAW DICTIONARY (11th ed. 2019).

6.  536 U.S. 622 (2002).

the current role and requirements of plea-bargaining in the United States. The Court's decision in *Ruiz* and the current circuit split regarding *Ruiz*'s application to exculpatory evidence are discussed in Part III. Part IV considers the impact of *Ruiz* on the modern criminal justice system and argues that due process requires disclosure of material exculpatory evidence before a defendant waives the right to trial and enters a plea. Part V proposes a solution in two parts, derived from a critical analysis of *Ruiz*, *Brady*, and Sixth Amendment jurisprudence. Part V.A suggests that *Ruiz* is limited to the pre-indictment disclosure of impeachment information. Next, Part V.B proposes an analytical framework, rooted in the Sixth Amendment right to counsel, that courts should adopt in extending the *Brady* rule to the "critical stage" of plea-bargaining. Part VI concludes this Note.

## II.  HISTORY AND BACKGROUND

### A.  *The Brady Rule*

#### 1.  *Pre-Brady: Due Process & The Role of a Prosecutor*

In the Declaration of Independence, the Founders enshrined their belief that life, liberty, and the pursuit of happiness were among the inalienable rights given to all men.[7] Life, liberty, and property are further protected by the Due Process Clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution.[8]

In the 1930s, the Supreme Court began to recognize the indispensable role of due process in the criminal justice system.[9] In *Berger v. United States*, the Court in 1935 established the fundamental principle that the role of a criminal prosecutor "is not that it shall win a case, but that justice shall be done."[10] As a servant of the law, a prosecutor must assure "that guilt shall not escape or innocence suffer."[11] Following *Berger*, the Court decided two cases protecting criminal defendants against unfair prosecutorial practices under the Due Process Clause of the Fourteenth Amendment.[12]

---

7.   *See* The Declaration of Independence para. 2 (U.S. 1776) ("We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain inalienable Rights, that among these are Life, Liberty and the pursuit of Happiness.").

8.   *See* U.S. Const. amend. V ("No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ."); U.S. Const. amend. XIV, § 1 ("No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . .").

9.   *See* Powell v. Alabama, 287 U.S. 45, 71 (1932) ("[I]t is the duty of the court . . . to assign counsel for [a criminal defendant] as a necessary requisite of due process of law . . . ."). The Court's test for determining the existence of a criminal defendant's unenumerated due process right is whether the right is among the "fundamental principles of liberty and justice which lie at the base of all our civil and political institutions." *Id.* at 67. (citations omitted).

10.  295 U.S. 78, 88 (1935).

11.  *Id.* The Court defined the purpose of criminal prosecution as a "legitimate means" to obtain a just and accurate outcome. *See id.* ("It is . . . [the prosecution's] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.").

12.  Napue v. Illinois, 360 U.S. 264 (1959); Mooney v. Holohan, 294 U.S. 103 (1935).

necessary to ensure that a criminal defendant was not deprived of life, liberty, or property, without due process of law.[21]

### 3. Post-Brady Developments

In later decisions, the Court expanded and defined the scope of the *Brady* doctrine. In the 1972 case *Giglio v. United States*, the Court extended *Brady* to include relevant impeachment information.[22] There, the Court stated that the prosecution must disclose all evidence that could be used to impeach a witness at trial when a defendant's guilt or innocence may rest on the reliability of that testimony.[23] Failure to disclose such evidence, said the Court, is a violation of due process.[24]

Next, in *United States v. Agurs*, the Court held in 1976 that prosecutors must disclose *Brady* evidence even in the absence of a specific request by the defendant.[25] The Court emphasized that its *Brady* decision was a product of the Court's "overriding concern with the justice of the finding of guilt."[26] *Brady* and *Agurs* thus marked a shift in the Court's concern from deterring prosecutorial misconduct to protecting the defendant from harm.[27] As a result, when the prosecution possesses evidence "clearly supportive of a claim of innocence," disclosure is necessary to prevent a miscarriage of justice and uphold fundamental notions of "elementary fairness."[28]

---

21. *See Brady*, 373 U.S. at 87–88 ("Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly.").

22. 405 U.S. 150, 154 (1972) (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)) ("When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general [*Brady*] rule."). Impeachment evidence is "[e]vidence used to undermine a witness's credibility." *Evidence*, BLACK's LAW DICTIONARY (11th ed. 2019). Impeachment evidence often includes "impeachment information" which "has been generally defined as impeaching information which is material to the defense," and may include "specific instances of conduct of a witness for the purpose of attacking the witness' credibility or character for truthfulness;" "evidence in the form of opinion or reputation as to a witness' character for truthfulness;" "prior inconsistent statements;" and "information that may be used to suggest that a witness is biased." *Policy Regarding the Disclosure to Prosecutors of Potential Impeachment Information Concerning Law Enforcement Agency Witnesses ("Giglio Policy")*, DEP'T OF JUST. ARCHIVES: OFF. OF THE ATT'Y GEN. (Dec. 9, 1996), https://www.justice.gov/archives/ag/policy-regarding-disclosure-prosecutors-potential-impeachment-information-concerning-law#:~:text=Each%20investigative%20agency%20employee%20is,its%20employees%20fulfill%20this%20obligation (last updated Mar. 8, 2017).

23. *Giglio*, 405 U.S. at 154 (quoting *Napue*, 360 U.S. at 269).

24. *Id.* at 154–55.

25. *See* 427 U.S. 97, 107–13 (1976). Recognizing that the prosecution does not have a constitutional duty "to deliver [their] entire file to defense counsel," the Court explained that prosecutors must disclose evidence that is "of such substantial value to the defense that elementary fairness requires it to be disclosed even without a specific request," to ensure that "justice shall be done." *Id.* at 110–11.

26. *Id.* at 112.

27. *See id.* at 104 n.10 ("Although in Mooney the Court had been primarily concerned with the willful misbehavior of the prosecutor, in Brady the Court focused on the harm to the defendant resulting from nondisclosure.").

28. *Id.* at 107, 110.

a defendant" because it is the defendant's only opportunity to decide whether to waive fundamental constitutional rights otherwise inherent in a criminal trial.[79] This decision is primarily based on the perceived strength of the government's case and the defendant's awareness of favorable evidence that tends to prove their innocence.[80] Thus, the early disclosure of exculpatory evidence helps a defendant to make an informed decision regarding their plea.[81] A holding to the contrary curtails the defendant's ability to do so.[82]

Finally, by extending *Ruiz* to exculpatory evidence, circuit courts have prioritized the government's administrative efficiency over its profound obligation to seek justice and truth. While it is modern practice for the federal government to offer criminal defendants lenient plea bargains to avoid spending time, money, and resources on a trial,[83] the courts have long recognized that plea offers may induce innocent people to plead guilty to avoid the risk of receiving a harsher penalty at trial.[84] With no clear rule requiring the pre-plea disclosure of exculpatory evidence, prosecutors are incentivized to withhold material exculpatory evidence in an effort to secure a guilty plea. It is implausible to suggest that this was the Court's intended result in *Ruiz*.[85] Further, the concealment of such evidence undermines the transparency of our

---

79. *Frye*, 566 U.S. at 144.

80. *See Sanchez*, 50 F.3d at 1453 (quoting *Miller*, 848 F.2d at 1320) ("[A] defendant's decision whether or not to plead guilty is often heavily influenced by his appraisal of the prosecution's case").

81. *See* United States v. Persico, 164 F.3d 796, 804–05 (2d Cir. 1999) ("The Government's obligation to disclose *Brady* material is pertinent to the accused's decision to plead guilty; the defendant is entitled to make that decision with full awareness of favorable (exculpatory and impeachment) evidence known to the Government."); *see also Miller*, 848 F.2d at 1320, 1322 ("[E]ven where counsel would likely adhere to his recommendation of a plea of guilty or not guilty by reason of insanity, if there is a reasonable probability that but for the withholding of the information the accused would not have entered the recommended plea but would have insisted on going to a full trial, the withheld information is material within the meaning of the *Brady v. Maryland* line of cases.").

82. *See* Patton v. United States, 281 U.S. 276, 307–08 (1930) (noting that defendants have the ability to waive their constitutional rights, but that doing so should be based upon sound knowledge and advice).

83. *See* Off. of U.S. Att'ys, *Justice 101: Plea Bargaining*, U.S. Dep't. of Just., https://www.justice.gov/usao/justice-101/pleabargaining (last visited Jan. 29, 2021) ("When the Government has a strong case, the Government may offer the defendant a plea deal to avoid trial and perhaps reduce his exposure to a more lengthy sentence."); *see also* Lafler v. Cooper, 566 U.S. 156, 169 (2012).

84. *See* Von Moltke v. Gillies, 332 U.S. 708, 719 n.5 (1948) (plurality opinion) (citation omitted) ("'[T]here may be circumstances which may induce an innocent man to accuse himself.'"); *see also* United States v. Fine, 975 F.2d 596, 604 (9th Cir. 1992) (en banc) ("A plea to some charges in exchange for dismissal of others may sometimes produce little benefit, but . . . [o]verly lenient plea bargains may induce innocent defendants to plead guilty[.]"); *see also* United States v. Int'l Paper Co., 457 F. Supp. 571, 576 (S.D. Tex. 1978) ("[P]lea bargaining . . . creates the possibility that an innocent person may plead guilty out of fear of conviction and a harsher sentence.").

85. *See* United States v. Ruiz, 536 U.S. 622, 628–29 (2002) (recognizing that because pleading guilty waives several constitutional rights, the defendant must only enter a guilty plea voluntarily and must waive such constitutional rights "knowingly, intelligently, and with sufficient awareness of the relevant circumstances and likely consequences"); *see also* McCann v. Mangialardi, 337 F.3d 782, 788 (7th Cir. 2003).

THE "CRITICAL STAGE" AND EXCULPATORY EVIDENCE

criminal justice system and obstructs governmental accountability.[86] The disclosure of exculpatory evidence generally depends on the good faith and integrity of the prosecutor.[87] Therefore, it is imperative for the Court to incentivize proper prosecutorial behavior by requiring all prosecutors to comply with early disclosure obligations.[88]

## V. THE SOLUTION: MANDATING THE DISCLOSURE OF EXCULPATORY EVIDENCE AT PLEA-BARGAINING

The absence of a holding directly addressing a prosecutor's obligation to disclose exculpatory evidence during plea-bargaining deprives some defendants of crucial constitutional protections. The solution to this problem should be consistent with fairness principles underlying *Brady* and should acknowledge the modern realities of the American criminal justice system. This Note proposes a two-part solution. First, Part V.A suggests that the holding in *Ruiz* is limited to the pre-indictment disclosure of only impeachment information. Second, Part V.B proposes an analytical framework, rooted in the Sixth Amendment right to counsel, that courts should adopt in extending *Brady* rights and obligations to the pretrial process.

### A. The Proposed Ruiz Rule

Circuit courts are split on whether *Ruiz* applies to only impeachment information, only exculpatory evidence, or both.[89] A critical reading of the Court's opinion resolves this ambiguity—*Ruiz* was clearly intended to be limited to impeachment information in the context of pre-indictment pleas.

---

86. Justin Murray, *Prejudice-Based Rights in Criminal Procedure*, 168 U. PENN. L. REV. 277, 314 (2020); *see also* Massiah v. United States, 377 U.S. 201, 207 (1964) (White, J., dissenting) ("In my view, a civilized society must maintain its capacity to discover transgressions of the law and to identify those who flout it.").

87. *See* Editorial, *Beyond the Brady Rule*, *supra* note 70 ("It is impossible to know how often prosecutors violate Brady since this type of misconduct, by definition, involves concealment.").

88. The American Bar Association (ABA) has promulgated professional rules of conduct and ethics for attorneys, which evidence a clear trend towards transparent discovery, even at the plea-bargaining stage. *See* MODEL RULES OF PRO. CONDUCT r. 3.8 (AM. BAR ASS'N 1983). The ABA Standards for Criminal Justice also provide that requiring early disclosure obligations from prosecutors would "promote a fair and expeditious disposition of charges . . . [and] provide . . . defendants with sufficient information to make . . . informed plea[s]." STANDARDS FOR CRIMINAL JUSTICE DISCOVERY AND TRIAL BY JURY, Standard 11-1.1 (AM. BAR ASS'N 1996).

89. *Compare* Friedman v. Rehal, 618 F.3d 142, 154 (2d Cir. 2010) (holding that there is no constitutional right to *Brady* material prior to the entry of a guilty plea), *and* United States v. Conroy, 567 F.3d 174, 179 (5th Cir. 2009) (holding that the government is not obligated to hand over exculpatory information before the defendant pleads guilty), *with* McCann, 337 F.3d at 787 (holding that the government is required to disclose material exculpatory information prior to a guilty plea if the information is proof "of a criminal defendant's factual innocence"), *and* Sanchez v. United States, 50 F.3d 1448, 1453 (9th Cir. 1995) (holding that withholding exculpatory evidence automatically renders a guilty plea unknowing and involuntary).

decision of whether or not to plead guilty, according to the Court, constitutes one of these "critical decisions."[148] In recognizing that pleas account for nearly 97 percent of federal criminal convictions, the Court determined that "the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant."[149] Finally, the Court noted that the benchmark for determining ineffective assistance is whether "counsel's conduct so undermined the proper functioning of the adversarial process" as to produce an unjust result.[150]

The Court's logic in *Lafler* and *Frye* is equally applicable to *Brady*'s exculpatory evidence. Just as a defendant cannot make the critical decision of whether to plead guilty without the competent advice of counsel, a defendant is equally deprived of this ability in the absence of exculpatory evidence.[151] Therefore, a prosecutor's *Brady* obligations should be held to the same standard, which is to ensure a proper functioning of the adversarial process and produce a just outcome. Neither of these goals can be accomplished without the disclosure of exculpatory evidence before a defendant makes the critical decision of whether to plead guilty. In accordance with its Sixth Amendment jurisprudence, the Court must extend the right to receive exculpatory evidence to the "critical point" of plea-bargaining.

## VI. CONCLUSION

In a plea-dominated criminal justice system characterized by unequal bargaining power and vast prosecutorial discretion, justice cannot be measured by mere access to the courthouse doors.[152] In a country where 97 percent of criminal convictions result in a plea, the preceding plea-bargaining is the critical stage in which a defendant's liberty depends on the ability to prove his or her innocence. If *Brady* means anything, it means that there is no justification for withholding evidence before the door to the presumption of innocence is permanently closed. Modern jurisprudence compels the conclusion that the government must disclose exculpatory evidence at the plea-bargaining stage. Any rule to the contrary would be a blatant disregard of legal precedent, constitutional rights, and the values of the modern criminal justice system.

---

148. *See Lafler*, 566 U.S. at 165 ("The [Sixth Amendment] constitutional guarantee [to effective assistance of counsel] applies to pretrial critical stages that are part of the whole course of a criminal proceeding . . . ."); *see also Frye*, 566 U.S. at 140 ("Critical stages [of criminal proceedings] include arraignments, postindictment interrogations, postindictment lineups, and the entry of a guilty plea.") (internal citations omitted).

149. *Frye*, 566 U.S. at 143–44.

150. *Lafler*, 566 U.S. at 169 (internal quotations omitted) (quoting Strickland v. Washington, 466 U.S. 668, 686 (1984)).

151. *See* Petegorsky, *supra* note 124; *see also* Alvarez v. City of Brownsville, 904 F.3d 382, 410 (5th Cir. 2018) (Costa, J., dissenting).

152. The due process right to *Brady* disclosure is a product of the Court's "overriding concern with the justice of the finding of guilt." United States v. Agurs, 427 U.S. 97, 112 (1976) (footnote omitted). This concern is equally apparent in the pretrial context, since the negotiation of plea agreements is "no more foolproof than full trials to the court or to the jury." Brady v. United States, 373 U.S. 742, 757–58 (1970).

```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF KINGS:  CRIMINAL TERM:  PART GP27
 2   -------------------------------------------X
     THE PEOPLE OF THE STATE OF NEW YORK,
 3

 4                                  Indictment No.
 5         - against -             IND-73249-24

 6
     ASSATA RHODES,
 7
                          Defendant.
 8   -------------------------------------------X
                         320 Jay Street
 9                       Brooklyn, New York 11201
                         October 11, 2024
10

11   B E F O R E:

12          THE HONORABLE MICHAEL D. KITSIS,
                     J U S T I C E
13

14
     A P P E A R A N C E S:
15

16
     For the People:
17
            OFFICE OF THE DISTRICT ATTORNEY
18          District Attorney, Kings County
            BY:  AUDREY CHAO, ESQ.,
19          Assistant District Attorney

20
     For the Defendant:
21
            ASSAT RHODES, PRO SE DEFEDANT
22

23   ALSO PRESENT:  Christopher Hoyt, Esq., as Legal Advisor

24

25                       LISA MATZEL
                    Senior Court Reporter
                          LM
```

PROCEEDINGS                                                  5

1    every right to apply for future proceeding and that,

2    depending on what's going on, that my decision might

3    be different in this future.  Just for this

4    proceeding, his application is denied.

5            All right.  The next thing is that there were

6    several motions pending.  The first motion to come in

7    was a motion to compel by the People.  Ms. Rhodes

8    opposed that motion and I note that I've granted the

9    motion to compel.  I've looked at the submissions by

10   the parties, I looked at the law as it applies, and I

11   determined the People have met the standard for

12   taking a swab of DNA.  So that I've granted the

13   motion.

14           In addition, I've granted a protective order.

15           Ms. Rhodes, I agree with you that whatever

16   the results of the DNA are, they should be used only

17   as it applies to the evidence in this case.  That's

18   the only cause the People had put forth that would --

19   that applies to anything here and that it can be used

20   only for the evidence in the case and cannot be

21   uploaded to databases far and wide or anywhere, quite

22   frankly.  So the protective order is also granted.

23           The second motion that was pending was a

24   motion by Ms. Rhodes that came in shortly after the

25   People's motion, and that was for me to reconsider a

LM

PROCEEDINGS                                        6

1    ruling I had made on the Grand Jury minutes, and that
2    was Section 265.02 subdivision 7, the first count of
3    the indictment be designated as an armed felony.
4            Ms. Rhodes made the case that it should not
5    be so designated.  I agree with Ms. Rhodes.  I think
6    you are correct.  So the People are not directed to
7    designate it as an armed felony.  I think the
8    important thing of the -- the important part of the
9    statute is that it gives notice to a defendant when
10   she is charged with an armed felony.
11           Ms. Rhodes clearly has educated herself and
12   understands what the designation of an armed felony
13   would mean and that -- so that were notice necessary,
14   she has certainly made herself fluent in that
15   language, but she is correct, it should not be so
16   designated.
17           The other thing that Ms. Rhodes had asked for
18   her in motion was for suppression of evidence and I'm
19   holding that motion in abeyance because I think it is
20   premature at this point.
21           Ms. Rhodes, what all that means is this, that
22   when the time comes, if you wish to supplement what
23   you've already submitted, you can do that or you can
24   stand on what you've submitted.  It's a submitted
25   motion.  But if you wish to do more, you can do more.

LM

PROCEEDINGS                                    8

1       missing is the search warrant?

2                  MS. CHAO:  Underlying search warrant

3       materials, yes, Your Honor.

4                  THE COURT:  This is where we are, that

5       there's really not a lot for us to do until the

6       People get all of the discovery to Ms. Rhodes that

7       she's entitled to.  So that's the issues that I've

8       spotted for today.

9            Do the People have anything else you wish to

10      address?

11                 MS. CHAO:  No, your Honor.  Thank you.

12                 THE COURT:  Ms. Rhodes, do you have

13      anything you wish to address?

14                 MS. RHODES:  I do.  I have filed with the

15      Court and -- I'm sorry, can I -- that one seems so

16      much thicker than this one.

17            For the Court and for the District Attorney,

18      I would like to enter into the record the USPS

19      certified mailing receipts from District Attorney

20      Eric Gonzalez along with the affidavit of truth and

21      status with reservation of rights and schedule of

22      fees of the accused.

23            The defense has been informed that a

24      trademark exists for the DNA of the accused and

25      should be noted by the Court.

                          LM

SUPREME COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS: GP27
--------------------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK

-against-

ASSATA RHODES,

Ind. No. 73294-24
Decision and Order

Defendant.

--------------------------------------------------------------------------X

MICHAEL D. KITSIS, J.

The defendant, who stands charged with one count each of Criminal Possession of a Weapon in the Third Degree (P.L. § 265.02(7)) and Criminal Possession of a Firearm (P.L. § 265.01-B(1)), as well as 17 counts of Criminal Possession of a Weapon in the Fourth Degree (P.L. § 265.01(1)), two counts of Sale or Possession of Imitation Pistols (A.C. § 10-131(G)(1)), and three counts of Unlawful Possession of Pistol Ammunition (A.C. § 10-131(I)(3)), has moved for leave to reargue her motion to inspect the grand jury minutes and, upon inspection, dismiss the indictment. See C.P.L. § 210.30; C.P.L.R. § 2221(d). The defendant's motion to reargue is granted and, upon reargument, the Court adheres to its initial determination.

The defendant argues that the rifle which is the subject of the first two counts, charging the defendant with possession of an assault weapon in violation of P.L. § 265.02(7) and P.L. § 265.01-B(1), respectively, is not an assault weapon, as that term is defined by P.L. § 265.00(22), because it is not a semiautomatic rifle. The grand jury presentation included, as Exhibit 1, a laboratory report prepared by the NYPD Firearms Analysis Section stating that the subject rifle is a semi-automatic Smith & Wesson rifle and that the rifle was operable. The defendant assumes that the officer who tested the rifle was required to also conduct a test to determine whether it is a "repeating rifle" (see P.L. § 265.00(21)), and assumes further that the ballistics officer did not

1

in unnecessary and possibly protracted delay . . . ." Id. To the extent that a motion to compel must be based on legally obtained evidence, (see People v. Harris, 62 N.Y.2d 706 (1984)), search warrants enjoy a presumption of validity (see People v. Castillo, 80 N.Y.2d 578 (1992)).[3] The defendant has not rebutted that presumption, and so the defendant's application to hold the motion in abeyance is denied.

The People's motion to compel the defendant to submit to a buccal swab is granted.

Abe A. requires that, before a bodily intrusion can be ordered, the People must establish probable cause to believe the defendant committed the crime, and that the intrusion will supply substantial probative evidence of that crime. See also People v. Halle, 57 Misc. 3d 335, 344-48 (Sup. Ct. Kings Co. 2017). Since the People have put forth no allegations meeting the requirements set forth in Abe A. outside of this case, a protective order is granted.

The foregoing constitutes the Decision and Order of the Court.

Dated: August 14, 2024
        Brooklyn, NY

ENTER:

_____
Hon. Michael D. Kitsis, A.J.S.C.

---

[3] This finding is not binding on any other court determining a motion to suppress, in support of which the parties will have the opportunity and the obligation to present further evidence and develop a more complete factual record.

4

SUPREME COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS: GP27

-----------------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK

-against-                                                Ind. No. 73294-24
                                                         Decision and Order

ASSATA RHODES,

                                Defendant.

-----------------------------------------------------------------------X

MICHAEL D. KITSIS, J.

The defendant, who stands charged with one count each of Criminal Possession of a

Weapon in the Third Degree (P.L. § 265.02(7)) and Criminal Possession of a Firearm (P.L. §

265.01-B(1)), as well as 17 counts of Criminal Possession of a Weapon in the Fourth Degree (P.L.

§ 265.01(1)), two counts of Sale or Possession of Imitation Pistols (A.C. § 10-131(G)(1)), and

three counts of Unlawful Possession of Pistol Ammunition (A.C. § 10-131(I)(3)), has moved to

dismiss the indictment for a violation of C.P.L. § 30.30(1)(a). The People have opposed.

After careful review of the defendant's motion, the People's response, the defendant's

reply, the procedural history of the case, and all relevant legal authority, the Court makes the

following rulings.

April 11, 2024 – June 10, 2024

On April 11, 2024, this case commenced with the filing of the felony complaint in criminal

court. See C.P.L. § 1.20 (17); see also C.P.L. § 100.05; People v. Lomax, 50 N.Y.2d 351 (1980).

Therefore, the People had 183 days in which to announce their readiness for trial. See C.P.L. §

30.30(1)(a). "[O]nce the defendant has shown the existence of a delay greater than six months, the

burden of proving that certain periods within that time should be excluded falls upon the People."

1

2025 for the People's certificate of compliance. Since the People were not ready for trial and did not establish an exclusion under C.P.L. § 30.30(4), this period is chargeable against the People.

**77 chargeable days.**

January 31, 2025 – March 4, 2025

On January 31, 2025, the People had not filed a certificate of compliance, nor announced their readiness for trial. A motion schedule was set for the instant motion and the case was adjourned to March 4, 2025 for decision. This adjournment is excluded pursuant to C.P.L. § 30.30(4)(a).

**0 chargeable days.**

Conclusion

To date, the People have not declared their readiness for trial on the record. Based on the foregoing, the Court finds 186 days chargeable against the People. Consequently, the People have exceeded their allowable time under C.P.L. § 30.30(1)(a) of 183 days, and the defendant's motion to dismiss is granted.

The foregoing constitutes the Decision and Order of the Court.

Dated: March 4, 2025
Brooklyn, NY

Hon. Michael D. Kitsis, A.J.S.C.

7

Certificate #: U-000012125-N

Page 1 of 2



## KINGS SUPREME CRIMINAL COURT

320 Jay Street, Brooklyn, NY 11201

**NO FEE**
Non-Public
Version

Court ORI: NY023015J

| The People of the State of New York | Certificate of Disposition | |
|---|---|---|
| vs. | Docket Number: | **IND-73294-24/001** |
| **Assata Rhodes** | | |
| | CJTN: | 70668931K |
| | NYSID: | 00297882R |

Defendant DOB: ⬛⬛⬛

Arrest Date: **04/10/2024**          Arraignment Date: **06/24/2024**

THIS IS TO CERTIFY that the undersigned has examined the files of the **Kings Supreme Criminal Court** concerning the above entitled matter and finds the following:

| Count # | Charge | Charge Weight | Disposition | Disposition Date |
|---|---|---|---|---|
| 1 | PL 265.02 07 DF Crim Poss Weap 3rd-Asslt Rifle | DF | Dismissed (Motion to Dismiss Granted, Do Not Seal) | 03/04/2025 |
| 2 | PL 265.01-B 01 EF Criminal Possession Firearm | EF | Dismissed (Motion to Dismiss Granted, Do Not Seal) | 03/04/2025 |
| 3-19 | PL 265.01 01 AM Crim Poss Weap-4th:Firearm/Wep | AM | Dismissed (Motion to Dismiss Granted, Do Not Seal) | 03/04/2025 |
| 20-21 | AC 10-131 (g) UM PISTOL TOY/IMITATOR, UNLAWFUL SALE, USE, ETC. | UM | Dismissed (Motion to Dismiss Granted, Do Not Seal) | 03/04/2025 |
| 22-24 | AC 10-131 (I)(3) UM Possession of Pistol Ammunition | UM | Dismissed (Motion to Dismiss Granted, Do Not Seal) | 03/04/2025 |

Charge Weight Key: I=Infraction; V=Violation; AM, BM=Class Misdemeanor; UM=Unclassified Misdemeanor; AF, BF, CF, DF, EF=Class Felony

Dated:  **March 4, 2025**

Nancy J. Sunshine

Chief Clerk/Clerk of the Court

CAUTION: THIS DOCUMENT IS NOT OFFICIAL UNLESS EMBOSSED WITH THE COURT SEAL

All marijuana convictions under PL 221.05, PL 221.10, PL 221.15, PL 221.20, PL 221.35 or PL 221.40 —including any appearing on this certificate of disposition— are vacated, dismissed, sealed, and expunged. It is an unlawful discriminatory practice for any entity to make any inquiry about such an expunged conviction or to use such an expunged conviction adversely against an individual in any form of application or otherwise—unless specifically required or permitted to do so by statute. It shall be an unlawful discriminatory practice, unless specifically required or permitted by statute, for any person, agency, bureau, corporation or association, including the state and any political subdivision thereof, to make any inquiry about, whether in any form of application or otherwise, or to act upon adversely to the individual involved, any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, or by an order adjourning the criminal action in contemplation of dismissal, pursuant to section 170.55, 170.56, 210.46, 210.47, or 215.10 of the criminal procedure law, or by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law or by a conviction which is sealed pursuant to section 160.59 or 160.58 of the criminal procedure law, in connection with the licensing, housing, employment, including volunteer positions, or providing of credit or insurance to such individual; provided, further, that no person shall be required to divulge information pertaining to any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, or by an order adjourning the criminal action in contemplation of dismissal, pursuant to section 170.55 or 170.56, 210.46, 210.47 or 215.10 of the criminal procedure law, or by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law, or by a conviction which is sealed pursuant to section 160.58 or 160.59 of the criminal procedure law. An individual required or requested to provide information in violation of this subdivision may respond as if the arrest, criminal accusation, or disposition of such arrest or criminal accusation did not occur. The provisions of this subdivision shall not apply to the licensing activities of governmental bodies in relation to the regulation of guns, firearms and other deadly weapons or in relation to an application for employment as a police officer or peace officer at those terms are defined in subdivisions thirty-three and thirty-four of section 1.20 of the criminal procedure law; provided further that the provisions of this subdivision shall not apply to an application for employment or membership in any law enforcement agency with respect to any arrest or criminal accusation which was followed by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law, or by a conviction which is sealed pursuant to section 160.58 or 160.59 of the criminal procedure law. For purposes of this subdivision, an action which has been adjourned in contemplation of dismissal, pursuant to section

170.55 or 170.56, 210.46, 210.47 or 215.10 of the criminal procedure law, shall not be considered a pending action, unless the order to adjourn in contemplation of dismissal is revoked and the case is restored to the calendar for further prosecution. [Executive Law 296(16)]
Charges may not be the same as the original arrest charges.

# New York State Unified Court System

## WebCriminal

## Case Details - Summary

### CASE INFORMATION

Court: **Kings Criminal Court**
Case #: **CR-014794-24KN**
Defendant: **Rhodes, Assata**

---

**Defendant**

Name: **Rhodes, Assata**
Birth Year: ⊠⊠

---

**Incident and Arrest**

**Incident**
Date: **April 10, 2024**
CJTN: **70668931K**

**Arrest**
Date: **April 10, 2024**
Arrest #: **K24620473**

**Officer**
Agency: **NYCPD PCT 088**
Command: **SI DIV**

---

**Attorney Information**

**Defense Attorney**
Name: **Myren, Adam Craig**
Type: **Public Defender**
Address: **180 LIVINGSTON ST STE 300 BROOKLYN, New York 11201**
Phone: **(929) 489-5838**

**Assistant District Attorney**
Name: **Kings County District Attorney**

---

**Next Appearance**

Date: **April 16, 2024**
Time: **09:00 AM**
Court: **Kings Criminal Court**
**320 Jay Street**
Judge: **Judge, TBD**
Part: **AP1F**

---

# New York State Unified Court System

## WebCriminal

## Case Details - Appearances

**CASE INFORMATION**

| | |
|---|---|
| Court: | **Kings Supreme Criminal Court** |
| Case #: | **IND-73294-24/001** |
| Defendant: | **Rhodes, Assata** |

| Date/ Time | Judge/ Part | Calendar Section | Arraignment/ Hearing Type | Court Reporter | Outcome/ Release Status |
|---|---|---|---|---|---|
| 06/24/2024 09:30 AM | Moses, Herbert J. GWP1 | Arraignment | 1st Appearance | Failla, Catherine | Adjourned, Arraigned, Pled Not Guilty, Bail: Requested By Prosecutor : Bail Status (Bail Posted), Bail: Set 50000.00 cash 100000.00 insured bond 100000.00 partially secured surety bond : Bail Status (Bail Posted), Bail: Bail Transferred from Local Court : Bail Status (Bail Posted) |
| 07/24/2024 09:00 AM | Kitsis, Michael D. GP27 | GJM - Decision Pending | Adjournment | Giboni, Giulia | Adjourned |
| 09/06/2024 09:00 AM | Kitsis, Michael D. GP27 | Certificate of Compliance - People to File, GJM - Decision Pending | Adjournment | Abbate, Adria | Adjourned |
| 10/11/2024 09:00 AM | Kitsis, Michael D. GP27 | Certificate of Compliance - People to File | Adjournment | Matzel, Lisa | Adjourned |
| 10/11/2024 09:30 AM | Kitsis, Michael D. GP27 | Motion | Adjournment | Matzel, Lisa | Motion Disposed - Granted |
| 10/11/2024 09:30 AM | Kitsis, Michael D. GP27 | Motion | Adjournment | Matzel, Lisa | Motion Disposed - Denied |
| 10/11/2024 09:30 AM | Kitsis, Michael D. GP27 | Motion | Adjournment | Matzel, Lisa | Motion Disposed - Denied |
| 11/15/2024 09:00 AM | Kitsis, Michael D. GP27 | Certificate of Compliance - People to File | Adjournment | MacCormack, Nathan | Adjourned |
| 01/31/2025 09:00 AM | Kitsis, Michael D. GP27 | Certificate of Compliance - People to File | Adjournment | Fialla, Catherine | Adjourned |
| 03/04/2025 09:00 AM | Kitsis, Michael D. GP27 | Motion | Adjournment | Kaplan, Miriam | Adjourned, Dismissed - Criminal, Bail: Exonerated : Bail Status (Bail Posted) |
| 03/04/2025 09:00 AM | Kitsis, Michael D. GP27 | Motion | Adjournment | Kaplan, Miriam | Motion Disposed - Granted |
| 04/04/2025 09:00 AM | Kitsis, Michael D. GP27 | Sealing | Adjournment | | |

# Assata-Makeya:Rhodes

c/o 309 Lafayette Avenue 21G · Kings County New York [non-domestic] · assata@assatamakeyarhodes.info · 

NYPD Property Clerk
11 Front Street
Brooklyn, New York 11201
Fax: 718-624-6218

Irene Gorham, Evidence and Property Clerk Specialist
47-15 Pearson Place
Long Island City, New York 11101
irene.gorham@nypd.org

City of New York Police Department, Civil Enforcement Unit
375 Pearl Street, Box 39
New York, New York 10038
CivilEnforcement@nypd.org

Michael Gerber, Deputy Commissioner
City of New York Police Department, Legal Matters
One Police Plaza Path
New York, New York 10038
Michael.Gerber@nypd.org

City of New York Police Department
Tania Kinsella, First Deputy Commissioner
1 Police Plaza
New York, New York 10007
Tania.Kinsella@nypd.org

**RE: PEOPLE OF THE STATE OF NEW YORK v. RHODES, ASSATA; IND-73294-24**

To Whom It May Concern:

The above referenced matter was terminated favorably to the defendant on March 4, 2025.[1]

---

[1] *See* Decision and Order excerpt, dated March 4, 2025 - Page A - B

Property Demand to NYPD - 3.4.2025          Page 1 of 3

Pursuant to Title 38 of the Rules of the City of New York [RCNY] § 12-35(c) (Disposition of Property by the Police Property Clerk Where There Has Been an Arrest):[2]

> "A demand for the return of property shall be **timely if made within 120 days after the termination of criminal proceedings, whether or not the demand is accompanied by a district attorney's release or a statement upholding a denial of the release**. A demand may be made **in person or by mail by the claimant** or by a representative authorized in writing to claim the property on behalf of the claimant." [**emphasis added**]

Pursuant to the aforementioned rule, at or around 11:40am, the undersigned did arrive at the NYPD Property Clerk at 11 Front Street, Brooklyn, New York, and did submit a type-written demand for property with relevant inventory lists and NYPD Property Clerk Invoices attached. The demand was refused by NYPD Evidence and Property Clerk Specialist, Crystal Rodriguez; and a male-appearing agent, identified only as "EPCS Power." "EPCS Power" did provide the undersigned with a blank copy of the attached "PROPERTY CLERK DIVISION ACKNOWLEDGEMENT OF DEMAND / INQUIRY," and did refuse to accept a completed version from the undersigned. The type-written demand was left at the desk of EPCS Rodriguez.

This is the third incident (in a matter of six (6) months) of the undersigned demanding a release from NYPD; and being denied access (not only to the property but to the process to retrieve the property) in violation of established rules, policies, and procedures.[3] As a measure of good-faith, the undersigned *resubmits* the demand for property [attached]; and the undersigned expects to receive timely acknowledgment of the demand[4] along with specific instructions for property return.

In light of the immense inventory in the possession of NYPD, the undersigned does also demand that the NYPD return the property to where it was originally removed from.

The undersigned has already made a written demand for property release to the Kings County District Attorney's Office, which was responsible for prosecuting the frivolous and malicious criminal matter. In the event that this issue regarding property is not carefully and expeditiously settled, civil litigation at the federal district level will *surely* commence.

---

[2] *See* 38 RCNY § 12-35 - Page C

[3] *See* New York City Police Department Property Clerk Division Procedure Number 604-1 - Page D - E

[4] RCNY § 12-35(g): "The police property clerk **must** provide each claimant with a **written "acknowledgement of demand or inquiry,"** indicating the date the demand or inquiry was made and a description of the property demanded." [**emphasis added**]

Any questions, concerns, or comments, may be directed to the undersigned using the contact information below the signature line. The undersigned thanks all involved, in advance, for their due diligence and careful attention to this highly time-sensitive matter.

Respectfully submitted,

Assata-Makeya:Rhodes, *Pro Se*
c/o 309 Lafayette Avenue 21G
Kings County New York [11238]

assata@assatamakeyarhodes.info

**Attachments:**
Completed "PROPERTY CLERK DIVISION ACKNOWLEDGEMENT OF DEMAND / INQUIRY"
Inventory List
NYPD Property Clerk Invoices

**cc:**
City of New York
New York Police Department Internal Affairs Bureau
315 Hudson Street, 3rd Floor
New York, New York 10013
IAB@NYPD.org; IABCMDCNTR@nypd.org

The Civilian Complaint Review Board
100 Church Street, 10th Floor
New York, New York 10007
administrator-1@ccrb.nyc.gov; intake@ccrb.nyc.gov

City of New York Department of Investigation
180 Maiden Lane
New York, New York 10038
Corruption@DOI.nyc.gov

Muriel Goode-Trufant, Corporation Counsel
City of New York
100 Church Street
New York, New York 10007
mgoodetr@law.nyc.gov; serviceecf@law.nyc.gov

**From: ALLEN, CASSANDRA** ALLENCAS@BrooklynDA.org
**Subject:** RE: Demand for Release; IND-73294-24
**Date:** March 7, 2025 at 5:27 PM
**To:** assata@assatamakeyarhodes.info
**Cc:** CASTELLANO, GABRIELLA CASTELLANG@BrooklynDA.org, # Property Release PROPREL@BrooklynDA.org



We received instructions on 3-6-25 not to issue a release.

**From:** assata@assatamakeyarhodes.info <assata@assatamakeyarhodes.info>
**Sent:** Friday, March 7, 2025 4:46 PM
**To:** # Property Release <PROPREL@BrooklynDA.org>; CASTELLANO, GABRIELLA <CASTELLANG@BrooklynDA.org>
**Cc:** GONZALEZ, ERIC <GONZALEE@BrooklynDA.org>; ORLANDO, ANDREA <ORLANDOA@BrooklynDA.org>; VELEZ, REBECCA <VELEZR@BrooklynDA.org>; KANG, ERIC <KANGE@BrooklynDA.org>; AZIZA, MONIQUE <AZIZAM@BrooklynDA.org>; CAMPOMANES, CAROLINE <CAMPOMAC@BrooklynDA.org>; PIERCE, GAREY <PIERCEG@BrooklynDA.org>
**Subject:** Re: Demand for Release; IND-73294-24
**Importance:** High

Greetings - no substantive response or acknowledgment has been received. **Please advise**.

For your convenience, please see the Certificate of Disposition, dated March 4, 2025; and, the completed KCDA Property Release Form, which was already hand-delivered to the Property Release Unit (at 120 Schermerhorn Street) on March 5, 2025.

Assata-Makeya:Rhodes
assata@assatamakeyarhodes.info
AssataMakeyaRhodes.info


**From:** Assata AMR <assata@assatamakeyarhodes.info>
**Subject: Demand for Release; IND-73294-24**
**Date:** March 4, 2025 at 1:53:31 PM EST
**To:** proprel@brooklynda.org, castellang@brooklynda.org
**Cc:** gonzalee@brooklynda.org, orlandoa@brooklynda.org, REBECCA VELEZ <velezr@brooklynda.org>, kange@brooklynda.org, azizam@brooklynda.org, campomac@brooklynda.org, pierceg@brooklynda.org

To Whom It May Concern:

Pursuant to the outcome of Ms. Castellano's frivolous, malicious, time-consuming case, please see the attached Demand for Release.

**Please advise** *immediately*.

Thank you.

Assata-Makeya:Rhodes
assata@assatamakeyarhodes.info
AssataMakeyaRhodes.info


This email communication and any files transmitted with it contain privileged and confidential information from the Kings County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.



The City of New York
Department of Investigation

JOCELYN E. STRAUBER
COMMISSIONER

180 MAIDEN LANE
NEW YORK, NY 10038
212-825-5900

**Release #45-2024**
**nyc.gov/doi**

**FOR IMMEDIATE RELEASE**
**TUESDAY, NOVEMBER 26, 2024**

**CONTACT: DIANE STRUZZI**
**(212) 825-5931**

**DOI'S OFFICE OF THE INSPECTOR GENERAL FOR THE NYPD ISSUES REPORT FINDING INSUFFICIENT PUBLIC INFORMATION ABOUT NYPD'S COMMUNITY RESPONSE TEAM AND AN ABSENCE OF WRITTEN POLICIES AND PROCEDURES TO GUIDE ITS ACTIONS**

The Department of Investigation's ("DOI") Office of the Inspector General for the New York City Police Department ("OIG-NYPD") released a Report today concerning the New York City Police Department's ("NYPD" or "the Department") Community Response Team ("CRT"). In July 2022, NYPD created the Patrol Services Bureau Community Response Team, initially a single citywide specialized unit to respond to a rise in quality-of-life ("QoL") complaints from elected officials and community members. Since its creation, CRT has expanded significantly: 165 members of service currently are assigned to CRT and, in addition to the citywide team, a CRT team now exists in every Patrol Borough. OIG-NYPD reviewed this specialized unit due to community concerns about CRT and an absence of publicly available information about it. The review found that the unit lacked a mission statement, as well as written policies and procedures in key areas including selection and training of unit members. OIG-NYPD's review is continuing, and in its next phase will focus on issues including the disciplinary history of CRT officers and available data reflecting the impact of CRT's work. This Report provides transparency around the foundational aspects of CRT and makes seven recommendations. A copy of OIG-NYPD's report is attached to this release and can be found at the following link: https://www.nyc.gov/site/doi/oignypd/web/report.page.

DOI Commissioner Jocelyn E. Strauber said, "NYPD's Community Response Team ("CRT") has been operating for over two years, and publicly available information about CRT and its enforcement activities is quite limited. This Report provides some transparency around CRT's formation, staffing and structure; exposes significant gaps in CRT policies and procedures; and raises important questions about how its effectiveness is measured. DOI's OIG-NYPD will continue to evaluate CRT's enforcement activities and the impact of its work in the next phase of our investigation."

OIG-NYPD Inspector General Jeanene L. Barrett said, "The lack of transparency regarding NYPD's Community Response Team ("CRT") risks non-compliance with the law, ethical breaches, and negative policing outcomes. Since its inception more than two years ago, CRT has expanded significantly, with a team in every Patrol Borough, without a corresponding expansion of publicly available information about the work of this unit. The recommendations in this Report encourage the creation of public policies and procedures that will enhance knowledge of and confidence in CRT's mission, as well as facilitate future oversight."

OIG-NYPD reviewed all NYPD policies and procedures and other materials pertaining to CRT, as well as available materials related to other active NYPD specialized units. The Office met with senior NYPD officials and active members of CRT to discuss the unit's policies and procedures, daily operations, organizational structure, and enforcement tactics. OIG-NYPD also engaged in discussions with several New York City-based advocacy organizations and community and violence interrupter groups to gain a broader understanding of the community perspective on NYPD specialized units overall, and CRT specifically.

more

**Search by Officer Name or Badge Number**

enter name or badge #                                          Search

# Michael C. Blanda



Badge #9054, White Male
Police Officer at Patrol Borough Queens South Community Response Team since October 2023
Also served at 106th Precinct
Service started October 2015, made $231,000 last year, Tax #959495

## Complaints

5 Complaints
12 Allegations
0 Substantiated

2 Complainant Uncooperative
1 Exonerated
4 SRAD Closure
1 Unable to Determine
1 Unfounded
3 Unsubstantiated

### Complaint #202412297, December 2024

| Allegation | Complainant | CCRB Conclusion |
| --- | --- | --- |
| Abuse of Authority: Refusal to provide name | Male, 25-29 | SRAD Closure |
| Abuse of Authority: Refusal to provide shield number | Male, 25-29 | SRAD Closure |
| Abuse of Authority: Refusal to provide name | | SRAD Closure |
| Abuse of Authority: Refusal to provide shield number | | SRAD Closure |

additional details

### Complaint #202205049, May 2022

| Allegation | Complainant | CCRB Conclusion |
| --- | --- | --- |
| Abuse of Authority: Refusal to obtain medical treatment | White Male, 45-49 | Unfounded |

Force: Physical force                          White Male, 45–49              Unable to Determine

additional details

## Complaint #202102987, April 2021

| Allegation | Complainant | CCRB Conclusion |
| --- | --- | --- |
| Force: Handcuffs too tight | American Indian Female, 35–39 | Complainant Uncooperative |
| Discourtesy: Word | American Indian Female, 35–39 | Complainant Uncooperative |

additional details

## Complaint #202101593, February 2021

| Allegation | Complainant | CCRB Conclusion |
| --- | --- | --- |
| Discourtesy: Action | Black Male, 45–49 | Unsubstantiated |
| Offensive Language: Gender | Black Male, 45–49 | Unsubstantiated |
| Discourtesy: Word | Black Male, 45–49 | Unsubstantiated |

additional details

## Complaint #201807495, August 2018

| Allegation | Complainant | CCRB Conclusion |
| --- | --- | --- |
| Abuse of Authority: Seizure of property | Male, 28 | Exonerated |

additional details

**Conclusion Meanings:**
**'Exonerated':** or 'Within NYPD Guidelines' – The conduct occurred but did not violate the NYPD's own rules, which often give officers significant discretion.
**'SRAD Closure':** Strategic Resource Allocation Determination – due to citywide budget cuts, CCRB is no longer able to fully investigate certain cases within its jurisdiction and suspended investigating some types of complaints.

**'Unable to Determine':** The alleged conduct was investigated but could not determine both that the conduct occurred and that it broke the rules.
**'Unfounded':** Evidence suggests that the event or alleged conduct did not occur.
**'Unsubstantiated':** or 'Unable to Determine' – The alleged conduct was investigated but could not determine both that the conduct occurred and that it broke the rules.
Further details on conclusions.

50-a.org — About — File a complaint

**From: Ayemare** ayemare@theamrtrust.info 
**Subject:** Request for Property Voucher 4001170935
**Date:** November 25, 2024 at 5:13 PM
**To:** Ritesh.Barua@nypd.org, Ralph.Clement@nypd.org
**Cc:** Michael.Gerber@nypd.org, mgoodetr@law.nyc.gov

Good Evening,

Please see the attachment regarding Voucher Number 4001170935.

Thank you for your careful attention to this time-sensitive matter.  I look forward to receiving responsive documents shortly.

Enjoy the remainder of your evening.

Assata-Makeya:Rhodes, Trustee
Ayermare Company
ayemare@theamrtrust.info

**Voucher Request to 103rd
Precinct - 11.25.2024.pdf**
2.4 MB



**From: BLANDA, MICHAEL** MICHAEL.BLANDA@nypd.org
**Subject:** Voucher
**Date:** November 26, 2024 at 9:33 PM
**To:** ayemare@theamrtrust.info

Sent from my iPhone

**invoice_4001170935.pdf**
32 KB



**NYPD Property Clerk Invoice**
PD 521-141(Rev.12/18)



Invoice No. **4001170935**

| Invoicing Command | | | | | | | | Invoice Status |
|---|---|---|---|---|---|---|---|---|
| **103RD PRECINCT** | | | | | | | | **OPEN** |

| Invoice Date | | | Property Type | | | | | Property Category |
|---|---|---|---|---|---|---|---|---|
| **11/23/2024** | | | **GENERAL PROPERTY** | | | | | **ARREST EVIDENCE** |

| Officers | Rank | Name | | Tax No. | Command | | | |
|---|---|---|---|---|---|---|---|---|
| Invoicing Officer | PO | BLANDA, MICHAEL | | 959495 | PBQS SPECIALIZED UNITS | | OCME.EU No. | |
| Arresting Officer | PO | BLANDA, MICHAEL | | 959495 | PBQS SPECIALIZED UNITS | | OCME.FB No. | |
| Investigating Officer | N/A | | | | | | Police Lab Evid.Ctrl.No. | |
| Det Squad Supervisor | N/A | | | | | | Det Sqd. Case No. | |
| CSU/ECT Processing | N/A | | | | | | CSU/ECT Run No. | |

| Item | Total QTY | Article(s) | | | Estimated Value | Pkg. No. | QTY | Disposition |
|---|---|---|---|---|---|---|---|---|
| 1 | 2 | **LICENSES PLATE**<br>COLOR: **GREEN/WHITE** MAKE: **DOT EXEMPT** SERIAL<br>NO.: **PR1V4T3** DESCRIPTION: **2 DOT EXEMPT LICENSE**<br>**PLATES #PR1V4T3** | | | | 1205547151 | 2 | |
| | | | | **Total Cash Value** | **0.00** | | | |

REMARKS

959495 11/23/2024 19:10 : THE ABOVE LISTED PROPERTY IS BEING VOUCHERED AS ARREST EVIDENCE

936939 11/23/2024 19:35 : Invoice Approved By 936939

| Date of Incident | Penal Code/Description | | Crime Classification | Related To | | Receipt |
|---|---|---|---|---|---|---|
| **11/23/2024** | **17030/CRIM POSS FORGD INST** | | **FELONY** | | | |
| **11/23/2024** | **POSSESS FORGED INSTRUMENT-2ND** | | **FELONY** | **N/A** | | **N/A** |

| | | | | | Arrest No./Summons No. | |
|---|---|---|---|---|---|---|

| | Name | Tax No. | Address | | | |
|---|---|---|---|---|---|---|

Finder

Person Vehicle Taken From

Complaint No.  **2024-103-014224**

Related Comp No.(s)  **N/A**

Aided/Accident No.(s)  **N/A**

Related Invoice(s)  **N/A**



Invoice No. **4001170935**

**Property Clerk Copy**
printed: 11/25/2024 17:52

PCD Storage No.
**--**
Page No.1 of 2

Page 287 of 345



**NYPD Property Clerk Invoice**
PD 521-141(Rev.12/18)



Invoice No. **4001170935**

| Approvals | Rank | Name | Tax No. | Command | Date | Time |
|---|---|---|---|---|---|---|
| Entered By | PO | BLANDA, MICHAEL C | 959495 | PBQS SPECIALIZED UNITS | 11/23/2024 | 19:10 |
| Invoicing Officer | PO | BLANDA, MICHAEL | 959495 | PBQS SPECIALIZED UNITS | 11/23/2024 | 19:29 |
| Approved By | LT | LEI, DANNY | 936939 | PBQS SPECIALIZED UNITS | 11/23/2024 | 19:35 |

*Michael Blanda*



Invoice No. **4001170935**

**Property Clerk Copy**
printed: 11/25/2024 17:52

PCD Storage No.
**--**
Page No.2 of 2





# OFFICE OF THE QUEENS COUNTY DISTRICT ATTORNEY

125-01 Queens Boulevard
Kew Gardens, Queens, NY
11415
www.queensda.org
(718) 286-6000

Melinda Katz

District Attorney

AYEMARE COMPANY

394 MYRTLE AVENUE SUITE #36

BROOKLYN,NEW YORK 11205

Dear Requestor,

One or more item(s) you have requested associated with Voucher#4001170935. under Arrest #Q24653880 have been released by the Queen's District Attorney's Office. An electronic copy of the release has been transmitted to the Queens County Property Clerk. If the property you have requested is a vehicle, please contact the Property Clerk's Auto Division at 718-553-9555 to verify the property's release status and confirm you have proper identification and/or documentation to complete the release.

If the property you have requested is general personal property, please contact the Queens Property Clerk at 718-433-2678 to verify the property's release status and confirm you have proper identification and/or documentation to complete the release. If you are an authorized representative retrieving property on behalf of another, you will need a notarized letter to complete the release.

Property Clerk Locations:

| | | |
|---|---|---|
| Queens Property Clerk: | 47-08 Austell Place | 718-433-2678 |
| Pearson Place Warehouse: | 47-15 Pearson Place | 718-361-1021 |
| Springfield Gardens Auto Pound | : 174-20 North Boundary Road | 718-553-9555 |

NOTE: A release from the Queen's District Attorney does not guarantee the property will be released by the NYPD. There may be additional holds on the property that will need to be resolved by the claimant with the NYPD before the property can be returned.

NOTICE: A Queen's County District Attorney's Release ONLY states that the listed items are no longer needed as evidence, and a District Attorney's Release is NOT to be construed as a statement by the District Attorney as to the possessory rights of the property to any person, including the claimant.

Respectfully,

Property Release Services Unit
Queens District Attorney's Office

QCDA Reference Number: 14,303.00-33,789.00          Page 1 of 1





# OFFICE OF THE QUEENS COUNTY DISTRICT ATTORNEY

125-01 Queens Boulevard
Kew Gardens, Queens, NY
11415
www.queensda.org
(718) 286-6000

Melinda Katz
District Attorney

---

### DISTRICT ATTORNEY'S PROPERTY RELEASE

The Office of the District Attorney, County of Queens, hereby states that the following property is no longer needed as evidence:

| Property Voucher Number | Item Number | Description |
|---|---|---|
| 4001170935 | 1 | (2) LICENSES PLATE GREEN/WHIT |

**The District Attorney's Release is not to be construed as a statement by the District Attorney as to the possessory rights to the property of any person, including the claimant.**

*NOT VALID WITHOUT QDA STAMP*



Signature

Name              GEORGE DELUCA-FARRUGIA

Phone Number      718-286-6260

Date              12/06/2024

**Any questions about this Deferment should be directed to the Property Release Unit at (718) 286-6826 or by email to qdapropertyreleaseunit@queensda.org.**

QCDA Reference Number: 14,303.00-33,788.00          Page 1 of 1



THE AYEMARE COMPANY

394 Myrtle Avenue #36 · Kings County New York [near 11205] [non-domestic] · ayemare@theamrtrust.info · 

Wednesday, January 15, 2025

Lieutenant Richard Lovina, [Tax ID No. 904394]
City of New York Police Department, Legal Bureau
One Police Plaza Path
New York, New York 10038
Richard.Lovina@nypd.org

Michael C. Blanda, [Tax ID No. 959495]
City of New York Police Department
Queens Borough Patrol South Community Response Team
c/o 168-02 91st Avenue
Jamaica, New York 11432
Michael.Blanda@nypd.org

**Re:    E-mail - Re: Ayemare's Second Demand for Property Release - 12.30.2024**

**Lieutenant Lovina:**

Thank you for your e-mail;[1] and, the undersigned has reason to believe that you are mistaken - "██████" is not an owner of the demanded private property; nor does "██████" have any lawful claim to the property; nor is "██████" listed as an owner on the NYPD Property Clerk Invoice bearing number 4001170935, but as "Prisoner" with no reference whatsoever to the owner of the property.[2]

The private property in question are two, metal sheets, which, prior to the removal of NYPD Officer Michael C. Blanda, [Tax ID No. 959495],[3] were affixed to another piece of private property; **all of which are owned solely by AYEMARE COMPANY**, to which the undersigned is an authorized agent.[4] A formal demand for a release of the property was delivered to the Queens County District Attorney's Office on November 30, 2024. Additionally, the NYPD's Queens Property Clerk Office and Legal Bureau (as well as other, relevant agents of the City of New York and NYPD) have been provided with the UCC Financing Statements, dated

---

[1] *See* Attachment 1 - Richard Lovina E-mail, dated January 15, 2025, 2:40pm

[2] *See* Attachment 2 - NYPD Property Clerk Invoice 4001170935

[3] Officer Blanda was verbally notified that "██████" was not the owner of any of the relevant private property prior to removal by Blanda. A FOIL request for the relevant BWC footage has been provided to the NYPD.

[4] *See* Attachment 3 - Notarized authorization

IAB Complaint Number: 2024-37808
CCRB Complain Number: 2024-12608

as early as 2021, which serve as notice of AYEMARE COMPANY's interest in the private property.

As indicated in the "Second Property Demand to NYPD," dated December 30, 2024:[5]

> Pursuant to Title 38 of the Rules of the City of New York [RCNY] § 12-35 (Disposition of Property by the Police Property Clerk Where There Has Been an Arrest)[6]; and NYPD Property Clerk Division Property Guide Procedure 604-1;[7] for property retrieval in *this* particular case, the claimant is *only* required to provide **(1) the property clerk invoice/voucher; (2) identification; and, (3) a release from the District Attorney's [DA] office**. 38 RCNY 12-35(f) states [in pertinent part]:
>
>> "**In no event** shall a claimant be required to obtain **any additional documentation** or evidence relating to the property or be required to submit any proof of ownership of the property other than the voucher, except if the vouchered property is a motor vehicle, then title (or a reasonable explanation for its absence) may be required." [**emphasis added**]

The NYPD Queens Property Clerks Office has already been provided with the three, specifically enumerated items required for the release of the demanded property.[8] "▩▩▩▩▩▩" has no interest whatsoever in the aforementioned private property; nor does "▩▩▩▩▩▩" have any claim to the property; nor has "▩▩▩▩▩▩" made a claim for the property.

**Officer Blanda:**

Pursuant to the advisement of Lieutenant Lovina,[9] please consider this a formal, written demand, for an update to any and all relevant NYPD records, to reflect the owner of the subject private property as **AYEMARE COMPANY**.

**To All:**

**If you require any further documentation, specific circumstance, or anything other for an immediate release of the demanded property, please respond, in**

---

[5] *See* "Second Property Demand to NYPD - 12.30.2024" attached

[6] *See* Attachment 4 - 38 RCNY § 12-35

[7] *See* Attachment 4 - New York City Police Department Property Clerk Division Procedure Number 604-1

[8] *See* "Second Property Demand to NYPD - 12.30.2024" attached

[9] *See* Attachment 1 - Richard Lovina E-mail, dated January 15, 2025, 2:40pm

**writing, with that information *immediately*** - arrangements will be made to satisfy lawful requests for the express purpose of the return of the private property to the lawful owner.

For the convenience of all, the "Second Property Demand to NYPD - 12.30.2024" is attached.

Thank you for your continued attention to this time-sensitive matter.

Assata-Makeya: Rhodes, Trustee
Without Recourse, without prejudice
All Rights Reserved

cc:     Jeffrey Clarke, Property Clerk Specialist
        City of New York Police Department, Queens Property Clerk
        47-08 Austell Place
        Long Island City, New York 11101
        Jeffrey.Clarke@nypd.org
        *(by e-mail only)*

        City of New York Police Department, Civil Enforcement Unit
        375 Pearl Street, Box 39
        New York, New York 10038
        CivilEnforcement@nypd.org
        *(by e-mail only)*

        Michael Gerber, Deputy Commissioner
        City of New York Police Department, Legal Matters
        One Police Plaza Path
        New York, New York 10038
        Michael.Gerber@nypd.org
        *(by e-mail only)*

        City of New York
        New York Police Department Internal Affairs Bureau
        315 Hudson Street, 3rd Floor
        New York, New York 10013
        IAB@NYPD.org; IABCMDCNTR@nypd.org
        *(by e-mail only)*

**From:** **Ayemare** ayemare@theamrtrust.info ✏️
**Subject:** Re: Ayemare's Second Demand for Property Release - 12.30.2024
**Date:** January 15, 2025 at 6:16 PM
**To:** LOVINA, RICHARD RICHARD.LOVINA@nypd.org, BLANDA, MICHAEL MICHAEL.BLANDA@nypd.org
**Cc:** CLARKE, JEFFREY JEFFREY.CLARKE@nypd.org, GERBER, MICHAEL MICHAEL.GERBER@nypd.org, DG-CivilEnforcement CivilEnforcement@nypd.org, IABCMDCNTR IABCMDCNTR@nypd.org, Ccrb_Cts administrator-1@ccrb.nyc.gov, IAB@nypd.org
**Bcc:** Ayemare Company ayemare@theamrtrust.info

IAB Complaint Number: 2024-37808
CCRB Complain Number: 2024-12608
— — — — — — — — — — — — — — —

Mr. Lovina,

To limit your confusion and assist in your understanding of the matter, I will respond to your last e-mail by copying each of your questions / statements, and responding directly thereafter:

(1)
**Lovina:** "Please check the property clerk invoice. On the bottom of the invoice the "owner" is listed as ✕✕✕✕✕✕✕."

**Response:** The only relevant appearance of the word "owner" on NYPD Property Clerk Invoice 4001170935 is in the footer of each of the 3 pages, which reads "**Prisoner/ Finder/ Owner Copy**." If I am incorrect or misreading the Invoice, please direct me to the exact location on the Invoice where ✕✕✕✕✕ is indicated as an owner of the property.



(Image 1)

| Prisoner(s) Name | D.O.B | Age | Address | Arrest No./Summons No. | NYSID No |
|---|---|---|---|---|---|
| ✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕✕ | | | | | |

Invoice No. **4001170935**

**Prisoner/ Finder/ Owner Copy**
printed: 11/26/2024 20:49

PCD Storage No.
**24Q045252**
Page No.1 of 3

(Image 2)

(2)
**Lovina:** "Unless this is changed by the invoicing officer  he is the only one the property can be released to."

**Response:** The demand for a change has already been made to Invoicing Officer Blanda ["Notice to Lovina and Blanda - 1.15.2025, at page 2, ¶3].

(3)
**Lovina:** "Based on the arrest report narrative these fake or novelty plates were on an unregistered parked vehicle."

**Response:** I have not been provided with any such arrest report; and therefore, cannot respond to any of its contents.  Again, a FOIL request has already been provided to the NYPD for items including, but not limited to, the arrest report and relevant BWC footage. If you wish for AYEMARE COMPANY to address the arrest report, please respond to this e-mail with a copy of the arrest report.

(4)
**Lovina:** "How did the defendant ✕✕✕✕✕ gain the plates?"

**Response:** To the best of my knowledge, "defendant ✕✕✕✕✕" was not in possession of the private property on November 23, 2024 [the date the property was invoiced].

(5)
**Lovina:** "Whose vehicle was this?"

**Response:** Again, all of the relevant private property is **solely owned by AYEMARE COMPANY**. A copy of title has already been provided to the NYPD on several occasions, including, but not limited to, on November 26, 2024, to Ritesh Barua, Property Clerk at the 103rd Precinct [the invoicing precinct]; and, to Michael Gerber, Deputy Commissioner of Legal Matters. For your convenience, a copy of that notice ["Voucher Request to 103rd Precinct - 11.25.2024"], which includes a redacted copy of title [at page 3 of 4], is attached to this e-mail, below the signature line.

Although not necessary for the return of the demanded property [pursuant to the NYPD Property Clerk Guide and the RCNY], **an unredacted title may be provided to you upon written request / demand**.

(6)
**Lovina:** "What is your connection or claim to the property besides vague letters claiming ownership?   Please clarify.  You claim to own the plates with no clarity that I can fully understand.  What is your proof of ownership?"

**Response:** Again, **AYEMARE COMPANY owns the property**.  I am an **authorized agent of AYEMARE COMPANY**, as evidenced by the notarized authorization attached to the "Notice to Lovina and Blanda - 1.15.2025" provided in the last e-mail to you. For your convenience, the notarized authorization may be found on pages 6-7 of 22.

As agent of the property owner AYEMARE COMPANY, my claim is the same as that of AYEMARE COMPANY.  If you require more than the title; NYS UCC statements; affidavits; affirmations; or notarized documents previously provided, to evidence ownership and release the property, **please give a detailed description of what is required so that arrangements can be made to provide you with such.**

Again, thank you for your careful attention to this time-sensitive matter.

Assata-Makeya:Rhodes, Trustee
Ayemare Company
ayemare@theamrtrust.info

**Voucher Request to 103rd
Precinct - 11.25.2024.pdf**

**Notice to Lovina and Blanda -
1.15.2025.pdf**

**From: Ayemare** ayemare@theamrtrust.info 
**Subject:** FOIL-2024-056-36636 - FOIL Request to NYPD - 12.20.2024
**Date:** December 20, 2024 at 7:13 AM
**To:** FOIL@nypd.org
**Cc:** Michael.Goodchild@nypd.org, Jordan.Mazur@nypd.org, DOCPROD110C@nypd.org
**Bcc:** Ayemare Company ayemare@theamrtrust.info



Greetings,

Please see the attachment.

Thank you for your careful attention to this time-sensitive matter.

Assata-Makeya:Rhodes, Trustee
Ayemare Company
ayemare@theamrtrust.info

**FOIL-2024-056-36636 - FOIL**  📥
**Request to NYPD - 12.20.2024...**

# Assata-Makeya:Rhodes

c/o 309 Lafayette Avenue 21G · Kings County New York [non-domestic] · contact@assatamakeyarhodes.info

Monday, December 30, 2024

Captain Michael E. Goodchild, Commanding Officer
City of New York Police Department, 88th Precinct
298 Classon Avenue
Brooklyn, New York 11205
Michael.Goodchild@nypd.org

Jessica Tisch, Commissioner
City of New York Police Department
One Police Plaza Park
New York, New York 10038

**Re: Spoliation Letter / Notice to Preserve Evidence**

### NOTICE TO ONE IS NOTICE TO ALL

On Friday, December 20, 2024, the undersigned did visit the City of New York Police Departments 88th Precinct [hereinafter, "the visit"] at approximately 12:15pm concerning the retrieval of documentation and / or property related to NYPD Property Clerk Invoice and Recovered Stolen Property Report 3001850300 [attached]. The undersigned was abruptly and unreasonably refused service by Sergeant Nicholas M. Loweth [Tax ID No. 944749] who thereafter demanded the undersigned leave the precinct.

This letter demands that you preserve and not alter any and all recorded audio and / or visual evidence relating to the aforementioned visit of the undersigned, on December 20, 2024, from this 12:15pm through 2:00pm, in the possession or control of the City of New York, and/or the City of New York Police Department including, but not limited to, the following:

- All photographs, video recordings, audio recordings, computer media, physical evidence, documents, materials, and any other item relating to the visit;
- All communications regarding the visit by e-mail, text message, letter, or other means;
- Any other information, real evidence, or documents that may be relevant to the visit.

Please take steps to preserve these items and anything else related to the aforementioned visit. In addition, do not alter or destroy any related materials. A party has a duty to preserve evidence relevant to litigation when the party has notice of the litigation or when it should have known

Notice to Preserve Evidence - 12.30.2024                    Page 1 of 5

that the evidence may be relevant to future litigation [*Zubulake v. UBS Warburg, LLC*][1]. Spoliation is the "destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in a pending or reasonably foreseeable litigation" Alcoa, 244 F.R.D. at 339.

A party's preservation obligations are as follows: "Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a "litigation hold" to ensure the preservation of relevant documents. As a general rule, that litigation hold does not apply to inaccessible backup tapes (e.g., those typically maintained solely for the purpose of disaster recovery), which may continue to be recycled on the schedule set forth in the company's policy. On the other hand, if backup tapes are accessible (i.e., actively used for information retrieval), then such tapes would likely be subject to the litigation hold." Id. (quoting Zubulake, 220 F.R.D. at 218).

If you have any questions, concerns, or comments, please produce them in writing, by certified mail, addressed to:

> **Assata-Makeya:Rhodes**
> **c/o 309 Lafayette Avenue Suite 21G**
> **Kings County New York;**

and by e-mail to **contact@assatamakeyarhodes.info**.

Thank you.

Assata-Makeya:Rhodes
c/o 309 Lafayette Avenue 21G
Kings County New York [11238]

contact@assatamakeyarhodes.info

cc:    City of New York
       New York Police Department Internal Affairs Bureau
       315 Hudson Street, 3rd Floor
       New York, New York 10013
       IAB@NYPD.org

---

[1] *Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 216 (S.D.N.Y.2003)

Notice to Preserve Evidence - 12.30.2024                Page 2 of 5

**Search by Officer Name or Badge Number**

enter name or badge #     Search

# Nicholas M. Loweth

Badge #4324, Hispanic Male, 39
Sergeant at 88th Precinct since October 2019
Also served at 77th Precinct
Service started July 2007, made $153,000 last year, Tax #944749

**Substantiated Allegations:**
Force: Chokehold
Force: Restricted Breathing
Discourtesy: Word
Untruthful Statement: False official statement

**Lawsuit Settlements:**
$48,000   Plowden, Najja vs City of New York, et al., 2017 EDNY
$500,000   Starke, Reginald, et al. vs City of New York, et al., 2010 KCSC
$25,000   Cedeno v. P.O. O'Mahoney, Denis, et al., EDNY
$35,000   Lloyd v. P.O. Loweth, et al., EDNY
$10,000   Dopwell v. City Of New York, et al., KCSC
View Details

# Complaints

7  Complaints
13  Allegations
4  Substantiated

1  Substantiated (Instructions)
3  Substantiated (Charges)
1  Alleged Victim Uncooperative
2  Complainant Unavailable
2  Complainant Uncooperative
1  Exonerated
1  Unsubstantiated
2  Within NYPD Guidelines

## Complaint #202308561, August 2023

| Allegation | Complainant | CCRB Conclusion |
| --- | --- | --- |
| Force: Chokehold | White Male, 30–34 | Substantiated (Charges) |
| Force: Restricted Breathing | White Male, 30–34 | Substantiated (Charges) |
| Untruthful Statement: False official statement | | Substantiated (Charges) |

APU Case Status: Pending

**Penalty: APU - Decision Pending**

additional details

## Complaint #202200383, January 2022

| Allegation | Complainant | CCRB Conclusion |
| --- | --- | --- |
| Abuse of Authority: Threat of arrest | Asian Male, 35–39 | Within NYPD Guidelines |
| Abuse of Authority: Threat of arrest | Asian Male | Within NYPD Guidelines |

additional details

## Complaint #202103861, June 2021

| Allegation | Complainant | CCRB Conclusion |
| --- | --- | --- |
| Abuse of Authority: Forcible Removal to Hospital | Black Female, 25–29 | Exonerated |

additional details

## Complaint #201506928, August 2015

| Allegation | Complainant | CCRB Conclusion |
| --- | --- | --- |
| Force: Pepper spray | Black Male, 23 | Complainant Unavailable |
| Force: Physical force | Black Male, 23 | Complainant Unavailable |

additional details

## Complaint #201311039, November 2013

| Allegation | Complainant | CCRB Conclusion |
| --- | --- | --- |
| Force: Physical force | Hispanic Male, 24 | Alleged Victim Uncooperative |

additional details

## Complaint #201304611, May 2013

| Allegation | Complainant | CCRB Conclusion |
| --- | --- | --- |
| Discourtesy: Word | Black Male, 47 | Substantiated (Instructions) |
| Force: Physical force | Black Male, 47 | Unsubstantiated |
| **Penalty: Instructions** | | |

additional details

## Complaint #201008167, June 2010

| Allegation | Complainant | CCRB Conclusion |
| --- | --- | --- |
| Force: Physical force | Black Male, 35 | Complainant Uncooperative |
| Abuse of Authority: Stop | Black Male, 35 | Complainant Uncooperative |

additional details

**Conclusion Meanings:**

# Assata-Makeya:Rhodes

c/o 309 Lafayette Avenue 21G · Kings County New York [non-domestic] · contact@assatamakeyarhodes.info · 

Monday, December 23, 2024

New York City Department of Consumer and Worker Protection
42 Broadway
New York, New York 10004
consumers@dcwp.nyc.gov

The Civilian Complaint Review Board
100 Church Street, 10th Floor
New York, New York 10007
intake@ccrb.nyc.gov

New York State Department of State
Division of Consumer Protection Consumer Assistance Unit
One Commerce Plaza
99 Washington Avenue, Suite 640
Albany, New York 12231

**Re**:  *NYPD Property Clerk Invoice  3001850300*
        *"ROTOW" by MARK'S AUTOMOTIVE INC. [DCWP License No. 992248]*

To Whom it May Concern:

The undersigned submits this complaint with the City of New York Department of Consumer and Worker Protection [DCWP]; the City of New York Civilian Complaint Review Board [CCRB]; and the New York State Department of State, Division of Consumer Protection [DCP] concerning the removal and retention of private property, recorded on NYPD Property Clerk Invoice [PCI] 3001850300.

The undersigned requests that the DCWP; CCRB; and DCP thoroughly investigate the claims made against named agents of the NYPD and MARK'S AUTOMOTIVE INC. The following are attached:

    (1) STATEMENT OF FACTS;

    (2) Notarized authorization labeled "Notice to MARK'S AUTOMOTIVE INC. - 12.19.2024";

    (3) NYPD Property Clerk Invoice and Recovered Stolen Vehicle Report;

    (4) NYC Administrative Code § 2-372;

    (5) NYC Administrative Code § 2-378;

    (6) NYC Administrative Code § 19-169.1;

    (7) MARK'S AUTOMOTIVE INC. Hours of Operation;

    (8) "Demand to MARK'S AUTOMOTIVE INC. - 12.22.2024";

(9) Sunday, December 22, 2024 E-mails;

(10) Department of Consumer and Worker Protection Complaint Form; and,

(11) Division of Consumer Protection Consumer Complaint Form.

Questions, concerns, or comments, may be directed by e-mail to contact@assatamakeyarhodes.info.

Thank you.

Assata-Makeya:Rhodes
c/o 309 Lafayette Avenue 21G
Kings County New York [11238]

contact@assatamakeyarhodes.info

cc:
MARK'S AUTOMOTIVE INC.
51 Grattan Street
Brooklyn, New York 11237
repobklyn@aol.com

Kasey M. Lazaro, Police Officer
City of New York Police Department, 88th Precinct
298 Classon Avenue
Brooklyn, New York 11205
kasey.lazaro2@nypd.org

Nicholas M. Loweth, Sergeant
City of New York Police Department, 88th Precinct
298 Classon Avenue
Brooklyn, New York 11205
Nicholas.Loweth@nypd.org

Captain Michael E. Goodchild, Commanding Officer
City of New York Police Department, 88th Precinct
298 Classon Avenue
Brooklyn, New York 11205
Michael.Goodchild@nypd.org

Michael Gerber, Deputy Commissioner
City of New York Police Department, Legal Matters
One Police Plaza Path
New York, New York 10038
Michael.Gerber@nypd.org

City of New York Department of Investigation
180 Maiden Lane
New York, New York 10038
Corruption@DOI.nyc.gov

Bradford Scott Lander, Comptroller
City of New York, Office of the Comptroller
One Centre Street, Room 1225
New York, New York 10007
BLander@comptroller.nyc.gov

City of New York Law Department
ServiceECF@law.nyc.gov

**From: CCRB_CTS** administrator-1@ccrb.nyc.gov
**Subject:** CCRB Case #202412608
**Date:** December 26, 2024 at 9:49 AM
**To:** contact@assatamakeyarhodes.info
**Cc:** administrator-1@ccrb.nyc.gov



# CIVILIAN COMPLAINT REVIEW BOARD

100 CHURCH STREET 10th FLOOR
NEW YORK, NEW YORK 10007 ♦ TELEPHONE
(212) 912-7235
www.nyc.gov/ccrb

ERIC L. ADAMS

DR. MOHAMMAD KHALID
INTERIM

December 26, 2024

Assata-Makeya Rhodes
309 Lafayette Avenue Apt. 21G
Brooklyn, NY 11238

**IAB REF#: 202412608**

Dear Assata-Makeya Rhodes:

The Civilian Complaint Review Board has a specific jurisdiction when it is investigating allegations against sworn members of the NYPD. Some allegations do not fall under the jurisdiction of the CCRB and fall under the jurisdiction of another entity, which is the case here.

As a result, we are forwarding your complaint to the **Internal Affairs Bureau**, so they can take appropriate action. Please expect to hear from someone from that organization who will be investigating your incident. They will be able to explain to you in detail how their process works. Your continued willingness to participate in this extremely important process with the **Internal Affairs Bureau** is greatly appreciated.

If you have any questions, please contact the **Internal Affairs Bureau** at **315 Hudson Street 3 Fl, New York NY 10013; telephone (212) 741-8401**. Make sure you have the reference number at the top of this page when reaching out to them.

The integrity and quality of the Police Department's service to the public depends, in large part, upon
receiving information from citizens like you regarding the performance of police officers as they carry out their duties. The Civilian Complaint Review Board is grateful for the effort you have already put forth in furthering this goal.

Sincerely,

Eshwarie Mahadeo
Director of Case Management

**NYCResources.pdf**

# Assata-Makeya:Rhodes

c/o 309 Lafayette Avenue 21G · Kings County New York [non-domestic] · contact@assatamakeyarhodes.info · 

Monday, December 30, 2024

City of New York
New York Police Department Internal Affairs Bureau
315 Hudson Street, 3rd Floor
New York, New York 10013
IAB@NYPD.org

**Re**:    *IAB REF#: 202412608*

To Whom it May Concern:

Pursuant to Civilian Complaint Review Board [CCRB] Director of Case Management, Eshwarie Mahadeo,[1] the undersigned submits this complaint with the City of New York Police Department Internal Affairs Bureau concerning the removal of private property, recorded on NYPD Property Clerk Invoice [PCI] 3001850300. The following are attached:

     (1) STATEMENT OF FACTS;

     (2) Notarized authorization labeled "Notice to MARK'S AUTOMOTIVE INC. - 12.19.2024";

     (3) NYPD Property Clerk Invoice and Recovered Stolen Vehicle Report;

     (4) NYC Administrative Code § 2-372;

     (5) NYC Administrative Code § 2-378;

     (6) NYC Administrative Code § 19-169.1;

     (7) MARK'S AUTOMOTIVE INC. Hours of Operation;

     (8) "Demand to MARK'S AUTOMOTIVE INC. - 12.22.2024"; and,

     (9) Sunday, December 22, 2024 E-mails.

Questions, concerns, or comments, may be directed by e-mail to contact@assatamakeyarhodes.info.

Thank you.

Assata-Makeya:Rhodes
c/o 309 Lafayette Avenue 21G
Kings County New York [11238]

contact@assatamakeyarhodes.info

---

[1] *See* CCRB E-mail, attached.

# Assata-Makeya:Rhodes

c/o 309 Lafayette Avenue 21G · Kings County New York [non-domestic] · contact@assatamakeyarhodes.info ✕✕✕✕✕

Monday, January 13, 2025

Leiutenant Mikhail Goncharov
City of New York Police Department, 88th Precinct
298 Classon Avenue
Brooklyn, New York 11205
Mikhail.Goncharov@nypd.org
*(by e-mail only)*

**Re**:    *NYPD Property Clerk Invoice  3001850300*
       *"ROTOW" by MARK'S AUTOMOTIVE INC. [DCWP License No. 992248]*

Greetings Lieutenant Goncharov,

Thank you for your call regarding the complaint made to the CCRB and IAB.

On December 20, 2024, Officer Eon C. Adamson [Tax ID No. 905654] did instruct the undersigned to visit the 88th Precinct, "in person," to retrieve the NYPD Property Clerk Invoice [PCI] and any other documents relevant to the removal of private property on December 19, 2024. Nearly an hour after the undersigned arrived at the 88, Officer Adamson advised he would not provide any documents pursuant to instruction from Sergeant Nicholas M. Loweth [Tax ID No. 944749]. Sgt. Loweth then came to speak with the undersigned; reviewed the documents presented by the undersigned; returned the documents to the undersigned and refused to provide the undersigned with any information; and without cause, demanded the undersigned leave the 88th Precinct. For a more detailed description of the aforementioned events, please see the attached statement of facts from the "Complaint to DCWP; CCRB; DCP," dated December 23, 2024.

**The undersigned has reason to believe that the denial of access to documents — <u>which, in effect, is a denial of due process of law</u> — is a pattern and practice of NYPD agents at the 88th Precinct**. On December 6, 2022, the undersigned was similarly rejected from the 88th by Officer Ryan Boccard [Tax ID No. 952477] and Lieutenant Roger Quintero [Tax ID No. 943706], both of whom refused to provide the undersigned with PCI's and other relevant documents.  Following Boccard and Quinetero's denial of access to the PCI; and, a lack of notice by the 88th Precinct to the property owner (as prescribed by the NYPD Patrol Guide Procedure 218-21), the property the undersigned sought to retrieve was destroyed. The undersigned only learned of the destruction after initiating litigation against agents of the NYPD in

the Supreme Court of New York. Police Officer John J. Estling [Tax ID No. 961744] of the 88th Precinct is to be deposed in relation to the aforementioned case later this month.

For more details on the denial by Boccard and Quintero, please see the Summons and Complaint at. p. 13, ¶44.  If you have any questions, concerns, or comments; or if your require any further details, the undersigned may be reached by telephone at  or by e-mail at contact@assatamakeyarhodes.info.

<div align="right">Thank you.</div>

Assata-Makeya:Rhodes
c/o 309 Lafayette Avenue 21G
Kings County New York [11238]

contact@assatamakeyarhodes.info

**Attachments**:
Complaint to DCWP; CCRB; DCP - 12.23.2024; Statement of Facts

# Assata-Makeya:Rhodes

c/o 309 Lafayette Avenue 21G · Kings County New York [non-domestic] · contact@assatamakeyarhodes.info ·

Monday, January 13, 2025

Sergeant Stephanie Malvica
City of New York Police Department, 88th Precinct
298 Classon Avenue
Brooklyn, New York 11205
Stephanie.Malvica@nypd.org
*(by e-mail only)*

**Re**:  *NYPD Property Clerk Invoice  3001850300*
*"ROTOW" by MARK'S AUTOMOTIVE INC. [DCWP License No. 992248]*

Good Evening Sergeant Malvica,

Thank you again for your call regarding the complaint made to the CCRB and IAB.

On December 20, 2024, Officer Eon C. Adamson [Tax ID No. 905654] did instruct the undersigned to visit the 88th Precinct, "in person," to retrieve the NYPD Property Clerk Invoice [PCI] and any other documents relevant to the removal of private property on December 19, 2024. Nearly an hour after the undersigned arrived at the 88, Officer Adamson advised he would not provide any documents pursuant to instruction from Sergeant Nicholas M. Loweth [Tax ID No. 944749]. Sgt. Loweth then came to speak with the undersigned; reviewed the documents presented by the undersigned; returned the documents to the undersigned and refused to provide the undersigned with any information; and, without cause, demanded the undersigned leave the 88th Precinct.

A Notice of Preservation of Evidence has already been provided to Commanding Officer, Captain Michael E. Goodchild, for the purpose of preserving the audio/visual recordings, from the vestibule of the 88th, of the aforementioned interaction. A more detailed description of the aforementioned events may be found in the attached statement of facts from the original "Complaint to DCWP; CCRB; DCP," dated December 23, 2024.

The undersigned has reason to believe that the denial of access to documents — **which, in effect, is a denial of due process of law** — is a pattern and practice of NYPD agents at the 88th Precinct. As briefly mentioned during the earlier call, on December 6, 2022, the undersigned was similarly rejected from the 88th by **Officer Ryan Boccard [Tax ID No. 952477]** and **Lieutenant Roger Quintero [Tax ID No. 943706]**, both of whom refused to provide the undersigned with PCI's and other relevant documents.

Page 1 of 2

Following Boccard and Quintero's denial of access to the PCI; and, a lack of notice by the 88th Precinct to the property owner (as prescribed by the NYPD Patrol Guide Procedure 218-21), the property the undersigned sought to retrieve was destroyed. The undersigned only learned of the destruction after initiating litigation against agents of the NYPD in the Supreme Court of New York.

**Police Officer John J. Estling [Tax ID No. 961744]** of the 88th Precinct is to be deposed in relation to the aforementioned case later this month - other involved Officers and Sergeants may receive Notices of Deposition in the coming weeks. For more details on the denial by Boccard and Quintero, please see the Summons and Complaint at. p. 13, ¶44.

With regard to the two, metal plates removed from the subject private property on or around December 19, 2024: Officer Kasey Lazaro [Tax ID No. 978596] alleged that the relevant private property did not have metal plates on it; and, the undersigned has reason to believe that other agents from and / or working out of the 88th Precinct have made similar false allegations, including, but not limited to, Officer Muhammad Khurshid [Tax ID No. 352960].[1] The undersigned has reason to believe that an NYPD policy or procedure exists which dictates that NYPD agents remove affixed metal plates from the private property before alleging that the metal plates are improper or absent.

NYPD was noticed of ownership of certain pieces of property owned by AYEMARE COMPANY on or around December 6, 2022 - any allegations by agents of the NYPD claiming an inability to determine the identity of the owner of the aforementioned pieces of property will ultimately be a matter for the Courts to discern. If you have any questions, concerns, or comments; or if you require any further details, the undersigned may be reached by telephone at ✕✕✕✕✕✕✕ or by e-mail at contact@assatamakeyarhodes.info.

Thank you.

Assata-Makeya:Rhodes
c/o 309 Lafayette Avenue 21G
Kings County New York [11238]

contact@assatamakeyarhodes.info

**Attachments**:
    Complaint to DCWP; CCRB; DCP - 12.23.2024; Statement of Facts

---

[1] Officer Kurshid alleged on January 8, 2025 a "Missing Plate" and "Both Plates" in reference to two, metal sheets which were both recovered from the NYPD Brooklyn Tow Pound.

Page 2 of 2
Follow-Up with Malvica - 1.13.2025

**From: Ayemare** ayemare@theamrtrust.info
**Subject:** Request for Property Clerk Invoice Number [PCI] 3001850303
**Date:** January 25, 2025 at 7:53 AM
**To:** Stephanie.Malvica@nypd.org, Ali.Walker@nypd.org
**Cc:** Kasey.Lazaro2@nypd.org, IAB@nypd.org, IABCMDCNTR IABCMDCNTR@nypd.org, Ccrb_Cts administrator-1@ccrb.nyc.gov, DG-CivilEnforcement CivilEnforcement@nypd.org, GERBER, MICHAEL MICHAEL.GERBER@nypd.org
**Bcc:** Ayemare Company ayemare@theamrtrust.info

Greetings Sgt. Malvica,

Thank you for providing **Property Clerk Invoice Number [PCI] 3001850303** for the missing property. We originally spoke due to the IAB and CCRB Complaints regarding Sergeant Nicholas M. Loweth's [Tax ID No. 944749] refusal to provide the aforementioned invoice on December 19, 2024. **Please respond to this e-mail with a copy of that PCI and explicit instructions for retrieval of the property.**

Additionally, please see the e-mail to you, dated **January 13, 2025 at 7:51pm**; which included the notice titled "**Follow-Up with Malvica - 1.13.2025.**" The aforementioned notice contained a **(1) notarized authorization [page 9-10 of 23]; (2) copy of redacted title; and, (3) NYS DOS UCC Financing Statement [page 11 of 23].**

Thank you - I look forward to receiving responsive documents soon.

Assata-Makeya:Rhodes, Trustee
Ayemare Company
ayemare@theamrtrust.info



**NYPD Property Clerk Invoice**
PD 521-141(Rev.12/18)



Invoice No. **3001850303**

| Invoicing Command | | Invoice Status |
|---|---|---|
| **88TH PRECINCT** | | **OPEN** |

| Invoice Date | Property Type | Property Category |
|---|---|---|
| **12/19/2024** | **GENERAL PROPERTY** | **FOUND PROPERTY** |

| Officers | Rank | Name | | Tax No. | Command | | | |
|---|---|---|---|---|---|---|---|---|
| **Invoicing Officer** | **PO** | **LAZARO, KASEY M** | | **978596** | **088 PRECINCT** | | OCME.EU No. | |
| Arresting Officer | **N/A** | | | | | | OCME.FB No. | |
| Investigating Officer | **N/A** | | | | | | Police Lab Evid.Ctrl.No. | |
| Det Squad Supervisor | **N/A** | | | | | | Det Sqd. Case No. | |
| CSU/ECT Processing | **N/A** | | | | | | CSU/ECT Run No. | |

| Item | Total QTY | Article(s) | Estimated Value | Pkg. No. | QTY | Disposition |
|---|---|---|---|---|---|---|
| 1 | **2** | **LICENSES PLATE** COLOR: **BLACK/WHITE** DESCRIPTION: **TWO VANITY PLATES WITH THE NAME PR1V4T3** DAMAGE/ DEFACEMENT DESCRIPTION: **SCRATCHES AND DENTS** | | **1205545096** | **2** | |
| | | **Total Cash Value** | **0.00** | | | |

REMARKS

**978596 12/19/2024 16:18 : THE FOLLOWING ITEMS BEING VOUCHER AS FOUND PROPERTY UNKNOWN OWNER.**

943899 12/19/2024 16:32 : Invoice Approved By 943899

929329 02/23/2025 09:38 : AT TPO CHANGING "PROPERTY CATEGORY" FROM "FOUND PROPERTY" TO "DETERMINE TRUE OWNER"

929329 02/23/2025 09:47 : Invoice Change Category Approved

**929329 02/23/2025 09:54 : DO NOT RELEASE UNLESS A REGISTERED OWNER FOR LISTED PLATE PROVIDES VALID CREDENTIALS FROM DMV**

929329 02/23/2025 09:55 : Invoice Change Category Approved

| Date of Incident | Penal Code/Description | Crime Classification | Related To | Receipt |
|---|---|---|---|---|
| **12/19/2024** | **N/A/N/A** | **INFRACTION** | | |

| Prisoner(s) Name | D.O.B | Age | Address | | Arrest No./Summons No. | NYSID No. |
|---|---|---|---|---|---|---|
| | Name | | Tax No. | Address | | Phone.No |
| **Finder** | **LAZARO, KASEY M** | | **978596** | **1 POLICE PLAZA NEW YORK, NY 10038** | | **718-636-6511** |
| Owner | **UNKNOWN** | | | | | |
| Complainant(s) | **PSNY** | | | | | |
| Person Vehicle Taken From | | | | | | |

Complaint No. **N/A**

Related Comp No.(s) **N/A**

Aided/Accident No.(s) **N/A**

Related Invoice(s) **N/A**



Invoice No. **3001850303**

**Property Clerk Copy**
printed: 02/23/2025 10:05

PCD Storage No.
**24K064821**
Page No.1 of 2



**NYPD Property Clerk Invoice**
PD 521-141(Rev.12/18)



Invoice No. **3001850303**

| Approvals | Rank | Name | Tax No. | Command | Date | Time |
|---|---|---|---|---|---|---|
| Entered By | PO | LAZARO, KASEY M | 978596 | 088 PRECINCT | 12/19/2024 | 16:18 |
| Invoicing Officer | PO | LAZARO, KASEY M | 978596 | 088 PRECINCT | 12/19/2024 | 16:22 |
| Approved By | SGT | TUCKER, THERESA M | 943899 | 088 PRECINCT | 12/19/2024 | 16:32 |
| Approved By | LT | GONCHAROV, MIKHAIL | 949043 | 088 PRECINCT | 02/23/2025 | 09:55 |



Invoice No. **3001850303**

**Property Clerk Copy**
printed: 02/23/2025 10:05

PCD Storage No.
**24K064821**
Page No.2 of 2

41. Your affiant avers that your affiant reserves all rights. **(See UCC § 1-308 (a) / NYUCC § 1-207.)**
   **UCC § 1-308 (a) / NYUCC § 1-207. Performance or Acceptance Under Reservation of Rights. A party that with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as "without prejudice," "under protest," or the like are sufficient."**

42. Your affiant avers that your affiant retains all rights, and liberties, at all times and in all spaces and places, nunc pro tunc (now for then) from the time of natural birth and forevermore; and your affiant retains all rights not to be compelled to perform under any unrevealed contract, adhesion contract, or commercial agreement, that your affiant did not enter knowingly, voluntarily and intentionally.

43. Your affiant avers that your affiant does not accept the liability of the compelled benefit of any unrevealed contract, or commercial agreement; your affiant is not ever subject to silent contracts, and has never knowingly or willingly contracted away sovereignty in any way or part.

44. Your affiant avers that your affiant is not a UNITED STATES citizen; or a 14th amendment citizen; and there exist no "accord and satisfaction" between your affiant and any body politic. Your affiant is a natural and organic state people of the republic and reject any attempted expatriation. **(See 15 UNITED STATES statute at large, July 27th, 1868 also known as the expatriation statute.)**

45. Your affiant avers that your affiant reserves the right to assess fees for any and all violations of your affiant's rights; or compelled performance; and your affiant reserves the right to assess fees for any and all incidents and occurrences nunc pro tunc (in the past, in the present, in the future); time is no bar. This assessment of fees shall be compensation for compelled performance; or a remedy for violations, but not the sole remedy. (See Schedule of Fees below)

46. Your affiant avers that any corporation; or natural person who, by coercion; threat; force; or demand, requires your affiant to perform; to produce material; to answer; to comply with, or to act in accord with any particular act as set forth in the Schedule of Fees, shall be assessed according to this schedule of fees.

47. Your affiant avers that all intervenors and actors, both Principles and Agents, agree to be held liable in their private; individual; and corporate capacity for their actions; and that Principles are liable for fees assessed on Agents under the doctrine of respondeat superior; and further may be subject to parallel claims of criminal activity, to wit: piracy; slavery (suretyship); trespass; breach of Fiduciary Duty; Misprision of Felony (18 U.S.C. § 4); RICO; Forfeiture; as well as other common law and statutory claims.

48. Your affiant avers that the assessment, and collection, of fees shall not be your affiant's sole remedy.

## Schedule Of Fees

| Acceptance of Presentments (without contract) | Fee |
|---|---|
| 1. Unauthorized Citations | $5,000.00 (per citation) |
| 2. Warnings Issued in Writing | $5,000.00 (per issuance) |
| 3. Summons, Court Notices (without Contract) | $5,000.00 (per summons/notice) |

AFFIDAVIT AND NOTICE

| Acceptance of Presentments (without contract) | Fee |
|---|---|
| 4. All other related items, fees, or offers | $5,000.00 |

| Depositions, Interrogation, Investigation (unsolicited) | Fee |
|---|---|
| 5. Name | $5,000.00 (per incident) |
| 6. Identification | $25,000.00 (per incident) |
| 7. Social Security Number | $15,000.00 (per incident) |
| 8. Retinal Scan | $1,500,000.00 (per incident) |
| 9. Fingerprinting | $150,000.00 (per incident) |
| 10. Photographing | $150,000.00 (per incident) |

| Obstruction of Travel, Property Search, Theft/ Confiscation/ Deprivation of Property, Interference with Commerce | Fee |
|---|---|
| 11. Interference with travel (without contract) | $5,000.00 (every 5 minutes) |
| 12. Temporary detention, obstruction, or restraint (without warrant) | $50,000.00 (per occurrence) |
| 13. Body / Clothing, or Bag Search | $500,000.00 (per occurrence) |
| 14. Handcuffing, being tied, or otherwise physically restrained | $5,000,000.00 (per occurrence) |
| 15. Taking / Theft / Confiscation / Deprivation of Property | $5,000.00 (per day plus cost of property) |
| 16. Jailed, Warehoused, Incarcerated, Imprisoned, Psychiatric Commitment | $5,000,000.00 (per day) |
| 17. Constructive Imprisonment | $5,000.00 (per day) |

| Signature, Endorsement, Autograph | Fee |
|---|---|
| 18. Autograph, Signature under threat, duress, or coercion | $50,000.00 (per signature) |

AFFIDAVIT AND NOTICE

| Assault, Battery, Physical Injury | Fee |
|---|---|
| 19. Assault [Menace] without Battery [Assault] | $50,000.00 (per occurrence) |
| 20. Assault [Menace] with Battery [Assault] | $500,000.00 (per occurrence ) |
| 21. Battery [Assault] resulting in physical injury (minor) | $5,000,000.00 (per occurrence) |
| 22. Battery [Assault] resulting in physical injury (major) | $50,000,000.00 (per occurrence) |
| 23. Battery [Assault] resulting in a permanent disability | $500,000,000.00 (per occurrence) |
| 24. Any acts which result in death | $5,000,000,000.00 |

**DNA or Body Fluid**

| | |
|---|---|
| 25. DNA, or Body Fluids of any kind | $500,000.00 (per sample) |

| Compelled Court Appearance, Arraignment, Hearings | Fee |
|---|---|
| 26. Court Appearance | $15,000.00 (per date) |

**Additional Fee and Counsel Fees**

In any action, proceedings, or process to collect the aforementioned fees, there is the additional assessed fee of $500.00 per hour plus all court cost; counsel fees; and expert fees.

ALL FEES ARE PAYABLE UPON DEMAND IN LAWFUL MONEY AS PER 12 U.S.C. § 411.  [MONEY OF EXCHANGE]
Wherefore all, in his independent and official capacity, have undeniable knowledge.

## IMPORTANT AND URGENT: NOTICE ABOUT THIS AFFIDAVIT

49. Your affiant avers, and you agree, that an un-rebutted affidavit stands as truth in commerce; and that an un-rebutted affidavit is acted upon as the judgment in commerce.

50. Your affiant avers, and you agree, that this affidavit shall be rebutted point-for-point; and that all rebuttal of claims; facts; averments; and fees contained within this sworn affidavit shall be in kind with fact by sworn affidavit; a failure to rebut this affidavit may implicate Fed. R. Civ. P. 56(a); and Article 32 of New York Civil Practice Law and Rules § 3213.

51. Your affiant avers, and you agree, that silence to this affidavit is a negative fraud; and shall, As A Matter Of Law, be acquiescence to all claims; facts; averments; and fees contained within this affidavit.

52. Your affiant avers, and you agree, that silence to this affidavit shall be an estoppel to all invocations of jurisdiction by any government (be they corporate or constitutional), or any agent thereof; and an estoppel to any rebuttal to any challenge to jurisdiction by your affiant in any case; or in any action made against your affiant by any government (be they corporate or constitutional), or any agent thereof.

53. Your affiant avers, and you agree, that silence to this affidavit shall be an estoppel to any; and all defense made in any action by your affiant to recover fees.

54. Your affiant avers, and you agree, that any reply; response; rebuttal; or otherwise, to this affidavit, and notice, shall be within sixty [60] days of receiving this sworn affidavit, or all shall be foreclosed from future rebuttal to any facts; claims; averments; or fees contained within this affidavit.

55. Your affiant avers, and you agree, that all communication; interrogatories; correspondence; response; answer; and rebuttal to this affidavit shall be by certified mail addressed to: Assata-Makeya: Rhodes, In care of: Assata Rhodes, 309 Lafayette Avenue, 21G, Kings County New York [1 1238-1275].

i affirm that all of the foregoing is true and correct. i affirm that i am of lawful age and am competent to make this affidavit. i hereby affix my own signature to all of the affirmations in this entire document with explicit reservation of all my unalienable rights and my specific common law right not to be bound by any contract or obligation which i have not entered into knowingly, willingly, voluntarily, and without misrepresentation, duress, or coercion.

i declare under penalty of perjury under the laws of New York, Article 210 of the New York State penal law, that the foregoing is true and correct; and that all statements made upon information and belief are believed to be true.

The use of notary below is for identification only, and such use does NOT grant any jurisdiction to anyone; or to any person.

FURTHER AFFIANT SAITH NOT.

Subscribed and sworn, without prejudice, and with all rights reserved,

Assata-Makeya: Rhodes,

Principal, by Special Appearance, in Propria Persona, proceeding Sui Juris.

My Hand and Mark as Subscriber          *Assata-Makeya: Rhodes*

THIS IS THE SEAL OF
Date: 8/9/2020 Common Law Seal:_____ ASSATA-MAKEYA: RHODES

AFFIDAVIT AND NOTICE

Pursuant to 28 U.S. Code §1746, i declare under penalty of perjury under the laws of the united states of America that the foregoing is true and correct.

Executed on ___8/9/2020___

Assata-Makeya: Rhodes

## NOTARY PUBLIC

STATE OF NEW YORK    )
                     : SS.:
COUNTY OF Kings      )

On this _____ day of _____, 2020, before me personally came Assata-Makeya: Rhodes, to me known and known to me to be the individual described in and who executed the foregoing instrument, and he acknowledged to me that he executed the same.

NOTARY PUBLIC

YOUNG ZAYNA
Notary Public State of New York
Commission No.01Y06190087
Qualified in Kings County
-ission Expires 07/14/20__

"Your affiant avers that your affiant retains all rights, and liberties, at all times and in all spaces and places, nunc pro tunc (now for then) from the time of natural birth and forevermore; and your affiant retains all rights not to be compelled to perform under any unrevealed contract, adhesion contract, or commercial agreement, that your affiant did not enter knowingly, voluntarily and intentionally."

47. Your affiant avers that paragraphs 45 and 46 of your affiant's **Affidavit of Status** states the following:

"Your affiant avers that your affiant reserves the right to assess fees for any and all violations of your affiant's rights; or compelled performance; and your affiant reserves the right to assess fees for any and all incidents and occurrences nunc pro tunc (in the past, in the present, in the future); time is no bar. This assessment of fees shall be compensation for compelled performance; or a remedy for violations, but not the sole remedy."

"Your affiant avers that any corporation; or natural person who, by coercion; threat; force; or demand, requires your affiant to perform; to produce material; to answer; to comply with, or to act in accord with any particular act as set forth in the Schedule of Fees, shall be assessed according to this schedule of fees."

48. Your affiant avers that your affiant has sustained injury; and was compelled to perform; and did provide value to respondents implicating your affiants Schedule of Fees; along with violations under United States Constitution; New York State Constitution; under the common law of New York; and under contract.

49. Your affiant avers that your affiant has sustained injury; and has been compelled to perform implicating your affiants Schedule of Fees; along with violations under United States Constitution; New York State Constitution; under the common law of New York; and under contract.

50. Your affiant avers that these claims arose beginning April 10, 2024, near 309 Lafayette Avenue in Kings County New York; and / or April 11, 2024, near 120 Schermerhorn Street in Kings County New York.

51. Your affiant avers that the value of this claim is approximately **$30,430,460.30** (thirty-million-four-hundred-thirty-thousand-four-hundred-sixty-dollars-and-thirty-cents); and that that amount is subject to change.

This is an "instrument for the payment of money only" within the meaning of Article 32 of New York Civil Practice Law Rule § 3213; an unconditional order to pay; a payment demand; a bill of exchange; and a negotiable instrument within the meaning of UCC § 3-104.

---

RF407195214US             **DRAFT - PAYMENT DEMAND**             **DRAFT**

| | |
|---|---|
| Date: | March 9, 2025 |
| Sum Due: | USD $44,553,454.80 |
| Drawer: | Assata-Makeya: Rhodes<br>c/o 309 Lafayette Avenue 21G<br>Kings County New York [11238] |
| Drawee: | Bradford Scott Lander, Comptroller<br>City of New York, Office of the Comptroller<br>One Center Street, Room 1225<br>New York, New York 10007 |
| Due at: | Sight |
| Accrued Interest: | Interest shall be compounded daily beginning March 11, 2025 at the statutory interest rate. |
| Pay to the Order of: | Assata-Makeya: Rhodes<br>c/o 309 Lafayette Avenue 21G<br>Kings County New York [11238] |
| For Value Received the Sum of: | FORTY-FOUR-MILLION-FIVE-HUNDRED-FIFTY-THREE-THOUSAND-FOUR-HUNDRED-FIFTY-FOUR-DOLLARS-AND-EIGHTY-CENTS ($44,553,454.80) |



by: _____
Drawn Without Recourse, Assata-Makeya: Rhodes

NOTICE:

This is an "instrument for the payment of money only" within the meaning of Article 32 of New York Civil Practice Law Rule § 3213; an unconditional order to pay; a payment demand; and a negotiable instrument within the meaning of UCC § 3-104.

This is a draft / payment demand / negotiable instrument / bill of exchange for benefits received / value received / compelled performance / damages and / or adverse action by agent(s) of the corporation City of New York; and City of New York Police Department; and Kings County District Attorney's Office.

**To satisfy this draft / payment demand / negotiable instrument / bill of exchange:** issue payment, in full, in lawful money, within 7 days via *USPS certified mail; or other trackable mail*, to: Assata-Makeya:Rhodes, In care of: 309 Lafayette Avenue, Suite 21G, Kings County New York [11238].

**Failure to satisfy this draft / payment demand / negotiable instrument / bill of exchange within 7 days shall be evidence of your wish to have Assata-Makeya:Rhodes pursue litigation against Respondents for the full face value of the instrument.**

**You may protest this draft by returning it within 7 days.**

**Failure to return this draft in protest within 7 days shall be deemed your acceptance of this draft for face value.**

**Assata-Makeya:Rhodes shall remain the Holder In Due Course of this draft.**

### NOTE: CONTACT YOUR LAW DEPARTMENT

**CITY OF NEW YORK; and CITY OF NEW YORK POLICE DEPARTMENT; and KINGS COUNTY DISTRICT ATTORNEY'S OFFICE; and Ebony Shawntay Willis; and Walter J. Mikowski; and Joseph Hickey; and Adrian A. Arav; and Gabriella Teresa Castellano; and Eric Gonzalez; and Bradford Scott Lander; and Eric Leroy Adams** shall be jointly and severally liable, both in their private and corporate capacities, for the full face value of this draft in a court of competent jurisdiction.

**Retention of this draft without protest shall be an estoppel to any defense in an action to recover the face value of this draft with interest.**

THIS NOTICE TO ONE IS NOTICE TO ALL

ALL ARE WITHOUT EXCUSE

This is an "instrument for the payment of money only" within the meaning of Article 32 of New York Civil Practice Law Rule § 3213; an unconditional order to pay; a payment demand; a bill of exchange; and a negotiable instrument within the meaning of UCC § 3-104.

---

RF407195262US                    **DRAFT - PAYMENT DEMAND**                    DRAFT

| | |
|---|---|
| Date: | January 27, 2025 |
| Sum Due: | USD $46,743.29 |
| Drawer: | Assata-Makeya: Rhodes<br>c/o 309 Lafayette Avenue 21G<br>Kings County New York [11238] |
| Drawee: | Bradford Scott Lander, Comptroller<br>City of New York, Office of the Comptroller<br>One Center Street, Room 1225<br>New York, New York 10007 |
| Due at: | Sight |
| Accrued Interest: | Interest shall be compounded daily beginning February 3, 2025 at the statutory interest rate. |
| Pay to the Order of: | Assata-Makeya: Rhodes<br>c/o 309 Lafayette Avenue 21G<br>Kings County New York [11238] |
| For Value Received the Sum of: | FORTY SIX THOUSAND SEVEN HUNDRED FORTY THREE DOLLARS AND TWENTY NINE CENTS ($46,743.29) |

by: _Assata-Makeya: Rhodes_
Drawn Without Recourse, Assata-Makeya: Rhodes

Page 3 of 24
Payment Demand; Affirmation;
and Notice of Claim - 1.27.2025
PAYMENT DEMAND
RF 407 195 262 US
9590 9402 7455 2055 3742 90

Page 325 of 345

NOTICE:

This is an "instrument for the payment of money only" within the meaning of Article 32 of New York Civil Practice Law Rule § 3213; an unconditional order to pay; a payment demand; and a negotiable instrument within the meaning of UCC § 3-104.

This is a draft / payment demand / negotiable instrument / bill of exchange for benefits received / value received / compelled performance / damages and / or adverse action by agent(s) of the corporation City of New York; and City of New York Police Department; and City of New York Police Department Property Clerk.

**To satisfy this draft / payment demand / negotiable instrument / bill of exchange:** issue payment, in full, in lawful money, within 7 days via *USPS certified mail; or other trackable mail*, to: Assata-Makeya:Rhodes, In care of: 309 Lafayette Avenue, Suite 21G, Kings County New York [11238].

**Failure to satisfy this draft / payment demand / negotiable instrument / bill of exchange within 7 days shall be evidence of your wish to have Assata-Makeya:Rhodes pursue litigation against Respondents for the full face value of the instrument.**

**You may protest this draft by returning it within 7 days.**

**Failure to return this draft in protest within 7 days shall be deemed your acceptance of this draft for face value.**

**Assata-Makeya:Rhodes shall remain the Holder In Due Course of this draft.**

### NOTE: CONTACT YOUR LAW DEPARTMENT

**CITY OF NEW YORK; and CITY OF NEW YORK POLICE DEPARTMENT; and Michael C. Blanda; and Jeffrey Clarke; and Richard Bacani Lovina; and Bradford Scott Lander; and Eric Leroy Adams shall be jointly and severally liable, both in their private and corporate capacities, for the full face value of this draft in a court of competent jurisdiction.**

**Retention of this draft without protest shall be an estoppel to any defense in an action to recover the face value of this draft with interest.**

THIS NOTICE TO ONE IS NOTICE TO ALL

ALL ARE WITHOUT EXCUSE

Page 4 of 24
Payment Demand; Affirmation; and Notice of Claim - 1.27.2025
PAYMENT DEMAND
RF 407 195 262 US
9590 9402 7455 2055 3742 90

Page 326 of 345

This is an "instrument for the payment of money only" within the meaning of Article 32 of New York Civil Practice Law Rule § 3213; an unconditional order to pay; a payment demand; a bill of exchange; and a negotiable instrument within the meaning of UCC § 3-104.

---

RF407195259US                    **DRAFT - PAYMENT DEMAND**                    DRAFT

| | |
|---|---|
| Date: | January 27, 2025 |
| Sum Due: | USD $386,567.29 |
| Drawer: | Assata-Makeya: Rhodes<br>c/o 309 Lafayette Avenue 21G<br>Kings County New York [11238] |
| Drawee: | Bradford Scott Lander, Comptroller<br>City of New York, Office of the Comptroller<br>One Center Street, Room 1225<br>New York, New York 10007 |
| Due at: | Sight |
| Accrued Interest: | Interest shall be compounded daily beginning February 3, 2025 at the statutory interest rate. |
| Pay to the Order of: | Assata-Makeya: Rhodes<br>c/o 309 Lafayette Avenue 21G<br>Kings County New York [11238] |
| For Value Received the Sum of: | THREE HUNDRED EIGHTY SIX THOUSAND FIVE HUNDRED THOUSAND SIXTY SEVEN DOLLARS AND TWENTY NINE CENTS ($386,567.29) |

by: _Assata-Makeya: Rhodes_
Drawn Without Recourse, Assata-Makeya: Rhodes

Page 3 of 24
Payment Demand; Affirmation; and Notice of Claim - 1.27.2025
RF 407 195 259 US
9590 9402 7455 2055 3743 99

PAYMENT DEMAND

Page 327 of 345

NOTICE:

This is an "instrument for the payment of money only" within the meaning of Article 32 of New York Civil Practice Law Rule § 3213; an unconditional order to pay; a payment demand; and a negotiable instrument within the meaning of UCC § 3-104.

This is a draft / payment demand / negotiable instrument / bill of exchange for benefits received / value received / compelled performance / damages and / or adverse action by agent(s) of the corporation City of New York; and City of New York Police Department.

**To satisfy this draft / payment demand / negotiable instrument / bill of exchange:** issue payment, in full, in lawful money, within 7 days via *USPS certified mail; or other trackable mail*, to: Assata-Makeya:Rhodes, In care of: 309 Lafayette Avenue, Suite 21G, Kings County New York [11238].

**Failure to satisfy this draft / payment demand / negotiable instrument / bill of exchange within 7 days shall be evidence of your wish to have Assata-Makeya:Rhodes pursue litigation against Respondents for the full face value of the instrument.**

**You may protest this draft by returning it within 7 days.**

**Failure to return this draft in protest within 7 days shall be deemed your acceptance of this draft for face value.**

**Assata-Makeya:Rhodes shall remain the Holder In Due Course of this draft.**

### NOTE: CONTACT YOUR LAW DEPARTMENT

**CITY OF NEW YORK; and CITY OF NEW YORK POLICE DEPARTMENT; and Kasey M. Lazaro; and Stephanie F. Malvica; and Ali Walker; and Bradford Scott Lander; and Eric Leroy Adams shall be jointly and severally liable, both in their private and corporate capacities, for the full face value of this draft in a court of competent jurisdiction.**

**Retention of this draft without protest shall be an estoppel to any defense in an action to recover the face value of this draft with interest.**

THIS NOTICE TO ONE IS NOTICE TO ALL

ALL ARE WITHOUT EXCUSE

Page 4 of 24
Payment Demand; Affirmation; and Notice of Claim - 1.27.2025
PAYMENT DEMAND
RF 407 195 259 US
9590 9402 7455 2055 3743 99

Page 328 of 345



**THE CITY OF NEW YORK**
**OFFICE OF THE COMPTROLLER**
**CLAIMS AND ADJUDICATIONS**
**1 CENTRE STREET  ROOM 1200**
**NEW YORK, N.Y.  10007-2341**

WWW.COMPTROLLER.NYC.GOV

015 - 151

**Brad Lander**
**COMPTROLLER**

| | |
|---|---|
| Date: | 07/30/2024 |
| Claim No: | 2024PI023340 |
| RE: | Acknowledgment of Claim |
| Your Claim/Policy#: | |

ASSATA MAKEYA RHODES
309 LAFAYETTE AVENUE 21G
BROOKLYN, NY 11238

Dear Claimant:

We acknowledge receipt of your claim, which has been assigned the claim number shown above. Please refer to this claim number in any correspondence or inquiry you may have with our office.

We will do our best to investigate and, if possible, settle your claim. However, if we are unable to resolve your claim, **any lawsuit against the City must be started within one year and ninety days from the date of the occurrence**.

If you have any questions regarding your claim, you may contact us at 212-669-4729 for claims involving personal injury.

If you need to communicate in a language other than English, please let us know, and we will make translation services available to you.

Sincerely,

Bureau of Law & Adjustment



www.comptroller.nyc.gov

**THE CITY OF NEW YORK**
**OFFICE OF THE COMPTROLLER**
**CLAIMS AND ADJUDICATIONS**
**1 CENTRE STREET  ROOM 1200**
**NEW YORK, N.Y.  10007-2341**

_____

**Brad Lander**
**COMPTROLLER**

015 - 151

Date:        2/13/2025
Claim Number:  2025PI004834
RE:          Acknowledgment of Claim
Your Claim/Policy#:

**ASSATA MAKEYA RHODES**
**309 LAFAYETTE AV APT 21G**
**KINGS NY 11238**

Dear Claimant:

We acknowledge receipt of your claim, which has been assigned the claim number shown above. Please refer to this claim number in any correspondence or inquiry you may have with our office.

We will do our best to investigate and, if possible, settle your claim. However, if we are unable to resolve your claim, **any lawsuit against the City must be started within one year and ninety days from the date of the occurrence.**

If you have any questions regarding your claim, you may contact us at 212-669-4729 for claims involving personal injury.

If you need to communicate in a language other than English, please let us know, and we will make translation services available to you.

Sincerely,

Bureau of Law & Adjustment



www.comptroller.nyc.gov

**THE CITY OF NEW YORK**
**OFFICE OF THE COMPTROLLER**
**CLAIMS AND ADJUDICATIONS**
**1 CENTRE STREET  ROOM 1200**
**NEW YORK, N.Y.  10007-2341**

**Brad Lander**
**COMPTROLLER**

015 - 151

Date:      2/14/2025
Claim Number:  2025PD005215
RE:        Acknowledgment of Claim
Your Claim/Policy#:

ASSATA MAKEYA RHODES
309 LAFAYETTE AV APT 21G
BROOKLYN NY 11238

Dear Claimant:

We acknowledge receipt of your claim, which has been assigned the claim number shown above. Please refer to this claim number in any correspondence or inquiry you may have with our office.

We will do our best to investigate and, if possible, settle your claim. However, if we are unable to resolve your claim, **any lawsuit against the City must be started within one year and ninety days from the date of the occurrence.**

If you have any questions regarding your claim, you may contact us at 212-669-8750 for property damage claims.

If you need to communicate in a language other than English, please let us know, and we will make translation services available to you.

Sincerely,

Bureau of Law & Adjustment



www.comptroller.nyc.gov

**THE CITY OF NEW YORK**
**OFFICE OF THE COMPTROLLER**
**CLAIMS AND ADJUDICATIONS**
**1 CENTRE STREET  ROOM 1200**
**NEW YORK, N.Y.  10007-2341**

Brad Lander
**COMPTROLLER**

015 - 151

Date:      2/6/2025
Claim Number:  2025PD003862
RE:      Acknowledgment of Claim
Your Claim/Policy#:

ASSATA MAKEYA RHODES
309 LAFAYETTE AV APT 21G
BROOKLYN NY

Dear Claimant:

We acknowledge receipt of your claim, which has been assigned the claim number shown above. Please refer to this claim number in any correspondence or inquiry you may have with our office.

We will do our best to investigate and, if possible, settle your claim. However, if we are unable to resolve your claim, **any lawsuit against the City must be started within one year and ninety days from the date of the occurrence.**

If you have any questions regarding your claim, you may contact us at 212-669-8750 for property damage claims.

If you need to communicate in a language other than English, please let us know, and we will make translation services available to you.

Sincerely,

Bureau of Law & Adjustment

# NYPD / KCDA Seized Property Inventory

| | Item Description | Make / Mfr. / Brand | QTY | Cost (per item) | Value | Serial Number / Identifier | NYPD Package Number |
|---|---|---|---|---|---|---|---|
| 1 | RIFLE; M&P 15-22; CALIBER: 22; COLOR: MATTE BLACK | SMITH & WESSON | 1 | $636.12 | $1,000.00 | JAS7577 | 1855492 |
| 2 | Scope | N/A | 1 | $35.90 | $60.00 | N/A | 1855492 |
| 3 | Light | N/A | 1 | | | N/A | 1855492 |
| 4 | 300 CATRIDGE BOX OF AMMUNITION; CALIBER: 22 | CCI | 2 | $39.99 | $150.00 | N/A | 1855492 |
| 5 | RIFLE; MODEL: RB22; CALIBER: 22; COLOR: BLACK | ROSSI USA | 1 | $252.00 | $400.00 | 7CB053021R | 1885493 |
| 6 | Sling | N/A | 1 | | | N/A | 1885493 |
| 7 | BOX OF 250 CARTRIDGES; CALIBER: 22 | AGUILA | 2 | $43.99 | $150.00 | N/A | 1885493 |
| 8 | SHOTGUN: MOOEL: 510 CALIBER: BLACK; SLING ATTACHED | MOSSBERG | 1 | $513.00 | $1,000.00 | V1094354 | 1855499 |
| 9 | CARTRIDGE; CALIBER: 410G; ATTACHED TO TACTICAL BELT | AMERICAN TACTICAL | 20 | $40 | $100.00s | N/A | 1855499 |
| 10 | CARTRIDGE 9MM; CALIBER: 9MM; IN MEDIUM ZIP LOCK BAG; 48 count | N/A | 1 | $96.00 | $150 | N/A | 1300923898 |
| 11 | 500 count box of cartridges; CALIBER: 22; | ARMSCOR | 2 | $39.99 | $100.00 | N/A | 1300923898 |
| 12 | 100 count box of cartridges; CALIBER: 22; CLEAR BOX OF AMMUNITION | BPR PERFORMANCE RIMFIRE | 1 | $41.99 | $100.00 | N/A | 1300923898 |
| 13 | 50 count box of CARTRIDGES; CALIBER: 22; RE TRACER AMMUNITION | RED TRACER | 2 | $25.00 | $100.00 | N/A | 1300923898 |
| 14 | 100 BOX of CARTRIDGES; CALIBER: 22; CLEAR PLASTIC CONTAINER | MINI MAG | 2 | $13.00 | $50.00 | N/A | 1300923898 |
| 15 | 454 count box of cartridges; CALIBER: 22 | WILDCAT | 1 | $113.50 | $160.00 | N/A | 1300923898 |
| 16 | .22LR MAGAZINE; COLOR: BLACK; | M&P | 4 | $34.95 | $200.00 | 22188143379 | 1300996218 |
| 17 | SCOPE; COLOR: BLACK | N/A | 1 | $35.90 | $60.00 | N/A | 1300996218 |
| 18 | Flashlight; Color: Black | N/A | 1 | $16.32 | $30.00 | N/A | 1300996218 |
| 19 | Batteries in plastic container | N/A | 2 | $7.61 | $20.00 | N/A | 1300996218 |
| 20 | .22LR Magazines; Black | N/A | 5 | $32.00 | $600.00 | N/A | 1300996218 |
| 21 | XSI-BL-22 BATTERY; COLOR: BLACK; IN BLACK POUCH; POUCH ENCLOSED IN CLEAR ZIPLOC BAG | N/A | 1 | $39.99 | $100.00 | N/A | 1300996218 |

| | Item Description | Make / Mfr. / Brand | QTY | Cost (per item) | Value | Serial Number / Identifier | NYPD Package Number |
|---|---|---|---|---|---|---|---|
| 22 | REDTOP. 410 SNAPCAPS; COLOR: RED | TIPTON | 6 | | | N/A | 1300996218 |
| 23 | .22LR SNAP CAPS; COLOR: MULTICOLORED | STEELWORX | 12 | | | N/A | 1300996218 |
| 24 | Clear, medium, resealable bags | N/A | 13 | | | N/A | 1300996218 |
| 25 | CR2032 LITHIUM BATTERIES | Amazon | 5 | $19.78 | $50.00 | N/A | 1300996218 |
| 26 | Black laser | N/A | 1 | | | N/A | 1300996218 |
| 27 | CARTRIDGE RED LASER BORE SIGHT; COLOR: Chrome / MULTICOLORED; IN SMALL resealable bags WITH PAPER | N/A | 1 | | | N/A | 1300996218 |
| 28 | NEEDLE OILER; COLOR: BLACK; IN SMALL, resealable bag | CLENZOIL | 1 | $11.00 | $20.00 | 893791002618 | 1300996218 |
| 29 | BROWN BOX WITH WHITE PLASTIC INSIDE; COLOR: BEIGE | N/A | 1 | | | N/A | 1300996218 |
| 30 | Resealable bag CONTAINING MISC PAPERS; COLOR: CLEAR | N/A | 1 | | | N/A | 1300996218 |
| 31 | COLOR: GREEN CABLE LOCK AND 2 KEYS ATTACHED; MISC PAPERS; enclosed in PLASTIC resealable bag | N/A | 1 | $23.98 | $50.00 | N/A | 1300996218 |
| 32 | GUNLOCK CONTAINING 2 KEYS AND MISC PAPERS; COLOR: BLACK | ROSSI | 1 | $10.00 | $50.00 | N/A | 1300996218 |
| 33 | Plastic box; color: black | N/A | 1 | $149.99 | $200.00 | N/A | 1859137 |
| 34 | Black rifle case; Canvas | N/A | 1 | $180.00 | $250.00 | N/A | 1859137 |
| 35 | Plastic box; color: black | N/A | 2 | $30.99 | $100.00 | N/A | 1859137 |
| 36 | 410 cartridges; color: chrome; contained in black pouch | Sterling | 88 | $31.99 | $400.00 | N/A | 1300923900 |
| 37 | 410G CARTRIDGES; MODEL: SUPER X; contained INSIDE BOX | WINCHESTER | 5 | $27.99 | $200.00 | N/A | 1300923900 |
| 38 | .410G CARTRIDGES INSIDE BOX | N/A | 8 | $27.99 | $200.00 | N/A | 1300923900 |
| 39 | SMALL AMMO POUCHS | N/A | 2 | | | N/A | 1300923900 |
| 40 | .410G CARTRIDGES; Contained INSIDE BLACK NET TACTICAL POUCH | Sterling | 130 | $31.99 | $500 | N/A | 1300923900 |
| 41 | 410 CARDRIDGE; Color: Red | N/A | 4 | $8.00 | $20.00 | N/A | 1205079323 |
| 42 | .410 CARTRIDGE; COLOR: WHITE | AMERICAN TACTICAL | 4 | $8.00 | $20.00 | N/A | 1205079323 |
| 43 | .410 CARTRIDGE; ATTACHED TO BLACK POUCH | AMERICAN TACTICAL | 8 | $16.00 | $40.00 | N/A | 1205079323 |
| 44 | .410 CATRIDGES; Color: Red; ATTACHED TO BLACK POUCH | N/A | 8 | $16.00 | $40.00 | N/A | 1205079323 |

| | Item Description | Make / Mfr. / Brand | QTY | Cost (per item) | Value | Serial Number / Identifier | NYPD Package Number |
|---|---|---|---|---|---|---|---|
| 45 | BLACK AMMO POUCHES | N/A | 2 | - | - | N/A | 1205079323 |
| 46 | BLACK PLASTIC AMMO POUCH | N/A | 1 | - | - | N/A | 1205079323 |
| 47 | 10 ROUND; PLASTIC MAGAZINE | SMITH AND WESSON | 1 | $32.00 | $50.00 | N/A | 1205079323 |
| 48 | DAGGER; COLOR: CHROME/BLACK; Knife with metal sheath | N/A | 1 | $48.60 | $60.00 | N/A | 1300923876 |
| 49 | DAGGER; COLOR: CHROME/BLACK; Knife with nylon sheath | N/A | 1 | $48.60 | $60.00 | N/A | 1300923876 |
| 50 | DAGGER; COLOR: CHROME/BLACK; plastic sheath | N/A | 1 | $48.60 | $60.00 | N/A | 1300923876 |
| 51 | KNIFE; COLOR: GOLD; DESCRIPTION: FOLDING KNIFE | N/A | 1 | $59.99 | $100.00 | N/A | 1300923876 |
| 52 | KNIFE; COLOR: MULTICOLORED; DESCRIPTION: THREE BLADED FOLDING KNIFE | N/A | 1 | $36.99 | $50.00 | N/A | 1300923876 |
| 53 | Heirloom FORK / KNIFE COMBO WITH WOODEN SHEATH; COLOR: CHROME/BROWN | N/A | 1 | $600.00 | $1,000.00 | N/A | 1300923876 |
| 54 | NYLON POUCH; COLOR: BLACK | N/A | 3 | - | - | N/A | 1300923876 |
| 55 | Resealable bags; COLOR: CLEAR | N/A | 8 | - | - | N/A | 1300923876 |
| 56 | $8,500.00 in Federal Reserve Notes [various denominations] | N/A | - | - | $8,500 | N/A | N/A |
| 57 | $100.00 Federal Reserve Notes | N/A | 200 | $100 | $20,000 | N/A | N/A |
| 58 | RIFLE; M&P 15-22; CALIBER: 22; COLOR: MATTE BLACK | SMITH & WESSON | 1 | $636.12 | $1,000.00 | N/A | N/A |
| 59 | Stylus 1 | Olympus | 1 | $700.00 | $1,000.00 | N/A | N/A |
| 60 | .22LR Magazines; 10 round capacity; black | M&P | 2 | $32.00 | $100.00 | 22188143379 | N/A |
| 61 | Pocket Handheld Camera | DJI Osmo | 1 | $400.00 | $400.00 | N/A | N/A |
| 62 | Mavic Drone | DJI | 1 | $1,800.00 | $2,000.00 | N/A | N/A |
| 63 | 500 count box of cartridges; CALIBER: 22; | ARMSCOR | 6 | $39.99 | $300.00 | N/A | N/A |
| 64 | Butcher Knives Kit; 3 knives; black case | Outdoor Edge | | $39.99 | $100.00 | N/A | N/A |
| 65 | NEEDLE OILER; COLOR: BLACK; IN SMALL, resealable bag | CLENZOIL | 1 | $11.00 | $20.00 | 893791002618 | N/A |
| 66 | Utility Knife | Outdoor Edge | 1 | $39.99 | $100.00 | N/A | N/A |
| 67 | Guncare bag; blag nylon bag; various cleaning tools; brushes | CLENZOIL | 1 | $99.00 | $200.00 | N/A | N/A |
| 68 | Wave utility knife; color: chrome; sheath | Leatherman | 1 | $120.00 | $200.00 | N/A | N/A |
| 69 | Arc utility knife; color: black/silver; sheath | Leatherman | 1 | $240.00 | $300.00 | N/A | N/A |

| | Item Description | Make / Mfr. / Brand | QTY | Cost (per item) | Value | Serial Number / Identifier | NYPD Package Number |
|---|---|---|---|---|---|---|---|
| 70 | RB22 10 round magazine | ROSSI | 4 | $41.95 | $250.00 | 754908212408 | N/A |
| 71 | 500 round box of cartridges; 40GR; WW22LRB; CALIBER/GUAGE: 22 LR; | WINCHESTER | 1 | $54.95 | $100.00 | 20892104181 | N/A |
| 72 | 100 count box of cartridges; CALIBER: 22; 22LR | BPR PERFORMANCE RIMFIRE | 1 | $41.99 | $100.00 | 20892103597 | N/A |
| 73 | Defense Ammunition; 410 gauge | Hornady Critical | 60 | $120.00 | $200.00 | 20892103597 | N/A |
| | **TOTAL** | | **595** | **$7,783.82** | **$42,820.00** | | |





















**NYPD Property Clerk Invoice**

Invoice No: 3091729010

| Approved | Date | Name | Tax No. | Command | Date | Time |
|---|---|---|---|---|---|---|
| Accepted By | DT2 | MINOWSKI, WALTER J | 938784 | SPECIAL INVESTIGATIONS DIV 94-59-2574 | 71:58 |
| Inventory Officer | DT3 | WELLS, EBONY S | 947953 | SPECIAL INVESTIGATIONS DIV 84-19-2574 | 17:07 |
| | | | | | | |
| Approved By | SDS | COLLINS, CRYSTAL D | 51/058 | SPECIAL INVESTIGATIONS DIV 94700724 | 20-4J |



**NYPD Property Clerk Invoice**

Invoice No: 3091729025

Property Clerk's copy
printed 03/27/2024 10:56

ECD Storage No
24W024095
Page No 2 of 2

**NYPD Property Clerk Invoice**

Invoice No: 3091729025

Inventory Command
88TH PRECINCT

Arrest Date
04/10/2024

Property Type
FIREARM

OPEN

ARREST EVIDENCE

| Officer | Rank | Name | Tax No. | Command |
|---|---|---|---|---|
| Inventory Officer | DT3 | WELLS, EBONY S | 947953 | SPECIAL INVESTIGATIONS DIV |
| Inventory Officer | DT2 | MINOWSKI, WALTER J | 938784 | SPECIAL INVESTIGATIONS DIV |
| Investigating Officer | N/A | | | |

| Item | Total QTY | Property | | Estimated Value | Reg No | QTY | Disposition |
|---|---|---|---|---|---|---|---|
| 1 | 1 | 9XX GUN | | | 1309478345 | 1 | |
| | | MAKE: UNKNOWN CALIBER: X SERIAL NO: EXISTS: YES LEAD SEAL NO: 547739 | | | | | |
| 2 | 1 | AIR/GO PISTOL | | | 1309478345 | 1 | |
| | | MAKE: WALTHER USA CALIBER: X SERIAL NO: EXISTS: | | | | | |
| | | | | Total Cash Value | 0.00 | | |

REMARKS
928784 04/10/2024 21:20 : AT TPO ABOVE PROPERTY IS BEING VOUCHERED AS ARREST EVIDENCE
947953 04/10/2024 22:46 : Invoice Approved By 517053

BKLYN OFFICE

Property Clerk Copy
printed 04/27/2024 10:14

PCD Storage No
24K021578
Page No 1 of 2













**NYPD Property Clerk Invoice**

Invoice No: 3091729025

| Approved | Date | Name | Tax No. | Command | Date | Time |
|---|---|---|---|---|---|---|
| Accepted By | DT2 | MINOWSKI, WALTER J | 938784 | SPECIAL INVESTIGATIONS DIV 94170524 | 21:59 |
| Inventory Officer | DT3 | WELLS, EBONY S | 947953 | SPECIAL INVESTIGATIONS DIV 94-19-0524 | 22:47 |
| | | | | | | |
| Approved By | SDS | COLLINS, CRYSTAL D | 517305 | SPECIAL INVESTIGATIONS DIV 94170524 | 22:45 |

Property Clerk Copy
printed 03/27/2024 11:14

PCD Storage No
24K021578
Page No 2 of 2

**NYPD Property Clerk Invoice**

Invoice No: 3091729039

Inventory Command
88TH PRECINCT

Invoice Date
04/10/2024

Property Type
FIREARM

OPEN

ARREST EVIDENCE

| Officer | Rank | Name | Tax No. | Command |
|---|---|---|---|---|
| Inventory Officer | DT3 | WELLS, EBONY S | 947953 | SPECIAL INVESTIGATIONS DIV |
| Inventory Officer | DT2 | MINOWSKI, WALTER J | 938784 | SPECIAL INVESTIGATIONS DIV |
| Investigating Officer | N/A | | | |
| On Scene Supervisor | N/A | | | |
| Officer Processing | N/A | | | |

| Item | Total QTY | Property | | Estimated Value | Reg No | QTY | Disposition |
|---|---|---|---|---|---|---|---|
| 1 | 48 | CARTRIDGE | | | 1309498325 | 48 | |
| | | MAKE: NINE CALIBER: 9MM SERIAL NO: EXISTS: YES DESCRIPTION: IN MEDIUM ZIPLOC | | | | | |
| 2 | 1500 | CARTRIDGE | | | 1309498325 | 1500 | |
| | | MAKE: ARMSCOR CALIBER: 22 SERIAL NO: EXISTS: YES DESCRIPTION: 3 BOXES CONTAINING 10 BOXES EACH, EACH BOX CONTAINS 50 CARTRIDGES EACH | | | | | |
| 3 | 300 | CARTRIDGE | | | 1309498205 | 300 | |
| | | MAKE: 9MM BAG CALIBER: 22 SERIAL NO: EXISTS: YES DESCRIPTION 3 CLEAR PLASTIC CONTAINERS CONTAINING 100 CARTRIDGES EACH | | | | | |
| 4 | 200 | CARTRIDGE | | | 1309498325 | 200 | |
| | | MAKE: 99 PERFORMANCE RIMFIRE CALIBER: 22 SERIAL NO: EXISTS: YES DESCRIPTION 2 PLASTIC CONTAINERS CONTAINING 100 CARTRIDGES IN EACH : ZIPLR | | | | | |
| 5 | 100 | CARTRIDGE | | | 1309498325 | 100 | |
| | | MAKE: RED TRACER CALIBER: 22 SERIAL NO: EXISTS: YES DESCRIPTION: 1 BOAD B FILLED 48 CARTRIDGE IN EACH BOX | | | | | |
| 6 | 250 | CARTRIDGE | | | 1309498205 | 250 | |
| | | MAKE: 4SOM A AMMUNITION CALIBER: 22 SERIAL NO: EXISTS: YES | | | | | |
| 7 | 454 | CARTRIDGE | | | 1309498305 | 454 | |
| | | MAKE: WINCHESTER WHITE X4 CALIBER: 32 SERIAL NO: EXISTS: YES DESCRIPTION: 1 BOX CONTAINING 454 CARTRIDGES 22LR | | | | | |
| 8 | 200 | CARTRIDGE | | | 1309498325 | 200 | |
| | | MAKE: M9 TACTICAL CALIBER: 32 SERIAL NO: EXISTS: YES DESCRIPTION: 1 BOX CONTAINING 200 CARTRIDGES 22LR | | | | | |
| | | | | Total Cash Value | 0.00 | | |

REMARKS
947055 04/10/2024 21:33 : AT THE ABOVE ITEMS WERE VOUCHERED FOR ARREST EVIDENCE
517055 04/10/2024 22:19 : Invoice Approved By 517055

Property Clerk Copy
printed 04/10/2024 23:40

PCD Storage No
Page No 1 of 2



Property Clerk Copy
printed 03/27/2024 11:14

PCD Storage No
24K021578
Page No 1 of 2



 

NYPD Property Clerk Invoice

Invoice No. 3001729039

**86TH PRECINCT**

OPEN

ARREST EVIDENCE





Invoice No. 3001729039

Property Clerk Copy
printed 04/10/2024 23:26

PCD Storage No.
--
Page No 2 of 7

BKLN OFFICE

 

Invoice No. 3001729067

Property Clerk Copy
printed 17/21/2024 16:22

PCD Storage No.
24K021577
Page No 1 of 2



NYPD Property Clerk Invoice

Invoice No. 3001729047



Invoice No. 3001729047

Property Clerk Copy
printed 08/07/2024 19:25

PCD Storage No.
24K021577
Page No 2 of 2

NYPD Property Clerk Invoice

Invoice No. 3001729067

**88TH PRECINCT**

GENERAL PROPERTY

OPEN

ARREST EVIDENCE

Invoice No. 3001729067

Property Clerk Copy
printed 04/15/2024 15:03

PCD Storage No.
--
Page No 1 of 2

## NYPD Property Clerk Invoice

Invoice No. 3001733138

Related Invoices: N/A

| Approvals | Rank | Name | Tax No. | Command | Date | Time |
|---|---|---|---|---|---|---|
| Entered By | DT2 | MIKOWSKI, WALTER J | 923794 | SPECIAL INVESTIGATIONS DIV | 04/18/2024 | 14:59 |
| Invoicing Officer | DT2 | MIKOWSKI, WALTER J | 923794 | SPECIAL INVESTIGATIONS DIV | 04/18/2024 | 15:30 |
| Approved By | SDS | FARRELL, KEVIN P | 919022 | SPECIAL INVESTIGATIONS DIV | 04/18/2024 | 15:50 |

Invoice No. 3001733138 — Property Clerk Copy, printed: 06/27/2024 10:49 — PCD Storage No. 24K032666 — Page No 2 of 2

## NYPD Property Clerk Invoice

Invoice No. 3001733146

Invoicing Command: 88TH PRECINCT — Invoice Status: OPEN

Invoice Date: 04/18/2024 — Property Type: FIREARM — Property Category: ARREST EVIDENCE

| Officers | Rank | Name | Tax No. | Command |
|---|---|---|---|---|
| Invoicing Officer | DT2 | MIKOWSKI, WALTER J | 923794 | SPECIAL INVESTIGATIONS DIV |
| Arresting Officer | DT2 | MIKOWSKI, WALTER J | 923794 | SPECIAL INVESTIGATIONS DIV |
| Investigating Officer | N/A | | | |
| Det Squad Supervisor | N/A | | | |
| CRIMECT Processing | N/A | | | |

CRIMECT Run No. 829

| Item | Total QTY | Article | Estimated Value | Pkg. No. | QTY | Disposition |
|---|---|---|---|---|---|---|
| 1 | 1 | RIFLE MAKE: ROSSI USA MODEL: RS22 CALIBER: 22 LR COLOR: BLACK SERIAL NO: TCB003021R SERIAL NO. EXISTS: YES DESCRIPTION: SLING ATTACHED | | 1385493 | 1 | |
| 2 | 232 | CARTRIDGE MAKE: AGUILA CALIBER: 22 SERIAL NO. EXISTS: YES DESCRIPTION: BOX OF 230 CARTRIDGES | | 1385493 | 230 | |

Total Cash Value 0.00

Remarks

923794 04/18/2024 15:22 : AT TPO ABOVE PROPERTY IS BEING VOUCHERED AS ARREST EVIDENCE

919022 04/18/2024 15:50 : Invoice Approved By 919022

933011 05/01/2024 09:14 : Additional Remarks - (2) cartridges from PCI item # 2 are retained at the Firearms Analysis Section.

| Date of Incident | Penal Code/Description | Crime Classification | Related To | Receipt |
|---|---|---|---|---|
| 04/18/2024 | 265.02/CRIM POSS WEAPON | FELONY | | |
| 04/18/2024 | CRIM POSS WEAP 3RD-ASSLT RIFLE | FELONY | N/A | N/A |

| | Prisoner's Name | D.O.B. | Age | Address | Arrest No. | NYSID No. |
|---|---|---|---|---|---|---|
| 1 | RHODES, ASSATA | [redacted] | | 300 LAFAYETTE AVENUE 2ND BROOKLYN, NY | K34623473 | |

Owner: RHODES, ASSATA — 300 LAFAYETTE AVENUE 2ND BROOKLYN, NY

Circumstances: PENY

Complaint No: 2024-088-001363

Related Comp. No.: N/A

Aided No.: N/A

Accident No.: N/A

BKLYN OFFICE

Invoice No. 3001733146 — Property Clerk Copy — PCD Storage No. 24K032665 — Page No 1 of 2

## NYPD Property Clerk Invoice

Invoice No. 3001733148

| Approvals | Rank | Name | Tax No. | Command | Date | Time |
|---|---|---|---|---|---|---|
| Entered By | DT2 | MIKOWSKI, WALTER J | 923794 | SPECIAL INVESTIGATIONS DIV | 04/18/2024 | 13:22 |
| Invoicing Officer | DT2 | MIKOWSKI, WALTER J | 923794 | SPECIAL INVESTIGATIONS DIV | 04/18/2024 | 15:43 |
| Approved By | SDS | FARRELL, KEVIN P | 919022 | SPECIAL INVESTIGATIONS DIV | 04/18/2024 | 15:50 |

Invoice No. 3001733148 — Property Clerk Copy, printed: 06/27/2024 10:45 — PCD Storage No. 24K032665 — Page No 2 of 2

## NYPD Property Clerk Invoice

Invoice No. 3001733162

Invoicing Command: 88TH PRECINCT — Invoice Status: OPEN

Invoice Date: 04/18/2024 — Property Type: FIREARM — Property Category: ARREST EVIDENCE

| Officers | Rank | Name | Tax No. | Command |
|---|---|---|---|---|
| Invoicing Officer | DT2 | MIKOWSKI, WALTER J | 923794 | SPECIAL INVESTIGATIONS DIV |
| Arresting Officer | DT2 | MIKOWSKI, WALTER J | 923794 | SPECIAL INVESTIGATIONS DIV |
| Investigating Officer | N/A | | | |
| Det Squad Supervisor | N/A | | | |
| CRIMECT Processing | N/A | | | |

CRIMECT Run No. 829

| Item | Total QTY | Article | Estimated Value | Pkg. No. | QTY | Disposition |
|---|---|---|---|---|---|---|
| 1 | 43 | CARTRIDGE MAKE: 9MM CALIBER: 9MM SERIAL NO. EXISTS: YES DESCRIPTION: IN MEDIUM ZIP LOCK BAG | | 1300023298 | 43 | |
| 2 | 1000 | CARTRIDGE MAKE: ARMSCOR CALIBER: 22 SERIAL NO. EXISTS: YES DESCRIPTION: 2 ARMSCOR BOXES CONTAINING 500 EACH | | 1300023298 | 1000 | |
| 3 | 200 | CARTRIDGE MAKE: GPR PERFORMANCE RIMFIRE CALIBER: 22 SERIAL NO. EXISTS: YES DESCRIPTION: 2 CLEAR BOXES OF AMMUNITION CONTAINING 100 CATRIDGES IN EACH BOX | | 1300023298 | 200 | |
| 4 | 100 | CARTRIDGE MAKE: RED TRACER CALIBER: 22 SERIAL NO. EXISTS: YES DESCRIPTION: 2 BOXES OF RE TRACER AMMUNITION FILLED WITH 50 CARTRIDGES IN EACH BOX | | 1300023298 | 100 | |
| 5 | 200 | CARTRIDGE MAKE: MINI MAG CALIBER: 22 SERIAL NO. EXISTS: YES DESCRIPTION: 2 CLEAR PLASTIC CONTAINERS CONTAINING 100 CARTRIDGES EACH | | 1300023298 | 200 | |
| 6 | 454 | CARTRIDGE MAKE: WILDCAT CALIBER: 22 SERIAL NO. EXISTS: YES DESCRIPTION: 1 BOX CONTAINING 454 CARTRIDGES | | 1300023298 | 454 | |

Total Cash Value 0.00

Remarks

923794 04/18/2024 15:43 : AT TPO ABOVE PROPERTY IS BEING VOUCHERED AS ARREST EVIDENCE

919022 04/18/2024 15:57 : Invoice Approved By 919022

| Date of Incident | Penal Code/Description | Crime Classification | Related To | Receipt |
|---|---|---|---|---|
| 04/18/2024 | 265.02/CRIM POSS WEAPON | FELONY | | |
| 04/18/2024 | CRIM POSS WEAP 3RD-ASSLT RIFLE | FELONY | N/A | N/A |

BKLYN OFFICE

Invoice No. 3001733162 — Property Clerk Copy, printed: 06/27/2024 10:41 — PCD Storage No. 24K021607 — Page No 1 of 2

## NYPD Property Clerk Invoice

Invoice No. 3001733162

| Prisoner's Name | D.O.B. | Address | NYSID No. |
| --- | --- | --- | --- |
| 1 RHODES, ASSATA | [redacted] | 309 LAFAYETTE AVENUE 21G BROOKLYN, NY | K24629473 |

Owner: RHODES, ASSATA — 309 LAFAYETTE AVENUE 21G BROOKLYN, NY

Complainant: PSNY

Complaint No.: 2024-088-001362

Related: N/A

Related: N/A

Related Invoices: N/A

| Approvals | Rank | Name | Tax No. | Command | Date | Time |
| --- | --- | --- | --- | --- | --- | --- |
| Invoiced By | DT2 | MIKOWSKI, WALTER J | 928784 | SPECIAL INVESTIGATIONS DIV | 04/18/2024 | 15:49 |
| Arresting Officer | DT2 | MIKOWSKI, WALTER J | 928784 | SPECIAL INVESTIGATIONS DIV | 04/18/2024 | 16:02 |
| Approved By | SDS | FARRELL, KEVIN P | 919022 | SPECIAL INVESTIGATIONS DIV | 04/18/2024 | 16:07 |

Invoice No. 3001733162 — Property Clerk Copy — PCO Storage No. 24K021607 — Page No 2 of 2

## NYPD Property Clerk Invoice

Invoice No. 3001733171

83TH PRECINCT — OPEN

04/18/2024 — FIREARM — ARREST EVIDENCE

| Officers | Rank | Name | Tax No. | Command |
| --- | --- | --- | --- | --- |
| Invoicing Officer | DT2 | MIKOWSKI, WALTER J | 928784 | SPECIAL INVESTIGATIONS DIV |
| Arresting Officer | DT2 | MIKOWSKI, WALTER J | 928784 | SPECIAL INVESTIGATIONS DIV |
| | N/A | | | |
| | N/A | | | |
| | N/A | | | |

| Item | Total Qty | Article | Pkg No. | Qty |
| --- | --- | --- | --- | --- |
| 1 | 50 | CARTRIDGE MAKE: STERLING CALIBER: 410G SERIAL NO. EXISTS: YES DESCRIPTION: INSIDE BLACK POUCH | | 50 |
| 2 | 5 | CARTRIDGE MAKE: WINCHESTER MODEL: SUPER X CALIBER: 410G SERIAL NO. EXISTS: YES DESCRIPTION: 5 CARTRIDGES INSIDE BOX | | 5 |
| 3 | 8 | CARTRIDGE MAKE: UNKNOWN CALIBER: 410G SERIAL NO. EXISTS: YES DESCRIPTION: 8 CARTRIDGES INSIDE BOX | | 8 |
| 4 | 2 | OTHER PARTS & ACCESSORIES MAKE: UNKNOWN SERIAL NO. EXISTS: YES DESCRIPTION: 2 SMALL AMMO POUCH | | 2 |
| 5 | 130 | CARTRIDGE MAKE: STERLING CALIBER: 410G SERIAL NO. EXISTS: YES DESCRIPTION: CARTRIDGES INSIDE BLACK NET TACTICAL POUCH | | 130 |

Total Cash Value 0.00

Remarks

928784 04/18/2024 16:11 : AT TPO ABOVE PROPERTY IS BEING VOUCHERED AS ARREST EVIDENCE

919022 04/18/2024 16:36 : Invoice Approved By 919022

| Date of Arrest | Penal Code/Description | Crime Classification | | |
| --- | --- | --- | --- | --- |
| 04/18/2024 | 265.03/CRIM POSS WEAPON | FELONY | | |
| 04/18/2024 | CRIM POSS WEAP 3RD ASSLT RIFLE | FELONY | N/A | N/A |

| Prisoner's Name | D.O.B. | Address | NYSID No. |
| --- | --- | --- | --- |
| 1 RHODES, ASSATA | [redacted] | 309 LAFAYETTE AVENUE 21G BROOKLYN, NY | K24629473 |

Owner: RHODES, ASSATA — 309 LAFAYETTE AVENUE 21G BROOKLYN, NY

BKLYN OFFICE

Invoice No. 3001733171 — Property Clerk Copy — PCO Storage No. 24K021605

## NYPD Property Clerk Invoice

Invoice No. 3001733171

Complainant: PSNY

Complaint No.: 2024-088-001362

Related Comp No.(s): N/A

Arrest No.(s): N/A

Related Invoices: N/A

| Approvals | Rank | Name | Tax No. | Command | Date | Time |
| --- | --- | --- | --- | --- | --- | --- |
| Invoiced By | DT2 | MIKOWSKI, WALTER J | 928784 | SPECIAL INVESTIGATIONS DIV | 04/18/2024 | 16:11 |
| Arresting Officer | DT2 | MIKOWSKI, WALTER J | 928784 | SPECIAL INVESTIGATIONS DIV | 04/18/2024 | 16:29 |
| Approved By | SDS | FARRELL, KEVIN P | 919022 | SPECIAL INVESTIGATIONS DIV | 04/18/2024 | 16:36 |

Invoice No. 3001733171 — Property Clerk Copy, printed: 09/27/2024 10:32 — PCO Storage No. 24K021605 — Page No 2 of 2

## NYPD Property Clerk Invoice

Invoice No. 3001733177

88TH PRECINCT — OPEN

04/18/2024 — FIREARM — ARREST EVIDENCE

| Officers | Rank | Name | Tax No. | Command |
| --- | --- | --- | --- | --- |
| | DT2 | MIKOWSKI, WALTER J | 928784 | SPECIAL INVESTIGATIONS DIV |
| | DT2 | MIKOWSKI, WALTER J | 928784 | SPECIAL INVESTIGATIONS DIV |
| | N/A | | | |
| | N/A | | | |
| | N/A | | | |

| Item | Total Qty | Article | Qty |
| --- | --- | --- | --- |
| 1 | 1 | SHOTGUN MAKE: MOSSBERG ... 410G ... BLACK SERIAL NO. ... DESCRIPTION: SLING ATTACHED | 1 |
| 2 | 20 | CARTRIDGE MAKE: AMERICAN TACTICAL CALIBER: 410G ... CARTRIDGES ATTACHED TO TACTICAL BELT | 20 |

Total Cash Value 0.00

Remarks

928784 04/18/2024 16:21 : AT TPO ABOVE PROPERTY IS BEING VOUCHERED AS ARREST EVIDENCE

919022 04/18/2024 16:31 : Invoice Approved By 919022

| Date of Arrest | Penal Code/Description | Crime Classification | | |
| --- | --- | --- | --- | --- |
| 04/18/2024 | 265.03/CRIM POSS WEAPON | FELONY | | |
| 04/18/2024 | CRIM POSS WEAP 3RD-ASSLT RIFLE | FELONY | N/A | N/A |

| Prisoner's Name | D.O.B. | Address | NYSID No. |
| --- | --- | --- | --- |
| 1 RHODES, ASSATA | [redacted] | 309 LAFAYETTE AVENUE 21G BROOKLYN, NY | K24629473 |

Owner: RHODES, ASSATA — 309 LAFAYETTE AVENUE 21G BROOKLYN, NY

Complainant: PSNY

Complaint No.: 2024-088-001362

N/A

N/A

Invoice No. 3001733177







